_____

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

## SENECA FOODS CORPORATION,

*Plaintiff-Appellant*

v.

## UNITED STATES,

*Defendant-Appellee*

_____

**Appeal from the United States Court of International Trade in
Case No. 1:22-cv-00243-GSK, Judge Gary S. Katzmann**

_____

## BRIEF OF PLAINTIFF-APPELLANT SENECA FOODS CORPORATION
_____

James M. Smith
Thomas Brugato
Edward J. Thomas III

**COVINGTON & BURLING LLP**

850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

*Counsel for Plaintiff-Appellant
Seneca Foods Corporation*

February 21, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**   25-1310

**Short Case Caption**   Seneca Foods Corp. v. US

**Filing Party/Entity**   Seneca Foods Corporation

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/21/2025

Signature: /s/ James McCall Smith

Name: James McCall Smith

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Seneca Foods Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Covington & Burling LLP | Kwan Woo Kim | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| N/A | | |
| | | |

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................1

II. STATEMENT OF RELATED CASES .....................................1

III. JURISDICTIONAL STATEMENT .........................................1

IV. STATEMENT OF THE ISSUES .............................................2

V. STATEMENT OF THE CASE ...................................................3

  A. Statutory Framework And Proclamation 9705 ........................3

  B. Regulatory Framework And Commerce's Practice ..................4

  C. Seneca's Attempts To Obtain Domestic Steel Before 2021 ....8

  D. Seneca's Section 232 Exclusion Requests Filed In October 2021 .........10

  E. Seneca's Section 232 Exclusion Request Filed In January 2022 ..........16

  F. Seneca's Section 232 Exclusion Requests Filed In March 2022 ..........18

  G. Commerce's Denials Of Seneca's Section 232 Exclusion Requests Filed In October 2021 And January 2022 ...............21

  H. Commerce's Denial Of Seneca's Section 232 Exclusion Requests Filed In March 2022 .......................................24

  I. Procedural History ................................................................25

VI. SUMMARY OF ARGUMENT ................................................30

VII. ARGUMENT ............................................................................33

  A. Standard Of Review .............................................................33

  B. Given Clear Evidence Of Unavailability When Seneca Placed The Covered Orders, Commerce Failed To Follow The Exclusion Request Criteria Established In Proclamation 9705 And Its Regulations ...............34

  C. Commerce's Regulations As Applied To Seneca Prospectively Should Likewise Have Resulted In Approval Of Seneca's Requests.......................46

  D. Seneca's Only Remedy For The Entries Ordered Between November 2020 And Late 2021 Lies In This Court ........................................58

VIII. CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............59

## CONFIDENTIAL MATERIAL OMITTED

Pursuant to Federal Circuit Rule 25.1(d)(1)(A), Plaintiff-Appellant has prepared a nonconfidential version of its brief from which it has redacted certain confidential information. Confidential information subject to Judicial Protective Order has been redacted only from the Addendum to this nonconfidential brief. No confidential material is contained in the brief itself. The material redacted from the Addendum appears at Appx0014, Appx0018, Appx0019, Appx0119, Appx0120, Appx0122, Appx0123, Appx0124, and Appx0126.

The confidential material redacted from pages Appx0014, Appx0018, and Appx0019 was redacted from the public version of the opinion below by the U.S. Court of International Trade. The confidential material redacted from pages Appx0119, Appx0120, Appx0122, Appx0123, Appx0124, and Appx0126 was redacted from the public version of the U.S. Department of Commerce's Remand Results. The omitted text in both documents consists of confidential offer information submitted by Seneca, excerpts from confidential sales correspondence between Seneca and U.S. Steel Corporation, and confidential manufacturing and shipping times submitted by U.S. Steel Corporation. In the body of this brief, given the passage of time, Seneca has made confidential offer information and excerpts from its sales correspondence public.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Aircraft Indus., Inc. v. United States,*
    586 F.3d 1372 (Fed. Cir. 2009) ........................................................33

*Am. Ass'n of Cosmetology Schls. v. Devos,*
    258 F. Supp. 3d 50 (D.D.C. 2017) ....................................................43

*Ass'n of Priv. Sector Colls. and Univs. v. Duncan,*
    681 F.3d 427 (D.C. Cir. 2012) ..........................................................44

*Burlington N. & Santa Fe Ry. v. Surface Transp. Bd.,*
    403 F.3d 771 (D.C. Cir. 2005) ..........................................................34

*Burlington Truck Lines v. United States,*
    371 U.S. 156 (1962) ....................................................................34, 52

*Can. Lumber Trade All. v. United States,*
    517 F.3d 1319 (Fed. Cir. 2008) ........................................................33

*Cellular Telecomms. & Internet Ass'n v. FCC,*
    330 F.3d 502 (D.C. Cir. 2003) ..........................................................44

*Corephotonics, Ltd. v. Apple Inc.,*
    84 F.4th 990 (Fed. Cir. 2023) ...........................................................53

*Dixon Ticonderoga Co. v. United States,*
    468 F.3d 1353 (Fed. Cir. 2006) ........................................................33

*Euzebio v. McDonough,*
    989 F.3d 1305 (Fed. Cir. 2021) .................................................. 33-34

*Jicarilla Apache Nation v. Dep't of Interior,*
    613 F.3d 1112 (D.C. Cir. 2010) ........................................................34

*Judulang v. Holder,*
    565 U.S. 42 (2011) ............................................................................34

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto.*
    *Ins. Co.,* 463 U.S. 29 (1983) ....................................................*passim*

*Nat'l Org. of Veterans' Advocs. Inc. v. Sec'y of Veterans Affs.*,
927 F.3d 1263 (Fed. Cir. 2019) ...................................................... 43-44

*NLMK Pa., LLC v. United States*,
617 F. Supp. 3d 1316 (Ct. Int'l Trade 2023) ................................33, 52

*Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*,
786 F.3d 960 (Fed. Cir. 2015) ...............................................................34

*Seneca Foods Corporation v. United States*,
663 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) ................................1, 25

*Seneca Foods Corporation v. United States*,
740 F. Supp. 3d 1336 (Ct. Int'l Trade 2024) .....................................29

**Statutes**

5 U.S.C. § 706(2) ...................................................................................33

19 U.S.C. § 1862 .......................................................................................3

28 U.S.C. § 1295(a)(5)...............................................................................2

28 U.S.C. § 1581(i) ..............................................................................1, 33

**Regulations**

15 C.F.R. § 705, Supp. 1 ................................................................*passim*

**Other Authorities**

*Tin- and Chromium-Coated Steel Sheet from Japan*,
Inv. No. 731-TA-860 (Third Review), USITC Pub. 4795 (June
2018) ......................................................................................................15

*Tin Mill Products from Canada, China, Germany, and South Korea*,
Inv. Nos. 701-TA-685 and 731-TA-1599-1601 and 1603 (Final),
USITC Pub. 5492 (Feb. 2024)............................................................15

## I.    <u>INTRODUCTION</u>

Plaintiff-Appellant Seneca Foods Corporation ("Seneca") hereby respectfully submits its principal brief pursuant to Federal Rule of Appellate Procedure 28(a) and Federal Circuit Rule 28(a).

## II.    <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5(a), counsel for Seneca is not aware of any other appeal in or from the same civil action or proceeding in the lower court that has previously been before this or any other appellate court. Pursuant to Federal Circuit Rule 47.5(b), counsel for Seneca is also unaware of any case pending before the U.S. Court of International Trade ("Trade Court") that will be directly affected by this Court's decision in this case. To counsel's knowledge, 13 other cases were filed at the Trade Court challenging denials of Section 232 exclusions by the U.S. Department of Commerce ("Commerce"). No other case was appealed to this Court. Two remain pending before the Trade Court, with one of the two in mediation. Neither pending case will be directly affected by the Court's decision in this case, given the distinct factual records.

## III.    <u>JURISDICTIONAL STATEMENT</u>

Seneca appeals from the final judgment of the Trade Court in *Seneca Foods Corporation v. United States* entered on October 21, 2024. Appx0001. The Trade Court exercised jurisdiction pursuant to 28 U.S.C. § 1581(i). This Court has

jurisdiction to review the Trade Court's decision pursuant to 28 U.S.C. § 1295(a)(5). Seneca timely appealed the Trade Court's October 21, 2024 judgment on December 20, 2024, within 60 days of the final entry of judgment, as required by Federal Rule of Appellate Procedure 4(a)(1)(B).

## IV.   STATEMENT OF THE ISSUES

1.      Whether Commerce's denials of Seneca's Section 232 exclusion requests properly applied the criteria set forth in Proclamation 9705 authorizing Commerce to provide relief if the steel article is not "produced in the United States in a sufficient and reasonably available amount" where uncontroverted record evidence confirms that all domestic producers, including the sole objector, U.S. Steel Corporation ("USS"), were unable to supply Seneca the quantities requested at the time Seneca placed its orders and filed its exclusion requests.

2.      Whether Commerce's decisions denying Seneca's Section 232 exclusion requests under its regulations were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law where Commerce disregarded overwhelming record evidence of unavailability from USS over multiple years, including after the USS objections were submitted, all of which contradicted the bare claims of USS on which Commerce exclusively relied.

## V.     STATEMENT OF THE CASE

### A. Statutory Framework And Proclamation 9705

Section 232 of the Trade Expansion Act of 1962, *as amended* (codified at 19 U.S.C. § 1862), authorizes the President to take certain actions against imported goods when, following an investigation by the Secretary of Commerce, the imports in question are being brought into the United States "in such quantities or under such circumstances as to threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A). In March 2018, the President issued Proclamation 9705, which imposed a 25 percent *ad valorem* tariff on certain imports of steel products ("Section 232 tariffs"). *See* 83 Fed. Reg. 11,625 (Mar. 8, 2018), Appx0142-0147. The Proclamation stated that the tariffs were intended to "help our domestic steel industry to revive idled facilities, open closed mills, preserve necessary skills by hiring new steel workers, and maintain or increase production," and marked "an important first step in ensuring the economic viability of our domestic steel industry." Appx0143. But the President also instructed Commerce to provide relief from Section 232 tariffs for steel products "determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." Appx0144. While other proclamations adjusting imports of steel under Section 232 were issued between March 8, 2018 and July 9, 2022 (date of final exclusion denial for Seneca),

those proclamations did not alter the criteria utilized for adjudicating exclusion requests.

## B. Regulatory Framework And Commerce's Practice

Acting under this presidential direction, Commerce promulgated regulations creating a product exclusion process through which the agency would grant certain entities limited and product-specific exclusions from the Section 232 remedies. *See* 83 Fed. Reg. 12,106 (Mar. 19, 2018) (Appx0148-0154); 83 Fed. Reg. 46,026 (Sept. 11, 2018) (Appx0155-0194); 84 Fed. Reg. 26,751 (June 10, 2019) (Appx0195-0208); 85 Fed. Reg. 81,060 (Dec. 14, 2020) (Appx0209-0233). These iterations of the exclusion process have been codified at 15 C.F.R. § 705, Supp. 1.

At Commerce, the Bureau of Industry and Security ("BIS") and the International Trade Administration ("ITA") review submitted requests to determine whether, among other things, the product "is not produced in the United States in a sufficient and reasonably available amount." 15 C.F.R. § 705, Supp. 1(c)(6)(i);[1] *see also* Appx0155-0156. For products found not to be available in sufficient quantities, Commerce grants exclusions valid for one year from the date of signature and also allows companies to apply exclusions retroactively to entries that occur after the

---

[1] BIS is "the lead agency deciding whether to grant steel and aluminum tariff requests," but ITA takes the lead in "analyzing requests and objections to evaluate whether there is domestic production available to meet the requestor's product needs, as provided in the exclusion requests." Appx00156.

request is submitted but before the exclusion is granted. Appx0245. Commerce also has explained that the regulations "neither encourage nor discourage a requestor to submit its request before or after it has placed an order; both options are available to a requestor," Def.'s Resp. to Ct.'s Questions for Oral Arg. at 5, July 18, 2024, ECF No. 71, and that "given the lag time between purchase order and the date merchandise enters the United States, ... a requester could be eligible to use a granted exclusion for merchandise ordered prior to the exclusion request filing date," Def.'s Post-Oral Arg, Submission at 1, July 30, 2024, ECF No. 79.

A product is not produced "in a sufficient or reasonably available amount" if the "amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." 15 C.F.R. § 705, Supp. 1(c)(6)(i). In general, "immediately" means "'within eight weeks,' or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier." *Id.* Additionally, if a domestic steel producer who objects to the exclusion can deliver ten percent or more of the relevant products, Commerce may deny an exclusion for that percentage of the requested volume. *Id.* The regulations do not specify a starting point for the "available immediately" time period, but Commerce's standard exclusion request form asks the requester to provide "the number of days required

to take delivery of the product covered by the Exclusion Request, from the time the *purchase order* is issued by your organization." *E.g.*, Appx0272 (emphasis added).

Following submission of an exclusion request, Commerce allows domestic suppliers to object, but any objector claiming it can manufacture the relevant products immediately "must identify how it will be able to produce and deliver the quantity of steel … needed either within eight weeks, or if after eight weeks, by a date which is earlier than the named foreign supplier would deliver the entire quantity of the requested product." 15 C.F.R. § 705 Supp. 1(d)(4). "If a U.S. supplier objects to an exclusion request, the burden is on that supplier to demonstrate that the exclusion should be denied because of failure to meet the specified criteria." Appx0158. The requester can submit a rebuttal to address the objection and provide additional evidence, if necessary, about claims made by the objector. *See* 15 C.F.R. § 705, Supp. 1(f). Finally, the objector can submit a surrebuttal in response. *See id.* at 1(g).

To adjudicate requests that draw objections, Commerce considers three criteria—quantity, timeliness, and quality. *See, e.g.*, Appx0266-0268. Commerce defines these criteria as follows: the objector must be able to provide the requested products in a reasonably available amount (quantity), in a sufficient amount of time

(timeliness), and with satisfactory quality (quality). *Id.* If an objector does not meet

any single criterion, Commerce ends the analysis and dismisses the objection.[2]

Pursuant to 15 C.F.R. § 705, Supp. 1(c)(5)(ii)(E), Commerce also conducts

volume certification reviews to ensure that the quantities requested are in fact needed

and can be supported by documentation that predates the exclusion request.

Appx0776-0777. Commerce's volume certification review process for resellers

specifically requires "only purchase orders or equivalent documents {that} are dated

<u>prior</u> to the original date of submission of the associated Exclusion Request(s)."

Appx0777 (emphasis in original).

Commerce has also developed a policy where it will "consider sales

correspondence, submitted as evidence, absent additional accompanying

information, only if such correspondence occurred within 90 days of the submission

of the exclusion request." *E.g.*, Appx0118, Appx0268, Appx0323, Appx0434.

Applying this policy, Commerce has dismissed objections from companies where

timely correspondence demonstrated that the objector did not have current capacity

to provide the requested product. In one example, Commerce credited email

---

[2] *See* Appx0744-0745 and Appx0772-0773 (declining to evaluate objector's ability to meet the quality and quantity criteria after finding it did not meet the timeliness criterion), Appx0698-0699 (declining to evaluate objector's ability to meet the quantity and timeliness criteria after finding it did not meet the quality criterion), and Appx0705-0706 (declining to evaluate objector's ability to meet the quality and timeliness criteria after finding it did not meet the quantity criterion).

evidence provided by the requester, dismissed the objection for failing to meet the quantity criterion, and did not analyze the hypothetical delivery time that the objector claimed to be able to meet (the timeliness criterion). *See, e.g.*, Appx0713-0714, Appx0729-0730, Appx0737-0738 (dismissing objection where requester submitted email correspondence dated less than 90 days before filing of request in which the objector conceded it had no current capacity and explaining that "{b}ecause {objector} does not meet the quantity criterion, ITA has not evaluated {objector's} ability to meet the timeliness criterion").

### C. Seneca's Attempts To Obtain Domestic Steel Before 2021

Prior to 2014, other than some minor trials of imported steel, Seneca purchased "100% of {its} tin mill products from domestic producers." Appx0283, Appx0339, Appx0394, Appx0449, Appx0504, Appx0559, Appx0611, Appx0662. In 2013, Seneca's major U.S. supplier conveyed concerns about sustaining a major portion of domestic tin mill production. *Id.* Seneca then began qualifying foreign suppliers and importing a portion of its required volumes from other countries due to domestic supply shortfalls, which became more acute in subsequent years. *Id*. As Seneca explained in its exclusion requests, from 2016 through 2020, the percentage

of domestic demand for tin mill products that was supplied by U.S. producers stayed at around 57% to 60%. *Id*.

In March and April 2018, shortly after the Section 232 tariffs took effect, Seneca filed exclusion requests for limited volumes of prime electrolytic tinplate ("ETP"). Pl's Compl., Exs. 1-3, Aug. 19, 2022, ECF Nos. 6.2, 7.2 (U.S Dep't of Commerce, Exclusion Request ID BIS-2018-0006-0019 (Mar. 28, 2018); U.S Dep't of Commerce, Exclusion Request ID BIS-2018-0006-0770 (Apr. 13, 2018); and U.S Dep't of Commerce, Exclusion Request ID BIS-2018-0006-5050 (Apr. 28, 2018)). Seneca placed orders for those volumes in 2017—even before the Section 232 action—after consulting with the three active U.S. tin mills and confirming that they were unable to supply the needed volumes. *See id.*, Ex. 1 at 7; Ex. 2 at 8; Ex. 3 at 9. Of the three domestic producers, only USS objected to Seneca's request, claiming it could provide the needed amounts even though—as Seneca explained in its rebuttal—USS had informed Seneca in March 2018 that it "had no short term capacity." *Id.*, Ex. 4 at 1; Ex. 5 at 1. Despite the clear lack of availability from USS, ITA credited USS's claims that it could supply the needed volumes "in a sufficient and reasonably available amount," and Commerce denied Seneca's request. *Id.*, Ex. 6 at 1-2.

In light of its certified claims of available capacity, Seneca placed a purchase order with USS on May 15, 2018, for a small quantity—"not any meaningful

volume"—scheduled for delivery in August 2018. Appx0300, Appx0356, Appx0411, Appx0466, Appx0521. Delivery of that order was substantially delayed, with the final product arriving half-a-year late, only in February 2019. *Id.* From that time forward, despite repeated attempts by Seneca to source needed tin mill products, USS did not supply a single ton to Seneca throughout the rest of 2019, all of 2020 and 2021, and for the majority of 2022. *See* Appx0575, Appx0629-0631. This was not for lack of trying. In the record before Commerce, USS conceded that it had "regularly discussed" potential sales with Seneca throughout 2019, 2020, and 2021. Appx0311, Appx0367, Appx0422, Appx0477, Appx0532. As a result, Seneca had to import the required tonnage to compensate for the domestic supply shortfall.

**D. Seneca's Section 232 Exclusion Requests Filed In October 2021**

In October 2021, Seneca filed five requests to exclude limited volumes of imported prime tin-free steel ("TFS") and ETP from Section 232 tariffs. Appx0270-0273, Appx0325-0328, Appx0381-0384, Appx0436-0439, Appx0491-0494. TFS and ETP are both referred to as tin mill steel products and used to manufacture cans. The October requests covered purchase orders placed by Seneca between November 20, 2020, and May 3, 2021, *see, e.g.*, Appx0298-0299, all of them for delivery in the fourth quarter of 2021 after submission of the requests. *See* Appx0282, Appx0338, Appx0393, Appx0448, Appx0503, and **Table 1** in Section VII.B, *infra*. If granted, the exclusion requests covering orders scheduled for delivery after the request date

would be valid retroactively for entries back to the date of submittal. Appx0245. Before placing the orders at issue in these requests, Seneca explained that it had met with all of its domestic suppliers to understand their ability to supply more tin mill products to Seneca during 2021 and 2022. Appx0283-0284, Appx0339-0340, Appx0394-0395, Appx0449-0450, Appx0504-0506. Through these conversations, Seneca confirmed with all domestic tin mills—including USS—that they were unable to supply the necessary tonnage within the relevant time frame (*i.e.*, delivery in late 2021), and would advise at some uncertain future date if they have additional capacity for 2022. *Id*. USS "was unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional material in 2021 or beyond." *Id*. Seneca purchased as much as it could get from the two other producers, both of which were willing to sell to Seneca whatever they had available—and neither of which objected to Seneca turning to imports to fill the domestic supply gap. *Id*.

USS was the sole domestic producer to offer Seneca no volume in 2021, yet also the sole objector to Seneca's five October 2021 requests. USS claimed in its objections that it could supply "100%" of the requested volumes "on a timely basis," despite repeatedly telling Seneca it had nothing available to offer. *See* Appx0290, Appx0346, Appx0401, Appx0456, Appx0511. USS never disputed that it was unable—and had affirmatively declined—to supply the required volumes at the time of Seneca's orders. USS even conceded that "the U.S. tin mill market experienced

some supply constraints in the immediate wake of the COVID-19 pandemic," *e.g.*, Appx0346, which USS later emphasized was the time frame for the orders covered by Seneca's October requests, Appx0364. Additionally, USS erroneously certified to Commerce that it had provided tin mill products to Seneca within the last two years, even though it had been well over two years since USS had provided *any* steel to Seneca. *See* Appx0291, Appx0347, Appx0402, Appx0457, Appx0512.

In its rebuttals, Seneca pointed out that there was no dispute regarding the fact that USS could not and did not supply any volume of tin mill products to Seneca during the relevant order and delivery time frame for the October 2021 requests (*i.e.*, late 2020 through fourth quarter of 2021). Appx0298, Appx0354, Appx0409, Appx0464, Appx0519. Seneca's rebuttals included an email summarizing a phone call with USS from November 2020, immediately prior to the earliest orders covered by the October 2021 requests, in which USS declined to "offer{} anything now at any price" due to its inability to supply any products for delivery in 2021. *E.g.*, Appx0302-0303. Despite being asked to supply the tin mill products covered by the requests, USS refused.

In addition, Seneca provided written evidence showing that *even after* filing its objections in November 2021 and certifying to Commerce its ability to supply the relevant volumes in a timely manner, USS separately communicated to Seneca that it had no ETP or TFS to offer for the remainder of 2021 and into 2022. *See, e.g.*,

Appx0298, Appx0304-0306. The email, addressed to USS's account manager, recalled a discussion in 2021 where "you advised USS has no tinplate or TFS to offer us for 2022," and that any availability would be "kind of a long shot." Appx0305.[3] Following up on this discussion, Seneca asked whether "anything {had} changed on the availability of ETP or TFS?" *Id*. In response, USS confirmed that they "don't have anything as of yet" through February 2022. *Id*.

Seneca's rebuttals also addressed USS's claim about supplying Seneca with TFS and ETP within the last two years. As Seneca emphasized to Commerce, "{t}his claim is false," since "{t}he most recent delivery of *any steel* from USS to Seneca occurred on February 19, 2019—more than two years ago." Appx0300, Appx0356, Appx0411, Appx0466, Appx0521 (emphasis in original). That delivery, moreover, "was of a single coil, not any meaningful volume," and had been delivered half-a-year late. *Id*. "{I}n our experience," Seneca explained, "Seneca cannot look to USS as a dependable source of steel supply," despite USS's unsupported claims that it "has been a regular supplier of tin mill products to Seneca in recent years." *Id*.

In both the request and the rebuttal, Seneca explained why Commerce should welcome Seneca's approach of filing exclusions only after confirming that the domestic industry had no availability for the relevant delivery time frame: this

---

[3] This email was originally submitted by Seneca to Commerce as confidential in its entirety. Given the passage of time, during the litigation below Seneca decided to make the contents of this email public.

approach removes any doubt about whether the product was available for orders covered by the request, such that Commerce need not resolve competing claims about possible future availability. Appx0284, Appx0301, Appx0340, Appx0357, Appx0395, Appx0412, Appx0450, Appx0467, Appx0505, Appx0522.

In its surrebuttals, USS again did not dispute its inability and refusal to supply the relevant ETP and TFS volumes during the time frame for the specific purchase orders covered by Seneca's requests. Indeed, USS acknowledged the relevant time frame for those orders and again conceded that "{t}he COVID-19 pandemic and other economic forces resulted in temporary U.S. tin mill supply constraints/delays in 2020 and early 2021 (*i.e.*, *when the Requestor ordered this {product}*)." Appx0364-0365, Appx0419-0420, Appx0474-0475, Appx0529-0530 (emphasis added). USS also for the first time admitted that its certified statements to Commerce about having supplied Seneca in the recent past were false: "{A}s stated in Seneca's rebuttals, {USS} has not supplied the Requestor with tin mill products since February 2019, which is more than two years before submission of U.S. Steel's objections.… Contradictory statements in each of the Objections were made in error." Appx0311, Appx0367, Appx0422, Appx0477, Appx0532. Finally, and crucially, USS also conceded that it had "regularly discussed" sales of tin mill products with Seneca throughout 2019, 2020, and 2021, thereby admitting that it had every opportunity to make the sales covered by Seneca's requests. *Id*.

Yet despite these concessions, and despite the evidence compiled in Seneca's rebuttals, USS still claimed it could supply volumes in the future through spot sales. *See, e.g.*, Appx0364-0365. This claim simply ignores the fact that the purchase orders covered by the requests were all arriving in the fourth quarter of 2021, Appx0282, and were placed at a time when USS admitted having nothing available for Seneca. Appx0364-0365, Appx0419-0420, Appx0474-0475, Appx0529-0530. In its submissions to Commerce, USS never acknowledged the implications of that simple fact. Its claim about possible future spot sales was also at odds with the fact that USS and other domestic producers conduct business almost exclusively through annual contracts, and make "very few spot sales." *See Tin- and Chromium-Coated Steel Sheet from Japan*, Inv. No. 731-TA-860 (Third Review), USITC Pub. 4795 (June 2018) at 15; *see also Tin Mill Products from Canada, China, Germany, and South Korea*, Inv. Nos. 701-TA-685 and 731-TA-1599-1601 and 1603 (Final), USITC Pub. 5492 (Feb. 2024) at 36 (noting that U.S. tin mills predominantly sell through annual contracts, with a smaller portion of sales on the spot market).

USS also argued that "Section 232 exclusions are prospective not retrospective," despite the fact that relief, if granted, would be retroactive to the date on which Seneca submitted the requests. Appx0364-0365, Appx0419-0420, Appx0474-0475, Appx0529-0530. According to USS, Commerce "must evaluate this request based {on} current availability," *id*., despite the fact that USS had

declined to supply Seneca in November 2021 after filing its objections, Appx0298, Appx0304-0306. In those objections, USS specified lead times for tin mill products of 120 to 270 days into the future (depending on the exclusion request). Appx0286, Appx0342, Appx0397, Appx0452, Appx0507. USS also submitted confidential manufacturing and delivery times as of December 10 and 13, 2021. Appx0311-0312, Appx0367-0368, Appx0422-0423, Appx0477-0478, Appx0532-0533. However, the result of adding those times to December 10 or 13 directly contradicts the November 2021 email where USS stated that it did not have "anything" available for February 2022. Appx0304-0306.

### E. Seneca's Section 232 Exclusion Request Filed In January 2022

The January 2022 exclusion request followed a similar pattern. Appx0546-0557. That request covered a late 2021 ETP order for delivery in 2022, placed "soon after all relevant domestic producers affirmatively declined to award Seneca any additional volume." Appx0558. As with the October 2021 requests, Seneca met with all U.S. tin mills in advance of placing orders from foreign suppliers and confirmed that no domestic producer was able and willing to make any additional supply available to Seneca during 2022. Appx0559-0560. Seneca purchased as much as it could get from two of the three domestic producers, neither of which filed an objection to Seneca's exclusion request. *Id*.

Seneca had again reached out to USS specifically to inquire about its ability to supply the requested volume, but USS "{wa}s unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional material in 2022." Appx0560. As in 2020 and 2021, USS again was the only domestic producer to offer Seneca nothing. Appx0557. In February 2022, USS again was the sole objector, claiming it could supply "100%" of the requested volume within the necessary time frame. Appx0566. Finally, USS *again* claimed to have "supplied Seneca with ETP within the last two years," Appx0567, after having admitted earlier that this claim was false, *see* Appx0532.

In its rebuttal, Seneca again provided communications with USS showing that, in November 2021, USS had declined to provide any ETP or TFS to Seneca for delivery in 2022. *See* Appx0577-0579. USS stated in those communications that they would let Seneca know if anything changes, *id*.; the record is devoid of evidence that USS ever did so. Seneca also pointed out that USS had again erroneously claimed to have supplied Seneca with tin mill products during the last two years: "This claim is false." Appx0575. Finally, Seneca urged Commerce to grant Seneca's requests, pointing out that "USS should not be allowed to decline repeated requests to supply Seneca's … orders, yet then block an exclusion for those very same orders." *Id*. Thus, "Commerce cannot reasonably give weight to an objection from USS that

belatedly, and far from credibly, claims the ability to make deliveries that USS has consistently declined." Appx0574.

As with the October 2021 requests, Seneca explained why Commerce should welcome its approach of filing exclusions only after confirming that the domestic industry had no availability for the relevant delivery time frame, because it removes any doubt about availability. Appx0560, Appx0575-0576.

USS submitted a surrebuttal that was nearly identical to its surrebuttals for the October 2021 requests. Appx0580-0585. Again USS provided no evidence contradicting Seneca's submissions documenting the lack of availability at the time the orders were placed. As before, USS continued to make the same bare-bones claims about future spot availability, and argue that exclusions are prospective, not retrospective. *Id*.

### F. Seneca's Section 232 Exclusion Requests Filed In March 2022

On March 15, 2022, Seneca filed two new exclusion requests for tin mill products, one for ETP and one for TFS. Appx0598-0613, Appx0649-0664. These requests specifically covered orders placed by Seneca in October 2021 for delivery between April and September 2022. Appx0628. As with its prior requests, Seneca explained that it had met with its domestic suppliers over the past several months and confirmed that no domestic producer was able and willing to make any additional volume available to Seneca during 2022. Appx0612, Appx0663. The

corresponding purchase orders were placed "soon after all relevant domestic producers affirmatively declined to award Seneca any additional volume for 2022," Appx0610, Appx0661, and USS in particular had been "unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional material in 2022," Appx0612, Appx0663. By this point, more than three years had passed since USS supplied *any* tin mill products to Seneca, even after USS objected to Seneca's October 2021 and January 2022 requests. Appx0678.

Once more, in April 2022, only USS objected to Seneca's exclusion requests. Appx0614-0622, Appx0665-0673. While claiming it could supply "100%" of the relevant volumes within the relevant time frame, Appx0619, Appx0670, USS did not dispute it had affirmatively declined to supply Seneca with any products at the time the purchase orders were made. It also confirmed that it had not "attempted to sell, or successfully sold," TFS or ETP to Seneca in the past two years. Appx0620, Appx0671.

In its rebuttals, Seneca reiterated that the purchase orders at issue were placed in October 2021, after all relevant domestic producers, including USS and its two domestic suppliers, had affirmatively declined to make available any additional volume for 2022. Appx0678. Seneca acknowledged that shortly before its rebuttals in April 2022, USS had finally—after months of flat denials—agreed to supply a "tiny fraction" of the volumes at issue in the requests, though the "delivery timetable

for these minor volumes {was} not in line with the delivery schedule for the purchase orders at issue in these requests." Appx0679. On April 13, 2022, USS finally agreed to send "less than 500 tons" of TFS to be delivered in July 2022, after turning down Seneca's offer to purchase 3,000 tons of the material—roughly the TFS quantity at issue in Request No. 283368. Appx0629-0631, Appx0683-0685.[4] This meant USS was offering less than one-sixth of the TFS volume covered by Request No. 283368, and the limited USS volume was scheduled for delivery months after the April 15, 2022 delivery date of the TFS covered by that request. Appx0628. USS's offer to supply ETP was likewise for only "limited volumes" during late 2022, after the arrival of the bulk of Seneca's previously placed orders for imported ETP to be delivered during 2022. Appx0679, Appx0682.

In both its initial requests and rebuttals, Seneca again explained why Commerce should welcome its approach of filing exclusions only after confirming no domestic availability. Appx0612, Appx0663, Appx0679.

In its surrebuttals, USS provided confidential manufacturing and delivery times as of May 2, 2022. Appx0636, Appx0690. However, adding those lead times to the May 2, 2022 date directly contradicts the February-April 2022 emails, where

_____

[4] The email in Exhibit 3 and chart in Exhibit 2 of Seneca's rebuttals were originally submitted by Seneca to Commerce as confidential in their entirety. Given the passage of time, Seneca has decided to make this information public.

USS conceded that it could only supply a fraction of what Seneca requested, and not until July 2022. Appx0629-0631, Appx0683-0685.

### G. Commerce's Denials Of Seneca's Section 232 Exclusion Requests Filed In October 2021 And January 2022

Despite all of this evidence presented by Seneca of USS's consistent and repeated refusals to make any volumes available to Seneca over multiple years, even after USS filed objections, in April 2022 Commerce denied all six exclusion requests from October 2021 and January 2022. Appx0263-0269, Appx0318-0324, Appx0374-0380, Appx0429-0435, Appx0484-0490, Appx0539-0545. In its denials, Commerce failed entirely to address the certified statements from Seneca, corroborated by contemporaneous email communications and undisputed by USS, demonstrating that USS had affirmatively declined to supply Seneca the requested tin mill products within the relevant time frames—or to supply any volumes at any time since February 2019, despite regular and repeated sales communications with Seneca. Nor did Commerce address the certified statements and corroborating evidence demonstrating that, even after filing objections to the October requests, USS had *again* declined to supply the relevant volumes, despite having made certified claims of availability in its prior objections. Finally, Commerce failed to address the repeated and material misstatements by USS, in which USS erroneously claimed to have supplied Seneca with tin mill products during the last two years— false statements repeated to Commerce even after USS admitted error.

Instead, based on a Recommendation Document from ITA, Commerce denied Seneca's requests using boilerplate language: "In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount … ITA has provided the attached findings and recommends denying the request for an exclusion. BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be granted …." Appx0263, Appx0318, Appx0374, Appx0429, Appx0484, Appx0539.

ITA recommended denial based on its implausible view that USS could in theory "meet{} the quality, quantity, and timeliness criteria" and thus supply the relevant products. Appx0265, Appx0320, Appx0376, Appx0431, Appx0486, Appx0541. When discussing the disputed issue of quantity—*i.e.*, whether USS could supply the requested volumes of tin mill products—ITA mentioned Seneca's rebuttal evidence that, in November 2021, USS declined to offer any ETP or TFS for 2022. But it then proceeded to ignore it, apparently accepting USS's claim that contrary to its standard sales practices, it could supply the required products "as spot sales rather than contract volumes." Appx0266, Appx0321, Appx0377, Appx0432, Appx0487. Despite all the evidence to the contrary, ITA even went so far as to claim that there was *nothing* "in the request, rebuttal, or surrebuttal … {that} provide{s} evidence to contradict the objector's claims" about quantity. Appx0266, Appx0321, Appx0377, Appx0432, Appx0487, Appx0542.

ITA made the same assertion with respect to the issue of timeliness—*i.e.*, whether USS could deliver the necessary volumes in the required time frame. Apart from the single January request, ITA implausibly found that there was "no" evidence to contradict USS's claims that it could deliver the products on time, despite voluminous contrary evidence presented by Seneca. Appx0267, Appx0322, Appx0378, Appx0433, Appx0488. For the January request, ITA found that confidential information provided by USS required "ITA to adjust {USS}'s delivery time." Appx0543. However, ITA still credited USS's claims that it could "deliver the product in a timely manner" and ignored all of Seneca's evidence to the contrary. *Id*. The end result was the same: ITA made no mention of Seneca's contemporaneous evidence that USS had declined to sell any tin mill products in the relevant time frames and offered no explanation of why that evidence was insufficient to demonstrate that USS could not or would not supply the requested volumes.

Throughout the Recommendation Documents, ITA also failed even to mention USS's repeated, false statements that it had supplied Seneca with tin mill steel during the past two years. Nor did ITA attempt to explain how USS's inability to supply Seneca over a two-year window—despite repeated attempts by Seneca to source the very same products from USS—had no impact on its ability, suddenly, to produce and immediately deliver the entirety of the requested volumes. ITA also never addressed why USS's claims should be given any weight, especially when it

was undisputed that USS affirmatively declined to supply the required volumes at the time the orders were made and then objected to exclusion requests regarding those very same orders.

Finally, neither ITA nor BIS ever addressed the fact that Seneca's exclusions, if granted, would apply only to shipments ordered and delivered at a time when USS conceded unavailability for tin mill products. Nor did ITA or BIS ever acknowledge or address Seneca's argument that its approach of first requesting the needed volumes from the domestic industry and then placing orders and filing exclusions only for what the domestic industry affirmatively declined to supply made this a simple decision for Commerce, as it removed any need for the agency to forecast or weigh competing claims of future availability.

## H. Commerce's Denial Of Seneca's Section 232 Exclusion Requests Filed In March 2022

In July 2022, Commerce denied Seneca's March 2022 exclusion requests, though on a new basis. Appx0591-0597, Appx0642-0648. For the first time, Commerce denied the requests without purporting to analyze the merits: it merely stated that ITA was "unable to provide a complete analysis due to an issue with the request{s}," though it never explained what the "issue" was or why that "issue" required denial as opposed to some other action. Appx0593-0594, Appx0644-0645. On all three issues—quality (which was irrelevant), quantity, and timeliness—ITA conceded it had not performed "a complete analysis." *Id*. Regardless, and without

explanation, Commerce denied both March 2022 requests. When addressing the issue of quantity, ITA simply disclaimed ability to analyze the merits because, as it said in full, "ITA is unable to provide a complete analysis due to an issue with the request." Appx0594, Appx0645. Similarly, with respect to timeliness, ITA claimed that Seneca's confidential communications containing delivery information "conflicts with the delivery information in its exclusion request." Appx0595, Appx0646. "Due to this ambiguity, ITA is unable to evaluate this exclusion request." *Id*. Again, ITA never explained what the "ambiguity" was, nor why it weighed in favor of denial. ITA failed even to mention—let alone consider—Seneca's abundant evidence that USS could not and would not supply Seneca with the required volumes of TFS and ETP. ITA's recommendations were also rife with significant factual errors, which were fully detailed in Seneca's initial brief below. *See* Br. in Supp. of Pl.'s Rule 56.1 Mot. for J. on the Agency R. at 18-20, Feb. 28, 2023.

## I. Procedural History

Seneca appealed Commerce's denial of its eight Section 232 exclusion requests to the Trade Court. *Seneca Foods Corporation v. United States*, 663 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) ("*Seneca I*"), Appx0074-0098. During the litigation, the Government requested a voluntary remand to reconsider the merits of the March 2022 exclusion requests. Appx0097-0098. The Trade Court granted the Government's voluntary remand request and also remanded the six other exclusion

requests over the Government's objections, concluding that Commerce's denials were arbitrary and capricious for failure to consider and address record evidence that ran counter to Commerce's stated reasoning. Appx0075-0076, Appx0097-0098. The Trade Court found that Commerce (1) disregarded evidence demonstrating that USS was unwilling to offer *any* volume, (2) failed to consider countervailing evidence that creates doubt about the veracity of USS's certified representations, and (3) erred by finding availability through spot rather than contract sales when Seneca demonstrated the unavailability of any volume. Appx0089-0095.

On remand, Commerce continued to deny all eight exclusion requests. Commerce made certain findings with respect to the three groups of exclusion requests—October 2021, January 2022, and March 2022—and then concluded with two sections regarding (1) spot sales versus contract sales and (2) preceding months and years, both of which apply to all requests. Appx0117-0128.

For the October 2021 requests, Commerce reviewed the November 2020 and November 2021 emails and continued to determine that USS could supply Seneca at some point later in 2022 through spot sales. Appx0117-0123. Commerce never explained why the November 2020 and 2021 emails and the concessions by USS regarding lack of availability during the period when Seneca's purchase orders were placed and to be delivered are not dispositive evidence of the sole objector's failure to meet the quantity criterion.

26

For the January 2022 request, based on the November 2021 email, Commerce again determined that despite the conceded unavailability of any volumes when the relevant orders were placed, USS could in theory supply Seneca "through spot sales only" in the future. Appx0124. Commerce never addressed the fact that this exclusion request covered an order that was placed in late 2021 only after USS conceded it had no additional availability for 2022. And Commerce again failed to explain how the November 2021 emails, which it admitted fell within its standard 90-day period, are not compelling and dispositive evidence of unavailability at the key points in time for Seneca's request.

For the March 2022 requests, Commerce discounted the November 2021 emails as being too far in the past to shed light on the ability of USS to deliver in 2022. Appx0124-0125. Commerce also discounted contemporaneous emails from February-April 2022, which started with "Anything to offer yet?" in reference to the November 2021 emails, Appx0126-0127, Appx0631, because they were sent "approximately four months after {Seneca} completed purchase orders with its foreign producer" and thus "do not pertain to the products specifically at issue in these exclusion requests." Appx0126. By seizing on the earlier purchase order date to disregard these contemporaneous communications, Commerce acknowledged that Seneca intended to apply the March 2022 requests to orders placed on October 1 or 29, 2021, a time when USS conceded it had nothing available for Seneca.

Appx0678, Appx0681. Yet for all other purposes, Commerce ignored the very same fact on which it expressly relied to disregard compelling evidence of unavailability. Commerce never explained how it could both find that "the products specifically at issue in these exclusion requests" were ordered in October 2021, yet also cite theoretical future spot sales by USS to deny the requests. Appx0126.

With respect to *all* of the exclusion requests, Commerce made two claims: (1) that the distinction between spot and contract sales "is irrelevant to {its} analysis and decision," even though the redetermination emphasized future spot availability as a basis for denying the October 2021 and January 2022 requests, Appx0127; and (2) that evidence of prior dealings with USS, including its refusal to sell to Seneca for more than two years, was "irrelevant" to its determination, Appx0128. Apart from using the October 2021 purchase order dates to disregard the February-April 2022 emails for the March 2022 requests, Commerce never acknowledged the actual purchase order dates covered by the requests or how Seneca planned to use the requests "to meet its specified business activities." 15 C.F.R. § 705, Supp. 1(c)(6)(i). Nor did Commerce address Seneca's argument that its approach of filing exclusions only after confirming no additional availability from the domestic industry removes any doubt about whether the product is available for the specified purchase orders to which the exclusions would be applied if granted.

On October 21, 2024, the Trade Court summarily sustained Commerce's Remand Results, concluding that none of the eight renewed denials were arbitrary and capricious or otherwise unlawful under the Administrative Procedure Act ("APA"). *Seneca Foods Corporation v. United States*, 740 F. Supp. 3d 1336 (Ct. Int'l Trade 2024) ("*Seneca II*"), Appx0002-0030. The Trade Court found that Commerce's denials were supported by record evidence, did not contravene Commerce's regulations or prior practice, and reasonably focused on prospective evidence of steel production. *Id*.

The Trade Court never addressed Seneca's argument that its exclusion requests should have been granted because uncontroverted record evidence demonstrated that the tin mill products at issue were not available from the domestic industry at the time Seneca placed its purchase orders and filed its exclusion requests. The opinion acknowledged that according to Commerce, "some requesters are like Seneca and submit their exclusion requests after purchase orders with foreign suppliers." Appx0022. The Trade Court also held that Commerce's decision to disregard the February-April 2022 emails as irrelevant to the March 2022 requests "passes muster," given that "the emails were dated four months after Seneca had placed its orders from foreign suppliers"—the orders that Seneca planned to use the March 2022 requests to cover. Appx0017-0018. Yet the Trade Court never acknowledged or addressed the undisputed fact that USS had no availability for

Seneca at the time of those very same purchase orders, or when Seneca placed the orders covered by the October 2021 and January 2022 requests.

## VI. <u>SUMMARY OF ARGUMENT</u>

The Section 232 action of the President in Proclamation 9705 aimed to increase the capacity utilization of the domestic steel industry. Tariffs were imposed on imports to ensure that U.S. steel mills would have opportunities to make sales that might otherwise go to foreign producers. At the same time, the President directed that exclusions be made available for steel products not available in sufficient quantities from the domestic industry.

Seneca's approach sought to ensure that the President's aims would be fully realized: it purchased as much tin mill steel as possible from domestic producers, confirmed no further availability from U.S. mills, placed orders for imports solely to make up for any shortfall in domestic availability, and then—before any shipments arrived—requested exclusions explicitly to cover those very same purchase orders. With this approach, the domestic industry made as many sales to Seneca as it chose. Seneca filed exclusions only to cover purchase orders that domestic producers had affirmatively declined to supply.

Seneca explained its approach to Commerce, and emphasized the policy advantages. With unavailability at the time of the covered orders not in dispute, Commerce need not speculate about future availability or assess competing claims.

There is no risk of an objector blocking an exclusion, then refusing to supply the requester. Likewise there is no risk of a requester seeking exclusions for future import volumes that later prove unnecessary.

In support of its requests, Seneca provided extensive documentation of unavailability from USS, the only domestic producer to object—and the only one that refused to supply Seneca anything, for years. USS conceded that it had nothing to offer when Seneca placed the covered purchase orders. USS also admitted having regular sales discussions with Seneca in 2019, 2020, and 2021, yet offering nothing after February 2019.

Under both Proclamation 9705 and Commerce's regulations, the fact that USS declined to supply the very same volumes for which Seneca sought exclusions should be dispositive. The requested volumes were not available from USS immediately, or at any relevant time, to meet Seneca's specified business activities. If the President's goal is to ensure an opportunity for the domestic industry to increase its capacity utilization, allowing USS to refuse sales to Seneca and then block exclusions for orders it had declined would be irrational.

Commerce claims to take specific factual details regarding the quantity and timeliness criteria into full account, analyzing requests and objections on a case-by-case basis when applying its regulations. But Commerce entirely ignored Seneca's arguments and evidence, and never evaluated availability at the time of the purchase

orders and deliveries covered by Seneca's requests. Instead Commerce donned blinders and assessed availability during future time frames of no relevance to the orders or deliveries that Seneca certified the exclusions would cover. By applying its regulations to Seneca in this manner, Commerce acted unlawfully, and at odds with the President's directive.

Alternatively, even applying a prospective analysis of availability during irrelevant future time frames, Commerce should have granted Seneca's exclusions. Seneca documented persistent unavailability from USS, even after its objections were filed. If Commerce had considered this evidence and followed its established practice of dismissing objections in similar circumstances, Seneca's exclusions would all have been granted.

Instead Commerce engineered excuses to ignore each and every piece of evidence of the repeated refusals by USS to supply any volume to Seneca, and also ignored multiple inconsistencies in claims by USS about its dealings with Seneca. What Commerce credited were bare claims of USS regarding possible future sales. In this respect too, Commerce's actions fell far short of what the APA requires.

Finally, the Trade Court asserted erroneously that as to the covered purchase orders, Commerce's regulations provide a remedy for Seneca. In reality, only this Court can provide Seneca the relief that Commerce should have granted long ago.

## VII.  <u>ARGUMENT</u>

### A. Standard Of Review

This Court applies the standard of review set forth by the APA when reviewing a decision of the Trade Court in a suit brought pursuant to 28 U.S.C. § 1581(i), and will hold unlawful and set aside Commerce's action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Can. Lumber Trade All. v. United States*, 517 F.3d 1319, 1330-31 (Fed. Cir. 2008); *see also* 5 U.S.C. § 706(2); *Dixon Ticonderoga Co. v. United States*, 468 F.3d 1353, 1355 (Fed. Cir. 2006).

Agency action is arbitrary and capricious when the agency, for example: (1) "entirely failed to consider an important aspect of the problem"; (2) "offered an explanation for its decision that runs counter to the evidence before the agency"; or (3) acted in a way that was "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009); *see also NLMK Pa., LLC v. United States*, 617 F. Supp. 3d 1316, 1320 (Ct. Int'l Trade 2023). Likewise, agency action that departs from past practice without a reasoned justification, or treats "similarly situated {entities} differently" without "a reasoned explanation and substantial evidence," is arbitrary and capricious. *Euzebio v.*

*McDonough*, 989 F.3d 1305, 1322 (Fed. Cir. 2021) (quoting *Burlington N. & Santa Fe Ry. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005)). The court plays "a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011).

The agency's articulation must make a "rational connection between the facts found and the choice made," *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)), and its "explanation for its decision must be 'sufficient to enable {courts} to conclude that {it} was the product of reasoned decisionmaking.'" *Jicarilla Apache Nation v. Dep't of Interior*, 613 F.3d 1112, 1118 (D.C. Cir. 2010) (quoting *State Farm*, 463 U.S. at 52). An agency cannot simply disregard evidence without explanation. *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015).

**B. Given Clear Evidence Of Unavailability When Seneca Placed The Covered Orders, Commerce Failed To Follow The Exclusion Request Criteria Established In Proclamation 9705 And Its Regulations**

Commerce's denials of Seneca's Section 232 exclusion requests are unlawful because the agency failed to give effect to the President's directive to provide relief from the tariffs when "any steel article" is found "not to be produced in the United States in a sufficient and reasonably available amount." Appx0144. Commerce subsequently codified this criterion in its regulations and explained that not produced in the United States in a sufficient and reasonably available amount "means that the

amount that is needed by the end user requesting the exclusion is not *available immediately* in the United States *to meet its specified business activities*." 15 C.F.R. § 705, Supp. 1(c)(6)(i) (emphases added).

To resolve whether the full requested volume of a steel product is sufficiently and reasonably available from the domestic industry, Commerce must analyze the requester's specific plans and any objections, including any supporting documentary evidence, on a case-by-case basis. 15 C.F.R. § 705, Supp. 1(c)(6). For an objection to be sustained, the domestic producer must demonstrate that it can supply the full requested volume immediately, in a manner that enables the requester to meet its specified business activities. *Id.*, Supp. 1(c)(6)(i). Commerce defines "immediately" as meaning that the product can be delivered by a U.S. producer within eight weeks, or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire volume from the requester's foreign supplier. *Id.* This requires attention to availability at the time the requester needs the product. Where the record reveals no dispute as to unavailability at that time, in that the objector affirmatively declined to supply the requested volume, the exclusion request must be granted. Commerce's decision to ignore the fact that USS had nothing to offer at the time of Seneca's covered purchase orders and scheduled deliveries, and instead to assess speculative claims about availability in future time periods of no relevance to orders covered by the request, was arbitrary and capricious.

In each request, Seneca emphasized that it was requesting exclusions for a limited amount of tin mill products for its can manufacturing operations, and that the requests cover specific purchase orders that were placed only after Seneca received confirmation from all domestic suppliers of tin mill products that they were unable to provide Seneca with the volumes requested. Appx0282-0284, Appx0338-0340, Appx0393-0395, Appx0448-0450, Appx0503-0505, Appx0558-0560, Appx0610-0613, Appx0661-0664. Undisputed record evidence confirms that when Seneca placed these purchase orders and filed its exclusion requests, the tin mill products requested were unavailable from the sole objector, USS. Appx0298, Appx0364, Appx0419, Appx0574, Appx0627-0631, Appx0678-0679. The record also confirms that even when the covered orders were scheduled to be delivered, USS had no availability in the case of the October 2021 requests and next to nothing available for the January 2022 and March 2022 requests. Appx0519-522, Appx0526, Appx0678-0685. The table below summarizes Seneca's requests, the applicable purchase order dates, and expected delivery dates for those orders.

**Table 1: Seneca's Exclusion Requests by Purchase Order Date and Expected Delivery Date**

| Request No. | Request Date | Purchase Order Date | Expected Delivery Date | Record Citation |
|---|---|---|---|---|
| 257423 | 10/21/2021 | 4/22/2021 | Fourth Quarter 2021 | Appx0270, Appx0282-283, Appx0295-0296 |
| 257428 | 10/21/2021 | 4/22/2021 | Fourth Quarter 2021 | Appx0325, Appx0338-0339, Appx0351-0352 |
| 257708 | 10/21/2021 | 11/20/2020 | Fourth Quarter 2021 | Appx0381, Appx0393-0394, Appx0406-0407 |
| 257709 | 10/21/2021 | 5/3/2021 | Fourth Quarter 2021 | Appx0436, Appx0448-0449, Appx0461-0462 |
| 257712 | 10/21/2021 | 5/3/2021 | Fourth Quarter 2021 | Appx0491, Appx0503-0504, Appx0516-0517 |
| 275504 | 1/23/2022 | Late 2021 | During 2022 | Appx0546, Appx0558-0559, Appx0571-0572 |
| 283368 | 3/15/2022 | 10/1/2021 | 4/15/2022 | Appx0598, Appx0628 |
| 283369 | 3/15/2022 | 10/29/2021 | 4/30/2022-9/30/2022[5] | Appx0649, Appx0682 |

Commerce and the Trade Court remained willfully blind to these undisputed facts and ignored the dates of the specific purchase orders that Seneca's requests, if granted, would cover. Throughout the proceedings at Commerce and in the litigation below, Commerce never responded to Seneca's main argument that its exclusion requests must be granted because the uncontested record evidence demonstrated that the requested tin mill products were "not available immediately in the United States to meet {Seneca's} specified business activities" when it placed orders with foreign

---

[5] The exhibit containing these dates was originally submitted by Seneca to Commerce as confidential in its entirety. Given the passage of time, Seneca has decided to make these dates public.

suppliers and filed exclusion requests. Commerce also never acknowledged Seneca's argument that its approach of filing exclusions only after confirming that the domestic industry had no availability for the relevant purchase orders and delivery time frame supports the stated aims of the Section 232 action by giving domestic producers an opportunity to make increased sales and removing any doubt about whether the product is available. The Trade Court likewise never responded to Seneca's main argument or explained why it was permissible for Commerce to ignore Seneca's approach and the uncontested record evidence. Commerce's denials are thus arbitrary and capricious because it "entirely failed to consider an important aspect of the problem" and failed to identify any "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43.

In each of its exclusion requests, Seneca explained that it ordered steel from abroad and filed requests for these orders *only after* confirming with the domestic industry that they had no availability for the relevant time frame. Appx0284, Appx0301, Appx0340, Appx0357, Appx0395, Appx0412, Appx0450, Appx0467, Appx0505, Appx0522, Appx0560, Appx0576, Appx0612, Appx0663, Appx0679. Seneca did exactly as Proclamation 9705 and Commerce's regulations directed when it first asked the entire domestic industry, which consisted of three producers at that time, if they could supply Seneca "immediately" with the tin mill products it needed for late 2021 (in the case of the October 2021 requests) and 2022 (in the case of the

January and March 2022 requests). The answer across all requests was no: nothing more was available than what two of the three U.S. mills agreed to offer Seneca, and nothing at all was available for Seneca from USS.

> In its October 2021 requests, Seneca explained:

> Over the past several months, we have met with both of our domestic suppliers to understand their ability to supply more tin mill products to us in the near term. Our largest supplier indicated that there is no more material available for 2021. The smaller of our domestic suppliers likewise has no additional availability for 2021. As noted, the fourth quarter of 2021 is the window for delivery of all products covered by these requests. No domestic producer is able and willing to make any additional supply available to us within the relevant timeframe in 2021.

> Looking ahead to 2022, we continue to communicate to both domestic suppliers that we would take up to double the volume that they currently supply us on an annual basis. While they fully understand our needs, the larger supplier has agreed to volumes for 2022 that are only slightly higher than 2021, and the smaller supplier remains uncertain as to what if any volume it may offer for 2022. Both domestic suppliers have informed us that they would advise only at some uncertain future date if they will have any additional capacity for 2022.

> We also reached out to U.S. Steel to understand its ability to supply Seneca with tin mill products for our 2021 and 2022 needs. For its part, U.S. Steel was unwilling even to give us a quote for tin mill products due to its inability to supply any additional material in 2021 or beyond.

Appx0283-0284. Similarly, in its January and March 2022 requests, Seneca explained:

> Over the past several months, we have met with both of our domestic suppliers to understand their ability to supply more tin mill products to us in the near term. Our largest supplier indicated that there is no more material available for 2022. The smaller of our domestic suppliers likewise has no additional availability for 2022. Currently, no domestic

producer is able and willing to make any additional supply available to us during 2022.

We continue to communicate to both domestic suppliers that we would take up to double the volume that they currently supply us on an annual basis. While they fully understand our needs, the larger supplier has agreed to volumes for 2022 that are only slightly higher than 2021, and the smaller supplier remains uncertain as to what if any volume it may offer for 2022. Both domestic suppliers have informed us that they would advise only at some uncertain future date if they will have any additional capacity for 2022.

We also reached out to U.S. Steel to understand its ability to supply Seneca with tin mill products for our 2022 needs. For its part, U.S. Steel currently is unwilling even to give us a quote for tin mill products due to its inability to supply any additional material in 2022.

Appx0559-0560, Appx0612.

Two of the three domestic producers agreed to supply Seneca, but not with the full volumes needed. Appx0283-0284, Appx0559-0560, Appx0612. Neither supplier filed objections when Seneca had no alternative except to turn to imports. Only USS refused to supply anything to Seneca—for most of 2019, for all of 2020 and 2021, and for most of 2022—and yet only USS objected to Seneca's requests. At no point did USS contest Seneca's evidence that USS had nothing to offer Seneca when Seneca placed the orders covered by its exclusion requests. To the contrary, USS acknowledged that the orders at issue in the October 2021 requests were placed at a time when USS had nothing to offer: "The COVID-19 pandemic and other economic forces resulted in temporary U.S. tin mill supply constraints/delays in 2020 and early 2021 (i.e., *when the Requestor ordered this {product}*)." *See, e.g.,*

Appx0364, Appx0419 (emphasis added). Nor did USS contest that it had ample opportunities to make sales to Seneca during the relevant time frames. Again, USS affirmatively conceded that it "regularly discussed tin mill product availability and sales with Seneca throughout 2019, 2020, and 2021." *See, e.g.*, Appx0422.

What USS claimed was that it could supply 100% of the quantity requested by Seneca not when the relevant orders were placed, or when the requests were submitted, or by the time the ordered volumes would be delivered, but rather *in the future*, within 120 to 270 days after the date of Seneca's exclusion request filings. Appx0286, Appx0342, Appx0397, Appx0452, Appx0507, Appx0562, Appx0615, Appx0666. This claim was irrelevant to the requests at issue, which covered volumes ordered at a time when USS stated it had nothing available. Appx0364, Appx0416, Appx0419, Appx0629-0631. Nonetheless, Seneca explained in its rebuttals to the October 2021 requests that "the fact that USS now claims the ability to supply Seneca in 2022, within 270 days in the case of ETP and 120 days in the case of TFS, is good news if—for a change—it proves to be true." Appx0299. Seneca looked forward to being able to buy from USS for the first time in years, after USS had repeatedly declined to offer Seneca any steel and had not shipped a single coil to Seneca since February 2019. Appx0300.

Unfortunately, even this welcome news turned out to be inaccurate: Seneca immediately followed up with USS after its objections, only to be told that USS

either still had nothing available, Appx0305, or would only be able to deliver a mere fraction of the volume requested—and several months later, Appx0629-0631. USS also falsely claimed in its objections to the October 2021 and January 2022 exclusion requests that it had supplied Seneca with tin mill products within the last two years, a claim it admitted was inaccurate in its surrebuttal filings for the October 2021 requests. Appx0311, Appx0367, Appx0422, Appx0477, Appx0532.

Applying Proclamation 9705 and its regulations to these facts, Commerce should have summarily approved Seneca's exclusion requests. The record before Commerce supports only a single conclusion, one that USS never challenged: for the specific orders that Seneca certified were covered by its exclusion requests, the tin mill products at issue were not "produced in the United States in a sufficient and reasonably available amount" and thus were not "available immediately" as defined by Commerce from either USS or the other domestic producers "to meet {Seneca's} specified business activities." 15 C.F.R. § 705, Supp. 1(c)(6)(i). Commerce failed to follow the President's directive in Proclamation 9705 or its own regulations. Commerce instead ignored the conceded unavailability at the time Seneca placed orders and filed requests, but credited the dubious and ultimately irrelevant claims of USS that it could supply Seneca 120 to 270 days *after* Seneca filed the requests, a time frame with no connection to the purchase orders at issue.

To be clear, Seneca is not facially challenging Commerce's Section 232 exclusion regulations as inconsistent with Proclamation 9705. Those regulations are not facially unlawful because there are circumstances in which the stated approach of Commerce is consistent with the President's directive. *C.f. Am. Ass'n of Cosmetology Schls. v. Devos*, 258 F. Supp. 3d 50, 66 & n.6 (D.D.C. 2017) (explaining that "in the administrative law context, courts often classify challenges {as facial or as-applied} based on whether it appears, from the complaint, that the plaintiff is asserting that under no set of circumstances could the regulation be in accord with the statute"). For example, in cases where there has been no course of dealing between the requester and the objector, Commerce's prospective approach makes sense. In such cases, it is not just appropriate but necessary to project what can versus cannot be supplied within a reasonable future time frame. However, that approach is not only unnecessary but inappropriate here, given clear and uncontested course of dealing evidence between the two companies during the exact time frame of Seneca's orders and "specified business activities."

Accordingly, Seneca is challenging Commerce's Section 232 exclusion regulations as applied to Seneca. Courts have repeatedly concluded that plaintiffs can bring suit to consider the lawfulness of regulations as applied to that particular plaintiff. *See Nat'l Org. of Veterans' Advocs. Inc. v. Sec'y of Veterans Affs.*, 927 F.3d 1263, 1271 (Fed. Cir. 2019) (after upholding rule from facial challenge,

explaining that a future plaintiff "in an exceptional future case could succeed in demonstrating that the application of the amended regulation to the {plaintiff's} particular circumstances was arbitrary"); *Cellular Telecomms. & Internet Ass'n v. FCC*, 330 F.3d 502, 509 (D.C. Cir. 2003) (noting that once the agency "enforces the regulation against petitioners, then petitioners may be able to challenge the underlying regulation as applied to them"); *Ass'n of Priv. Sector Colls. and Univs. v. Duncan*, 681 F.3d 427, 447 (D.C. Cir. 2012) (endorsing the right of private parties to "seek appropriate as-applied relief"). Here, Seneca challenges Commerce's final agency action as applied to Seneca—namely, the agency's denials of eight exclusion requests. This Court is well within its authority to review the application of Commerce's regulations to Seneca's requests.

Neither Proclamation 9705 nor Commerce's regulations allow the agency to ignore clear and undisputed evidence of unavailability at the time the end user needed the steel, placed the relevant orders, and filed exclusion requests to cover those orders. Commerce cannot lawfully turn a blind eye to this evidence. In fact, Commerce's regulations provide that the agency will "review each exclusion request … on a case-by-case basis to determine whether the requester has shown that the article is not produced in the United States in a sufficient and reasonably available amount." 15 C.F.R. § 705, Supp. 1(c)(6).

In this case, Seneca asked all domestic producers for the requested tin mill products—sourcing as much as possible from the domestic steel industry, consistent with the company's longstanding preference and the stated aims of Proclamation 9705—*before* placing orders with foreign suppliers and filing exclusion requests to cover those orders. Appx0284, Appx0340, Appx0395, Appx0450, Appx0505, Appx0560, Appx0612, Appx0663. All three domestic tin mills explained that they could not provide Seneca with the additional tonnage needed in 2021 (in the case of the October 2021 requests) or 2022 (in the case of the January and March 2022 requests). *Id.* Seneca documented and certified those facts in its requests, emphasizing that these tin mill volumes were not available when Seneca placed the orders covered by the requests. Neither USS nor any other domestic producer disputed those facts.

Commerce should have evaluated these unique facts on a case-by-case basis, as its regulations prescribe, and promptly granted Seneca's exclusion requests. Uncontested record evidence confirmed that the tin mill products required by Seneca "to meet its specified business activities" were not produced in the United States in a sufficient and reasonably available amount at the time Seneca placed its orders and sought exclusions.

### C. Commerce's Regulations As Applied To Seneca Prospectively Should Likewise Have Resulted In Approval Of Seneca's Requests

Alternatively, Commerce's decisions denying Seneca's Section 232 exclusion requests were also unlawful under the agency's standard assessment of future availability, even though the time frames assessed were irrelevant to Seneca's specified business activities. Under Commerce's regulations and practice, the agency analyzes whether the steel requested by Seneca was "produced in the United States in a sufficient and reasonably available amount" by examining if USS could supply Seneca with the volumes requested "immediately," 15 C.F.R. § 705, Supp. 1(c)(6), which it interpreted to mean by a date within 120 to 270 days of the exclusion request, depending on the request.[6] Appx0120, Appx0122, Appx0124, Appx0126. Even under this prospective analysis of hypothetical future availability, Commerce should have dismissed the USS objections and approved Seneca's exclusion requests given the overwhelming evidence of unavailability from USS, the false and contradictory claims of USS, and the agency's established practice.

### 1. The Record Evidence Confirmed That USS Was Unable To Supply The Volumes Requested Within The Applicable Time Periods

Commerce's denials of the Seneca requests were arbitrary and capricious because for each request the record evidence clearly demonstrated that USS not only

---

[6] Commerce also considered two other future periods in its *Remand Results*: (1) the number of days in which USS claimed confidentially in surrebuttals that it could supply Seneca; and (2) the sum of the number of days Seneca reported in its exclusion requests to take delivery of the product and the number of days required

was unwilling to supply Seneca when the relevant orders were placed, but also was unable to supply Seneca the full volume within the applicable time frame.

For the October 2021 requests, Commerce considered whether USS could supply Seneca with the steel requested by either mid-February 2022 or mid-July 2022. Appx0120, Appx0122. The record contained Seneca's summary of recent dealings with USS, which would not even give Seneca a quote for its 2021 and 2022 steel needs. Appx0284, Appx0340, Appx0395, Appx0450, Appx0505, Appx0560, Appx0612, Appx0663. USS never challenged or contradicted that evidence. The record also contained Seneca's sworn statement in its rebuttal that a few days prior to submitting its rebuttal submission, it "engaged USS for volumes to be delivered in 2022, but USS offered nothing." Appx0299-0300, Appx0355-0356, Appx0410, Appx0465, Appx0520. Seneca supported its statement with an email from late November 2021, after USS had objected to Seneca's requests and certified immediate availability, in which Seneca summarized conversations from several months prior where USS advised that it had "no tinplate or TFS to offer {Seneca} for 2022" and Seneca asked if anything had "changed on the availability of ETP or TFS." Appx0305. USS responded by saying it does not have "anything" available

---

to ship the product from the foreign port of departure to Seneca's loading dock. Appx0119-0120, Appx0122-0124, Appx0126. Regardless of the period evaluated, Commerce's denials were erroneous because the record did not support a finding that USS could and would supply Seneca.

for February 2022 and would let Seneca know if that changes. *Id.* At no point during the time frame assessed by Commerce did USS contact Seneca or offer any volume.

Moreover, USS admitted in belated corrections that its certified claims of supplying Seneca within the last two years were false and that USS had not supplied Seneca with any tin mill products since February 2019—despite "regular{}" sales conversations with Seneca throughout 2019, 2020, and 2021. Appx0311. Even the manufacturing and delivery time claimed in the USS surrebuttals as of December 10 or 13, 2021, was directly contradicted by an email that USS sent on November 30, 2021, informing Seneca that it did not have "anything" for delivery in February 2022. *Compare* Appx0311-0312, Appx0367-0368, Appx0422-0423, Appx0477-0478, Appx0532-0533 *with* Appx0305. Thus, the only shreds of record evidence supporting Commerce's denials—certified claims of availability by USS—were demonstrably false and contradicted by significant record evidence.

For the January 2022 request, Commerce considered whether USS could supply Seneca with the requested volume by late October 2022. Appx0124. The record contained the same information as the October 2021 requests, with Seneca emphasizing that USS was unwilling even to provide a quote for Seneca's 2022 volume needs. Appx0123-0124. As with the prior requests, USS never challenged Seneca's evidence that USS refused to provide Seneca a quote for its 2022 requirements. In its objection, USS also continued to falsely claim that it had

supplied Seneca with tin mill products in the past two years. Appx0567. USS had already retracted this falsehood in earlier submissions, admitting that despite regular sales communications with Seneca from 2019 through 2021, the last time USS had supplied Seneca with tin mill products was in February 2019. Appx0532. Yet it repeated the same falsehood again. The record also contained the same November 2021 email in which USS stated that it did not have "anything" available through February 2022 but would let Seneca know if that changes. Appx0578. The record for this request contains no evidence that USS ever approached Seneca.

Finally, for the March 2022 requests, Commerce considered whether USS could supply Seneca with the steel requested by mid-December 2022. Appx0126. The requests contained Seneca's summary of additional recent dealings with USS, indicating that USS declined to give Seneca even a quote for its 2022 steel needs and had neither "quoted nor offered to Seneca, let alone delivered, a *single ton of steel* for *more than two years*." Appx0612, Appx0663 (emphases in original). As before, USS never challenged this evidence. In addition to the November 2021 email confirming that USS had nothing available through February 2022, the record contained emails between USS and Seneca from February-April 2022 following up on the November 2021 email to see if USS had "{a}nything to offer yet." Appx0629-0631, Appx0683-0685. In response, USS finally offered limited volume, but it was only 500 tons—a mere fraction of the 3,000 tons of TFS that Seneca had requested.

*Id*. Moreover, USS made this trivial volume available for delivery only months later, in July 2022. *Id.* USS filed a surrebuttal dated May 2, 2022 in which it provided confidential manufacturing and delivery times. Appx0636, Appx0690-0691. However, this information was contradicted by the April 2022 email in which USS said its "{r}ealistic timeline {for delivery} will be July." Appx0629, Appx0683.

Instead of approving Seneca's exclusion requests based on overwhelming record evidence that USS could not provide a "sufficient and reasonably available amount" of tin mill products to Seneca, Commerce unlawfully disregarded every piece of record evidence demonstrating unavailability from USS. As explained below, Commerce's rationales for disregarding all evidence of unavailability lack merit and should result in this Court finding Commerce's denials and reasoning to be arbitrary and capricious.

### a) November 2020 Correspondence

With regard to the November 2020 correspondence, Commerce proffered two reasons for why it "assigned virtually no weight to this email." Appx0118. The first was that the email was sent—and references a time period—long before the request was filed and thus was not informative due to the "ever-changing nature of steel … production schedules." *Id*. The second was that Commerce's unidentified Subject Matter Expert ("SME") was unable to confirm that the email referred to the same

product requested. *Id.* The Trade Court found Commerce's reasoning to be reasonable, Appx0015-0016, but it was flawed on both counts.

First, the November 2020 email was directly relevant to availability at the time Seneca placed the orders covered by the requests. As Seneca explained:

> {O}n Nov. 13, 2020, USS confirmed via phone that it would not offer Seneca *any* steel for 2021 delivery, regardless of price. USS stated that it did not want to make any commitment at the time at any price and noted that if it had available volume in future months, it would contact Seneca.

Appx0299 (emphasis in original). Seneca provided the November 13, 2020, email as contemporaneous support in Exhibit 1 of its request. Appx0302-0303. Based on the refusal of USS to supply Seneca "any steel for 2021 delivery," Seneca then proceeded to place purchase orders on November 20, 2020, April 22, 2021, and May 3, 2021, all for delivery during the fourth quarter of 2021. Appx0282-0283, Appx0299. The November 2020 email was thus directly relevant to availability when Seneca placed the covered purchase orders.

Further, the email relates to a time frame that extended well *beyond* November 2020, given that USS indicated if it had "available production in any month, they will contact us and see if we have interest." Appx0303. The record confirms that USS never offered any volume to Seneca throughout 2021, even though Seneca continued actively attempting to source from USS. Appx0311 (USS conceding that

it had not supplied Seneca since February 2019 and had "regularly discussed" availability and sales with Seneca throughout 2019, 2020, and 2021).

Second, the decision by the SME to disregard the November 2020 email because it allegedly does not pertain to the products at issue is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise," and thus is arbitrary and capricious. *State Farm*, 463 U.S. at 43. The November 2020 email stated unequivocally that USS is "not offering anything now at any price," Appx0303, and Seneca provided additional context in its exclusion request that USS confirmed via phone it would not offer Seneca "*any* steel for 2021 delivery." Appx0299 (emphasis in original). Disregarding the email because it did not explicitly list specific tin mill products is absurd, especially given the references to "anything" in the email and "*any* steel" in Seneca's exclusion request. Appx0299, Appx0303 (emphasis in original).

The Trade Court has held that it cannot credit the conclusions of an unidentified SME, nor can it "identify a 'rational connection between the facts found and the choice made' when it is unclear what factors the SME weighed, and who made this decision." *NLMK Pa.* 617 F. Supp. 3d at 1323-24 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). This SME's decision to disregard the November 2020 email likewise deserves no deference.

### b) November 2021 Correspondence

Commerce disregarded the November 2021 correspondence because it interpreted the statement "right now for Feb I don't have anything as of yet" to refer only to contract sales, not future spot sales, by USS. Appx0120-0123. The Trade Court found Commerce's interpretation to be lawful even though it might be possible to draw "two inconsistent conclusions from the evidence." Appx0017 (quoting *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1001 (Fed. Cir. 2023)). But this exchange is unambiguously not focused on contract sales, and if anything the responses of USS are exclusively about monthly spot sales, not annual contract sales. The emails address possible incremental volume in February 2022 or other future months—the very definition of the spot market. Nothing in the emails refers or relates to the negotiation of annual contract volumes. Appx0305. There is only one conclusion to be drawn from this correspondence: even after filing objections, USS had nothing available to sell to Seneca, whether on a spot or contract basis. It was clear error for Commerce to conclude otherwise.

### c) February-April 2022 Correspondence

Commerce disregarded the February-April 2022 emails because they were sent "approximately four months after {Seneca} completed purchase orders with its foreign producer" and thus "do not pertain to the products specifically at issue in these exclusion requests." Appx0126. The Trade Court found this explanation

"passes muster." Appx0018. But Commerce's rationale is arbitrary and capricious because the agency "entirely failed to consider an important aspect of the problem": if the orders "specifically at issue" were placed four months before this correspondence, Commerce needed to address availability from USS at the time of those orders and their associated delivery dates. *State Farm*, 463 U.S. at 43.

For the purchase order dates, Commerce expressly relied on Exhibit 2 to Seneca's rebuttal, Appx0628, Appx0682, a chart showing the purchase order and delivery dates covered by the March 2022 requests. The February-April emails reveal that USS offered only one-sixth of the TFS that Seneca needed, and only in July—several months after the ordered TFS volume was needed. Appx0629-0631, Appx0683-0685. The chart and emails together demonstrated that nearly all covered orders (all 3,000 MT of TFS and 15,000 of 20,000 MT of ETP) would be delivered by June 2022, which is before USS could supply even its limited quantity (500 MT of TFS) in July 2022.[7] *Compare* Appx0628 *with* Appx0629-0631. By simply ignoring these communications, Commerce never had to explain how the chart and the emails do not conclusively establish that USS was unable to meet the quantity criterion. This is especially so given the agency's acknowledgement that the orders covered by the requests were placed months earlier, in October 2021, when it is undisputed that USS had nothing available to sell to Seneca.

---

[7] Seneca is making this information public given the passage of time.

*     *     *

Having devised excuses to ignore all compelling evidence of unavailability from USS, Commerce found that USS could somehow supply Seneca with the full requested volumes on a spot basis in future months. This finding was arbitrary and capricious and an abuse of discretion.

### 2. Commerce Failed To Follow Its Practice Of Dismissing Baseless Objections And Treated Similarly Situated Entities Differently Without Explanation

Commerce failed to follow its practice of dismissing baseless objections when it denied Seneca's eight exclusion requests. For exclusions filed by other requesters, Commerce routinely dismisses baseless objections for failing to meet any one of the quantity, timeliness, or quality criteria.

For example, where an objector makes contradictory or ambiguous claims in its objection and surrebuttal filings, or where its claims are contradicted by other record evidence, Commerce has an established practice of rejecting the objection. *See, e.g.*, Appx0695-0699 (finding that USS failed the quality criterion and rejecting its objection where USS made contradictory statements in its objection and surrebuttal); Appx0741-0745 (finding that USS failed the timeliness criterion and rejecting its objection where it provided an unclear and ambiguous timeline for when it would be able to deliver the steel requested); Appx0769-0773 (finding that Cleveland-Cliffs failed the timeliness criterion where it was unclear about the length

of time it would take to deliver the product requested); Appx0748-0752 (finding that Arconic failed the quantity criterion and rejecting its objection where it claimed to manufacture 100% of the requested quantity but also conceded that it would not supply any quantity to a competitor); Appx0709-0714 (finding that Zekelman failed the quantity criterion and rejecting its objection where Zekelman claimed to produce 100% of the requested product but email correspondence submitted by the requester from several months prior indicated that the objector did not currently have capacity to provide the requested product).

In every exclusion request decision involving an objection, Commerce also states that its policy is to consider "sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request." *See, e.g.*, Appx0268. If an exclusion requester submits correspondence within that timeframe demonstrating that the objector does not meet the quantity, timeliness, or quality criterion, then Commerce's practice is to dismiss the objection. Appx0709-0714, Appx0725-0740.

In a very similar situation, Appx0713, an exclusion requester submitted recent correspondence indicating that the objector had no capacity to supply the requested product. On that basis, Commerce determined that the objector failed the quantity criterion, dismissed the objection, and did not further analyze the timeliness or quality criteria. Appx0712-0714. In that case, the requester sought an exclusion in

July 2022 after first reaching out to domestic producers to see if any had available capacity. Appx0032, Appx0042. When asked, the domestic producer—Zekelman—explained that it had no current capacity available, just like USS in this case. *See* Appx0718-0721. Again like USS, Zekelman nonetheless proceeded to object and publicly claimed to be able to supply the requested product in 60 days. Appx0714. In its rebuttal, the requester submitted emails from several months prior to submission of the request in which the objector stated it was "pretty much at maximum capacity" and "completely booked." Appx0721-722. This evidence was more than enough for Commerce to dismiss the objection.

While deferring to Commerce across the board, the Trade Court misunderstood Commerce's regulations and practice in several key respects. For example, the opinion indicated that in order to dismiss an objection, "Commerce must find that both the timeliness and quantity promised by an objector are insufficient to the foreign alternative." Appx0022. This statement is incorrect. As articulated in numerous decision memoranda, Commerce's practice is to dismiss an objection if *any* single criterion—timeliness, quantity, or quality—is not met by the objector. *See, e.g.*, Appx0744-0745, Appx0765-0766, Appx0772-0773. As the regulations make clear, the burden is on the objector to demonstrate that an exclusion should be denied, and the objector must prevail across *all* the specified criteria. Appx0158. The Trade Court erroneously understood that burden to be reversed, with

Commerce requiring the requester to demonstrate that the objector's claims and offerings are insufficient on each and every criterion.

Commerce's denials here are arbitrary and capricious because the agency failed both to follow its practice and to treat similarly situated parties the same. The objections and surrebuttals filed by USS were rife with ambiguities and admissions, and were contradicted by extensive evidence supplied by Seneca, all of which should have prompted Commerce to conclude, as in other cases, that USS did not meet the quantity or timeliness criterion and dismissed its objections. The agency's refusal to follow its standard practice resulted in decisions that are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

### D. Seneca's Only Remedy For The Entries Ordered Between November 2020 And Late 2021 Lies In This Court

The Trade Court erroneously stated that Seneca has an "administrative recourse {under the regulations} when faced with potentially unreliable domestic suppliers" and can "receive relief from Commerce that is retroactive to the entries associated with the initial request." Appx0029. Not so—Commerce does not allow retroactive relief in that context. In informal guidance, Commerce has described when it allows requests to be resubmitted with possible relief back to the date of the original request; abuse of the objection process by an unreliable domestic producer is not a basis for resubmission and retroactive relief. Appx0258-0259.

Moreover, during this litigation, Seneca specifically asked Commerce via the Department of Justice whether Seneca could resubmit its denied requests and, if approved, receive relief retroactive to the date of its initial exclusion requests. The answer from Commerce was no: any new requests—if granted—would be ineligible for retroactive relief back to the date of the initial requests. *See* Pl.'s Post-Arg. Submission at 4, July 21, 2023, ECF No. 49 (summarizing telephone conversation between counsel on July 19, 2023).

In sum, Commerce made clear that there was no remedy at the agency level for Seneca to obtain relief from the tariffs on the orders and entries covered by the denied requests. Seneca's only avenue for possible relief was in litigation, a fact that the Trade Court failed to grasp when it asserted erroneously that "Commerce's procedures, on their face, offered a valid remedy in this case that Seneca did not avail itself of." Appx0030. Seneca did avail itself of this potential remedy, which Commerce flatly rejected.

## VIII. <u>CONCLUSION AND STATEMENT OF RELIEF SOUGHT</u>

Based on the foregoing, Seneca respectfully requests that this Court reverse the Trade Court's decision sustaining Commerce's Remand Results and remand with instructions to approve Seneca's eight Section 232 exclusion requests and reliquidate and refund the Section 232 duties paid on applicable entries.

Respectfully Submitted,

*/s/ James M. Smith*
James M. Smith
Thomas Brugato
Edward J. Thomas III

**COVINGTON & BURLING LLP**
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

*Counsel for Plaintiff Seneca*
*Foods Corporation*

Dated: February 21, 2025

# ADDENDUM

# ADDENDUM OF REQUIRED DOCUMENTS
# AND RELEVANT AUTHORITIES

## CONTENTS

| Tab | Document | Page Range |
|-----|----------|------------|
| 1 | Judgment, *Seneca Foods Corp. v. United States*, Ct. No. 22-00243 (Ct. Int'l Trade Oct. 21, 2024) (Public Document) | Appx0001-Appx0001 |
| 2 | Amended Slip Op. 24-117, *Seneca Foods Corp. v. United States*, Ct. No. 22-00243 (Ct. Int'l Trade Oct. 21, 2024) (Public Version)* | Appx0002-Appx0073 |
| 3 | Slip Op. 23-152, *Seneca Foods Corp. v. United States*, Ct. No. 22-00243 (Ct. Int'l Trade Oct. 18, 2023) (Public Document) | Appx0074-Appx0098 |
| 4 | Final Results Pursuant to Court Remand, *Seneca Foods Corp. v. United States*, CIT Ct. No. 22-00243 (Apr. 1, 2024) (Public Version)* | Appx0099-Appx0128 |

## <u>CONFIDENTIAL MATERIALS OMITTED</u>

\* The documents identified with an asterisk contain business proprietary information in the confidential version of the addendum to Seneca's opening brief. These documents include pages that contain confidential offer information submitted by Seneca, excerpts from confidential sales correspondence between Seneca and U.S. Steel Corporation, and confidential manufacturing and shipping times submitted by U.S. Steel Corporation. The business proprietary information was subject to the protective order and Federal Circuit Rule 25.1. The confidential information has been removed in the non-confidential version of the addendum to Seneca's opening brief.

Confidential information has been removed from the following pages of the addendum: Appx0014, Appx0018, Appx0019, Appx0119, Appx0120 Appx0122, Appx0123, Appx0124, Appx0126.

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SENECA FOODS CORP.,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>        Defendant. | Before: Gary S. Katzmann, Judge<br>Court No. 22-00243 |

<u>**JUDGMENT**</u>

The case having been submitted for decision, and the court, after due deliberation, having rendered three opinions; now, in conformity with those opinions, it is hereby

**ORDERED** that the U.S. Department of Commerce's <u>Remand Results</u> (Dep't Com. Apr. 1, 2024), ECF No. 58, are sustained as to all counts in Plaintiff's Complaint ¶¶ 95–105, Aug. 19, 2022, ECF No. 6; and it is further

**ORDERED** that judgment is entered for Defendant the United States.

**SO ORDERED.**

                                    <u>/s/     Gary S. Katzmann</u>
                                            Judge

Dated: <u>October 21, 2024</u>
       New York, New York

Slip Op. 24-117

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

SENECA FOODS CORP.,

            Plaintiff,

v.

UNITED STATES,

            Defendant.

</td><td>

Before: Gary S. Katzmann, Judge
Court No. 22-00243

*PUBLIC VERSION*

</td></tr>
</table>

## OPINION

[ All eight of Commerce's denials are sustained.  Judgment on the agency record will enter for Defendant. ]

Dated: <u>October 21, 2024</u>

<u>James M. Smith</u>, Covington & Burling LLP, of Washington, D.C., argued for Plaintiff Seneca Foods Corporation.  With him on the briefs were <u>Thomas Brugato</u>, <u>Kwan Woo (Kwan) Kim</u>, and <u>Edward J. Thomas III</u>.

<u>Tara K. Hogan</u>, Assistant Director, U.S. Department of Justice, Washington, D.C., argued for Defendant United States.  With her on the briefs were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General and <u>Patricia M. McCarthy</u>, Director.  Of Counsel on the brief were <u>Tristan De Vega</u>, Attorney, and <u>Kenneth Kessler</u>, Senior Counsel, Office of the Chief Counsel for Industry and Security, U.S. Department of Commerce, of Washington, D.C.

Katzmann, Judge:  This case involves Commerce's discretion in evaluating requests for exclusion from Section 232 national security tariffs.  Plaintiff Seneca Foods Corporation ("Seneca") is the nation's largest vegetable canner and the last food company in the U.S. that still makes its own cans.  From 2020 to 2022, it faced one key impediment:  Seneca struggled to find sufficient tin mill products ("TMP"), consisting of steel, in order to manufacture its cans.  After trying and failing to source TMP domestically, Seneca placed import orders with foreign producers of TMP in 2021 and 2022.  But foreign steel came at a higher cost.  In 2018, the President imposed

Court No. 22-00243                                                                 Page 2
**PUBLIC VERSION**

25 percent tariffs on imports of specific steel articles from all countries except Canada and Mexico.

See Adjusting Imports of Steel into the United States, Pres. Proc. No. 9705, 83 Fed. Reg. 11625

(Mar. 8, 2018).  That tariff was imposed pursuant to the President's authority under Section 232

of the Trade Expansion Act of 1962, 19 U.S.C. § 1862.

In October 2021, January 2022, and March 2022, Seneca submitted eight requests to the

U.S. Department of Commerce ("Commerce") for exclusion from the 25 percent tariff, arguing

that TMP was not produced in the United States in a sufficient and reasonably available amount.

Commerce denied all eight requests in April and July of 2022.[1]  Seneca then initiated this action

challenging Commerce's denials as arbitrary and capricious under the Administrative Procedure

Act, 5 U.S.C. § 706(2).  On October 18, 2023, the court remanded all eight denials to Commerce

for further explanation and reconsideration.  See Seneca Foods Corp. v. United States ("Seneca

---

[1] Of the eight requests filed by Seneca:

- Five requests, filed in October 2021, were denied in April 2022.  See Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257423 (Apr. 9, 2022), P.R. 1; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257428 (Apr. 9, 2022), P.R. 50; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257708 (Apr. 9, 2022), P.R. 100; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257709 (Apr. 9, 2022), P.R. 149; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257712 (Apr. 9, 2022), P.R. 198 (together, the "October 2021 Requests").

- One request, filed in January 2022, was denied in April 2022.  Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 275504 (Apr. 30, 2022), P.R. 247 (the "January 2022 Request").

- Two requests, filed in March 2022, were denied in July 2022.  See Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 283368 (July 9, 2022), P.R. 293; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 283369 (July 9, 2022), P.R. 342 (together, the "March 2022 Requests").

Court No. 22-00243                                                                Page 3
***PUBLIC VERSION***

I"), 47 CIT__, __, 663 F. Supp. 3d 1325, 1331 (2023), ECF No. 50.

Commerce again denied all eight of Seneca's exclusion requests on remand.  See Remand Results (Dep't Com. Apr. 1, 2024), ECF No. 58-2.  Seneca now renews its claims against Defendant the United States ("the Government") and requests that the court "(i) declare that Commerce's denials were arbitrary and capricious or otherwise unlawful under the APA; (ii) declare that Seneca was entitled to the requested exclusions from Section 232 tariffs retroactive to the date of filing; [and] (iii) instruct Commerce to grant the denied exclusions."  Pl.'s Cmts. on Remand Redetermination at 32, May 1, 2024, ECF No. 62 ("Pl.'s Cmts").

The court sustains the Remand Results.  None of the eight renewed denials was arbitrary and capricious or otherwise unlawful under the APA.  Judgment on the agency record will enter for the Government.

## BACKGROUND

The court presumes familiarity with the history of this litigation.  See Seneca I, 663 F. Supp. 3d at 1329–35.  The essential facts and points of law are recounted here as relevant to the court's review of the Remand Results.

### I.    Legal Background

Section 232 of the Trade Expansion Act of 1962 empowers the President to impose tariffs on specific imported goods if the Secretary of Commerce determines that they are brought into the United States in "such quantities or under such circumstances as to threaten or impair the national security."  19 U.S.C. § 1862.  Through Presidential Proclamation 9705, the President invoked Section 232 to impose a 25 percent tariff on certain steel articles imported into the United States from all countries except Canada and Mexico.  See Proclamation, 83 Fed. Reg. 11625.  The

President also authorized Commerce to create and administer a process "to provide relief from the [tariffs] for any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality" or "upon specific national security considerations." Id. at 11627.

The relief process begins with the filing of an exclusion request by a "directly affected individual[] or organization[] located in the United States." 15 C.F.R. pt. 705, supp. 1(c)(1). The request must clearly identify and establish one of the two bases for exclusion: either (1) that the article "is not produced in the United States in a sufficient, reasonably available amount, and of a satisfactory quality," or (2) that "specific national security considerations" justify the article's exclusion. Id. pt. 705, supp. 1(c)(5)(i). Relevant here, an article "[n]ot produced in the United States in a sufficient and reasonably available amount" means that the article is not available "immediately" in the United States to meet the requester's specified business activities, with "immediately" defined as eight weeks or, if not possible, a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier. Id. pt. 705, supp. 1(c)(6)(i).

Following the exclusion request, a domestic steel producer may file an objection that refutes "the specific basis identified in, and the support provided for, the submitted exclusion request." Id. pt. 705, supp. 1(d)(4). In its objection, the domestic steel producer must "identify how it will be able to produce and deliver the quantity of steel . . . needed" as part of its obligation to "clearly identify, and provide support for, its opposition to the proposed exclusion." Id. pt. 705, supp. 1(d)(4). The "burden is on that supplier to demonstrate that the exclusion should be denied because of failure to meet the specified criteria." Submissions of Exclusion Requests and

<u>Objections to Submitted Requests for Steel and Aluminum</u>, 83 Fed. Reg. 46026, 46029 (Dep't Com. Sept. 11, 2018). The requester and objector may file a rebuttal and surrebuttal, respectively. 15 C.F.R. pt. 705, supp. 1(f)–(g). It is further "incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times." <u>Id.</u> pt. 705, supp. 1(d)(4). Such additional evidence may include confidential or proprietary business information ("CBI"). 15 C.F.R. pt. 705, supp. 1(b)(5)(iii). All filings in the process— from the exclusion request to the surrebuttal—are submitted via online forms made available through Commerce's "232 Exclusions Portal." <u>Id.</u> pt. 705, supp. 1(d)–(h). Each online form requires the filer to certify that the information submitted is "complete and correct to the best of [the filer's] knowledge." <u>See</u> P.R. 17–18, 29, 35, 47.[2]

Commerce's Bureau of Industry and Security ("BIS") then evaluates all filings to determine whether the steel article meets one of the two bases for exclusion. To determine whether the potentially excluded steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, BIS solicits a memorandum from the International Trade Administration ("ITA") that presents factual findings and recommends granting or denying the exclusion request in full or in part. <u>See</u> P.R. 1. BIS then issues a determination with an

---

[2] P.R. refers to the Public Record, which contains the eight public administrative records relevant to this case. <u>See</u> Pub. Admin. R., December 2, 2022, ECF No. 25. C.R. refers to the Confidential Record, which includes both public and business proprietary information ("BPI") submitted by the parties in the course of the agency proceedings. <u>See</u> Confidential Admin. R., Dec. 2, 2022, ECF No. 24.

Seneca has also made public certain information that it had treated as business proprietary given the "passage of time." Pl.'s Resps. to Letter at 4 n.1, July 7, 2023, ECF No. 45. Citations to this now-public information, which does not appear in the Public Record as filed, will refer to the Confidential Record.

Court No. 22-00243                                                                Page 6
**PUBLIC VERSION**

explanation that is "responsive to any of the objection(s), rebuttal(s) and surrebuttal(s) for that submitted exclusion request." 15 C.F.R. pt. 705, supp. 1(h)(2)(i). BIS may accept and adopt the ITA's recommended findings if BIS finds that there are no overriding national security concerns that compel a grant of the exclusion request. See P.R. 1.

If the objector thereafter refuses to fulfill the requester's orders of the steel article in a sufficient and reasonably available amount or in a satisfactory quality, "the requester may submit a new request with documentation evidencing this refusal." Section 232 Steel and Aluminum Tariff Exclusions Process: Interim Final Rule, 85 Fed. Reg. 81060, 81065 (Dep't Com. Dec. 14, 2020) ("Interim Final Rule"). That new exclusion request restarts the entire process described above. If the objector continues to contest the new exclusion request, Commerce allows "the exclusion requester to document in the rebuttal the past activity with that objector." Id.

Finally, "[c]ompanies are able to receive retroactive relief on granted requests dating back to the date of the request's submission on unliquidated entries." 15 C.F.R. pt. 705 supp. 1(h)(2)(iii)(A). That means that once Commerce grants an exclusion, a requester can obtain relief from U.S. Customs and Border Protection dating back to the submission date for "unliquidated entries and for entries that are liquidated but where the liquidation is not final and the protest period has not expired." AM/NS Calvert LLC v. United States, 47 CIT __, __, 654 F. Supp. 3d 1324, 1335 (2023) (quoting Cargo Systems Messaging Service, CSMS #42566154, Section 232 and Section 301—Extensions Requests, PSCs, and Protests (CBP May 1, 2020)).

## II.    *Factual Background*

As mentioned above, Plaintiff Seneca is the largest vegetable canner in the United States and the only U.S. food company that continues to manufacture its own cans. Seneca I, 663

***PUBLIC VERSION***

F. Supp. 3d at 1331.  Before 2014, Seneca had relied entirely on domestic producers of tin mill

products to manufacture its cans.  Id.  But in 2014, Seneca began to source tin mill products from

foreign countries, citing increasing supply shortfalls from the few U.S. suppliers with fully

integrated operations.  Id.

      In October 2021, January 2022, and March 2022, Seneca filed with Commerce a total of

eight requests for the exclusion of certain steel articles from tariffs imposed under Section 232 of

the Trade Expansion Act of 1962.  Seneca I, 663 F. Supp. 3d at 1328, 1331.  Seneca's requests

sought exemptions for imported tin-free steel ("TFS") from Japan and China and prime electrolytic

tinplate ("ETP") from China and Turkey.  Id. at 1331.  Domestic steel producer U.S. Steel

Corporation ("USS") objected to all eight requests, and Seneca and USS proceeded to file

rebuttals, surrebuttals, and additional evidence as relevant to each request.  Id. at 1331–32.  As part

of its rebuttal materials, and as relevant to each request, Seneca placed on the various

administrative records three emails or email chains intended to show the course of dealing between

Seneca and USS: (1) one from November 2020, see P.R. 41, (2) another from November 2021, see

C.R. 43–44, and (3) a third from February 2022 to April 2022, see C.R. 338–42.  As part of its

surrebuttal materials, USS placed on the record BPI reflecting an estimate of how long it would

take to produce the steel in each of Seneca's requests.  See C.R. 49–50.

      Commerce initially denied Seneca's six exclusion requests submitted in October 2021 and

January 2022, finding that USS was able to deliver steel products meeting Seneca's quantity,

quality, and timeliness standards.  Seneca I, 663 F. Supp. 3d at 1334.  Commerce also denied

Seneca's final two March 2022 Requests, but in the underlying ITA memoranda declined to issue

a complete analysis of the quantity, quality, and timeliness criteria.  Id. at 1334–35.

Court No. 22-00243                                                                  Page 8
**PUBLIC VERSION**

On August 19, 2022, Seneca challenged Commerce's denials in a timely action before the U.S. Court of International Trade ("USCIT").  Compl. at 1, Aug. 9, 2022, ECF No. 6.  Seneca complained that Commerce's denials of the October 2021 and January 2022 Requests were arbitrary and capricious under the APA, arguing that Commerce "(1) failed to meaningfully consider relevant factors when making its determinations, (2) failed to follow its own published interpretation of its regulations that evidence of past unavailability is relevant to the resolution of new exclusion requests, (3) failed to adequately explain the basis for its determinations, and (4) failed to meaningfully consider the evidence before it."  Id. at 31–32.  Seneca also claimed that Commerce's denials of the March 2022 Requests were arbitrary and capricious on account of Commerce's inadequate explanation of the bases for its decisions, which amounted to inconsistent treatment of these requests as compared to Seneca's prior requests.  Id. at 32–33.  USS filed a motion to intervene in the case, which the court denied.  See Seneca Foods Corp. v. United States, 46 CIT __, __, 607 F. Supp. 3d 1295, 1301 (2022).

On October 18, 2023, the court issued an opinion concluding that Commerce's denials of Seneca's October 2021 and January 2022 Requests were arbitrary and capricious under the APA.  Seneca I, 663 F. Supp. 3d 1325.  The court stated that "the denials of the October 2021 Requests and of the February 2022 Requests were both too threadbare in addressing whether USS would be able to meet 100 percent of Seneca's demand, and Commerce's reasoning for crediting USS's statements was not otherwise reasonably discernible."  Id. at 1336.  As for Commerce's denials of the March 2022 Requests, the Government requested a voluntary remand, which Seneca did not oppose.  Id. at 1342.  The court granted that request without reaching the merits.  Id.  The court accordingly remanded all eight denials for Commerce's reconsideration or further explanation.  Id.

Court No. 22-00243                                                              Page 9
***PUBLIC VERSION***

at 1340–42.

Commerce filed the <u>Remand Results</u> on April 1, 2024.  On remand, Commerce reviewed

Seneca's eight exclusion requests anew and denied each one for the second time.  For the October

2021 Requests, Commerce concluded that USS had satisfied the availability criteria based on its

representations of capacity to meet Seneca's demand quicker than the import delivery timeframe

required by Seneca's foreign supplier.  <u>Id.</u> at 3–7.  Interpreting the November 2021 emails as

referring to contractual sales only, Commerce determined that the email evidence did not foreclose

the availability of spot sales and thus did not contradict USS's certification that it could timely

produce Seneca's requested product volume.  <u>Id.</u> at 5, 7.  Commerce also excluded the November

2020 email from its analysis.  The agency reasoned that the November 2020 email fell outside of

the 90-day sales correspondence window typically considered by the agency, referenced a period

of time long before the request was filed, and was too vaguely worded to conclusively refer to the

steel products at issue.  <u>Id.</u> at 2.  For the January 2022 and March 2022 Requests, Commerce again

credited USS's certifications.  The agency concluded that the November 2021 emails, while

purportedly showing unavailability in February 2022, did not show unavailability by USS's

averred delivery date.  <u>See id.</u> at 8–10.  Commerce also considered but declined to weigh the

February 2022–April 2022 emails, which were deemed irrelevant because they were dated four

months after Seneca placed its purchase order with the foreign supplier.  <u>Id.</u> at 10–11.  The chart

below summarizes Seneca's exclusion requests and the evidence submitted in support of each.

| Table 1: Summary of Evidence Submitted for Each Exclusion Request | | | | |
|---|---|---|---|---|
| Shorthand | Request Number(s) | Import Delivery Timeframe Considered by Commerce | Emails Submitted as Support for Seneca's Request | Emails That Commerce Considered |
| October 2021 Requests | 257423; 257428 | April 9, 2022 (170 days) | November 2020 email; November 2021 emails | November 2021 emails |

| October 2021 Requests | 257708; 257709; 257712 | October 16, 2022 (360 days) | November 2020 email; November 2021 emails | November 2021 emails |
|---|---|---|---|---|
| January 2022 Requests | 275504 | January 18, 2023 (360 days) | November 2021 emails | November 2021 emails |
| March 2022 Requests | 283368; 283369 | March 10, 2023 (360 days) | November 2021 emails; February–April 2022 emails | November 2021 emails; February–April 2022 emails |

Commerce also separately addressed two issues intertwined with all of the requests. First, Commerce stated that "[a]side from addressing the specific arguments in this case, Commerce does not otherwise consider spot sales versus contract sales in its analysis for whether the objector can meet the timeliness or quantity criteria." Id. at 11. Second, Commerce explained that it "does not generally give considerable weight to the evidence of history or interactions of requestors and objectors in its analysis unless it is clearly related to a denial of a prior request for the same product, or clearly indicative of the parties' future dealings." Id. at 12. And because there may be other, non-capacity reasons why companies would turn down an opportunity to supply steel, certain prior circumstances do not necessarily "impact a company's ability to produce and supply a product domestically for any company or the same company in the future. Commerce therefore finds it irrelevant that U.S. Steel has not sold to Seneca for more than two years." Id.

### III.    *Procedural History*

Seneca filed its complaint on August 19, 2022. See Compl. The court issued its decision with respect to Commerce's initial denials on October 18, 2023. See Seneca I, 663 F. Supp. 3d. Pursuant to the court's order, Commerce filed a remand redetermination on April 1, 2024. See ECF No. 58. On May 1, 2024, Seneca filed its comments on Commerce's redetermination, to which Commerce filed a response on June 14, 2024. See Pl.'s Cmts.; Def.'s Resp., June 14, 2024, ECF No. 66.

The court issued questions in advance of oral argument, see Letter re: Qs. for Oral Arg.,

July 5, 2024, ECF No. 70, to which the parties filed responses, see Def.'s Resp. to OAQs, Jul. 18,

2024, ECF No. 71; Pl.'s Resp. to OAQs, Jul. 18, 2024, ECF No. 72.  The court also issued

supplemental questions for the parties' consideration at oral argument, which was held on June 22,

2024.  See Letter re: Supp. Qs. For Oral Arg., Jul. 22, 2024, ECF No. 74.  The court invited the

parties to file post-oral argument submissions by July 29, 2024, see Oral Arg., July 22, 2024, ECF

No. 75, and both parties made such submissions.  See Pl.'s Post-Arg. Subm., July 29, 2024, ECF

No. 80; Def.'s Post-Arg. Subm., July 29, 2024, ECF No. 79.

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction lies under 28 U.S.C. § 1581(i), which defines the USCIT's residual jurisdiction

over civil actions arising under federal laws providing for "tariffs, duties, fees, or other taxes on

the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C.

§ 1581(i)(1)(B).[3]  In § 1581(i) cases, the court applies the standard of review set forth by the APA

and will "hold unlawful and set aside [agency] action, findings, and conclusions found to be . . .

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," Canadian

Lumber Trade All. v. United States, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (citing 5 U.S.C.

§ 706(2)), which includes compliance with the court's remand order, see SMA Surfaces, Inc. v.

United States, 47 CIT __, __, 658 F. Supp. 3d 1325, 1328 (2023).

Agencies are required to have "engaged in reasoned decisionmaking."  Judulang v. Holder,

---

[3] In Seneca I, the court stated that jurisdiction existed under § 1581(i)(2).  The citation to that subsection, which defines limitations on the USCIT's residual jurisdiction, is a typographical error. The proper citation is to § 1581(i)(1).

565 U.S. 42, 53 (2011).  They must "examine the relevant data" and "articulate a satisfactory explanation" for their ultimate decisions.  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  And those decisions must be supported by a "rational connection between the facts found and the choice made."  Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962).  But when agency action has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," it is arbitrary and capricious under the APA.  State Farm, 463 U.S. at 43; see also 5 U.S.C. § 706(2).  The court's review of agency action is "narrow" and does not "substitute [the court's] judgment for that of the agency."  State Farm, 463 U.S. at 43.

## DISCUSSION

Seneca argues that Commerce's renewed denials of Seneca's requests are arbitrary and capricious for (1) disregarding or failing to address record evidence of USS's inability to supply steel, (2) acting contrary to Commerce's regulations and prior practice, and (3) failing to consider course-of-dealing evidence in evaluating Section 232 exclusion requests.  See Pl.'s Cmts. at 1–3.

None of these contentions prevails.  Commerce's renewed denials rely on an improved, discernable path detailing the agency's consideration of the record evidence.  The reasoned explanation on this record satisfies Commerce's APA obligations.[4]  Commerce's eight denials in

---

[4] Seneca does not challenge the reasonableness of Commerce's "entire system" governing exclusion requests as applied to all requesters and limits its arguments to the records presented in this case.  See Pl.'s OAQ Resp. at 6.

Court No. 22-00243                                                    Page 13
*PUBLIC VERSION*

the Remand Results are sustained.

### I.    *Commerce's Denials Were Supported by Record Evidence*

Seneca first argues that Commerce improperly disregarded record evidence in making its determinations.  Seneca's case for the unavailability of steel from USS rests largely on three emails, which, according to Seneca, compelled Commerce to have granted all eight exclusion requests:

- An email on November 13, 2020, sent internally within Seneca, stating: "[USS is] not offering anything now at any price.  They say if they have available production in any month, they will contact us and see if we have interest.  They just don't want to commit to anything right now."  P.R. 41.

- Emails on November 29, 2021 between Seneca and USS.  The subject is "2022 STEEL AVAILABILITY."  Seneca first states: "When we talked a couple months ago, you advised USS has no tinplate or TFS to offer us for 2022. You did say that if your production efficiencies are good, some availability may free up later in the year. I understood that was kind of a long shot. Has anything changed on the availability of ETP or TFS?"  USS responds: "Right now for Feb I don't have anything as of yet, if that changes I'll let you know."  C.R. 43.

- An email chain from February 2022 to April 2022 between Seneca and USS. In this exchange, Seneca requests a large order (3,000 tons) of a particular steel product.  USS offers a small fraction [[          ]] of Seneca's requested quantity.  USS's initial timing is for [[          ]], but due to delayed responses as well as USS's shifts in timing, the parties appear to settle on a [[          ]] timeline.  C.R. 340–42.

The court leaves Commerce's interpretation and treatment of these emails undisturbed.

To reach its determinations, Commerce is permitted to rely on parties' factual statements to determine their ability to meet their obligations as long as that reliance constitutes "reasoned decisionmaking."  Judulang, 565 U.S. at 53; see also State Farm, 463 U.S. at 43; 5 U.S.C. § 706(2). "It is the [agency's] task to evaluate the evidence it collects . . . Certain decisions, such as the weight to be assigned a particular piece of evidence, lie at the core of that evaluative process."

U.S. Steel Grp. v. United States, 96 F.3d 1352, 1357 (Fed. Cir. 1996).  And "the burden of creating an adequate record lies with [the interested parties] and not with Commerce."  QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011).

In each of its objections to Seneca's exclusion requests, USS certified that it would be able to meet 100 percent of requested demand.  See P.R. 28, 78, 127, 176, 225, 274, 325, 370.  The problem with Commerce's denials in Seneca I, the court explained, was not that the agency accepted USS's representations but rather that it failed to make apparent its rationale for crediting USS's representations despite Seneca's email submissions.  See 663 F. Supp. 3d at 1338–39.  Commerce was directed to "articulate on remand—and potentially reconsider—why it credits USS's statements about spot sale capacity in light of Seneca's representations and email evidence."  Id. at 1339.  Commerce has done so on remand.

First, Commerce decided not to give any weight to the November 2020 email because it was too dated to be probative of USS's steel availability in October 2021.  That decision was reasonable.  One criterion for Commerce's consideration of exclusion requests is whether the "amount that is needed by the [requester] is not available immediately in the United States to meet its specified business activities."  15 C.F.R. pt. 705 supp. 1(c)(6)(i) (emphasis added).[5]  The email was dated eleven months before the exclusion request and stated that USS did not have capacity "right now."  The agency then referenced "the ever-changing nature of steel and aluminum production schedules and industry" as reason to doubt that an eleven-month-old email accurately

---

[5] As explained above, see supra Introduction part I, the term "immediately" refers to the longer of (i) eight weeks or (ii) the time required for the requester to obtain the entire quantity of identical product from a foreign supplier, running from the date of the exclusion request.  Id.

Court No. 22-00243                                                                                     Page 15
**PUBLIC VERSION**

represented USS's production capabilities.  Remand Results at 2.  The November 2020 email

therefore did not compel the agency to conclude that USS could not have supplied all of Seneca's

steel needs in October 2021.

      Commerce next concluded that the November 2021 emails were not probative of USS's

ability to supply steel to Seneca via spot sales.  Commerce based its interpretation of the November

2021 emails on two other portions of record evidence.  First, USS certified in the records of all

five October 2021 Requests that USS was offering "spot sales—not contract sales—for 2022," that

Seneca's rebuttal focused only "on contract volumes and failed to mention that [USS] has recently

offered [Seneca] spot sale volumes," and that "Seneca ha[d] not pursued this option."  P.R. 46–47.

In the record for the January 2022 Request, USS similarly stated that it could supply spot shipments

beyond the quantity requested by Seneca.  C.R. 297.  Second, other statements by Seneca support

Commerce's interpretation that its prior interactions with USS were focused on contract volume

rather than spot volume:

- "If USS is able to contract for 2022 volumes, it will mark a significant departure
  from recent years, as the last time that USS agreed to supply contracted volumes
  was for deliveries in 2018."  P.R. 37.

- "Unfortunately, all indications received thus far suggest that USS will not
  supply Seneca with any contracted volume for next year.  Like last year, Seneca
  a few days ago engaged USS for volumes to be delivered in 2022, but USS
  offered nothing."  P.R. 37–38.

- "Unfortunately, in our experience, Seneca cannot look to USS as a dependable
  source of steel supply. No contract volumes have been made available to Seneca
  by USS since our orders for deliveries during 2018."  P.R. 38.

These references to the record suffice to establish "a rational connection between the agency's

factfindings" that Seneca's email does not undermine USS's certification of spot availability and

the agency's ultimate action of denying the exclusion requests.  In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000).

Commerce's interpretation is lawful.  To the extent that Seneca asks the court to credit its version of events, the court is not compelled to do so here.  It is true that the November 2021 emails make no mention of spot or contract sales.  See C.R. 43.  And as the court has previously noted, Seneca repeatedly complained of the lack of any additional volume, not just the lack of contractual volume.  See Seneca I, 663 F. Supp. 3d at 1337 (citing P.R. 20–22, 33–34, 36–37). But in judicial review of agency action, the court may not reweigh the evidence before the agency or substitute the agency's reasoned decisionmaking with its own.  See Nippon Steel Corp. v. Int'l Trade Comm'n, 345 F.3d 1379, 1381–82 (Fed. Cir. 2003); In re Section 301 Cases, 47 CIT __, __, 628 F. Supp. 3d 1235, 1248 (2023).  Because Commerce's determination is rational and adequately supported, it must be sustained, even though it might be possible to draw "two inconsistent conclusions from the evidence."  Corephotonics, Ltd. v. Apple Inc., 84 F.4th 990, 1001 (Fed. Cir. 2023) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).[6, 7]

Finally, Commerce determined that the February 2022–April 2022 emails were not relevant to the March 2022 Requests because the emails were dated four months after Seneca had

---

[6] While this language usually describes the substantial evidence standard, "in their application to the requirement of factual support the substantial evidence test and the arbitrary or capricious test are one and the same."  United Steel v. Pension Ben. Guar. Corp., 707 F.3d 319, 325 (D.C. Cir. 2013) (quoting Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of the Fed. Reserve Sys., 745 F.2d 677, 683 (D.C. Cir. 1984)).

[7] As mentioned above, Commerce stated that "[a]side from addressing the specific arguments in this case, Commerce does not otherwise consider spot sales versus contract sales in its analysis for whether the objector can meet the timeliness or quantity criteria."  Remand Redetermination at 11. Seneca takes issue with that analysis, contending that "Commerce later contradicts itself by

Court No. 22-00243                                                              Page 17
***PUBLIC VERSION***

placed its orders from foreign suppliers.  That also passes muster.  In the March 2022 Requests,

Commerce was tasked with determining whether USS would have been able to supply the

requested quantities of TFS and ETP within the timeframe needed by Seneca's Chinese and

Turkish suppliers.  See Remand Results at 10.  It is true that Seneca's initial email expresses broad

interest in a variety of steel products and that it shows the difficulty of placing a particular order

with USS on a short timeframe.  But the email chain simply does not pertain to the particular orders

that later went fulfilled by foreign suppliers.  So it is far from definitive that the email establishes

either that USS had no steel products available[8] or that USS was unable to timely produce the

---

claiming that the distinction between contract sales and spot sales is irrelevant to its analysis and
that it affords no substantive weight to a distinction that its own analysis introduces."  Pl.'s Cmts.
at 18.

That argument misreads Commerce's point.  All that Commerce makes clear is that its ultimate
goal is to determine whether USS can produce the steel articles at all, whether by spot or contract.
See Remand Redetermination at 11.  Exclusion is warranted if an item "is not produced in the
United States in a sufficient, reasonably available amount . . . ."  15 C.F.R. pt. 705, supp. 1(c)(5)(i)
(emphasis added).  This condition does not appear, on its face, to permit exclusion merely on
account of a buyer's preference for contact sales over spot sales.

The terms of sale can still be relevant to the core availability inquiry if there is evidence suggesting
that they are relevant to the domestic producer's ability to produce steel.  Here, the spot-versus-
contract distinction was relevant because the parties disputed whether the November 2021 emails
showed USS's inability to supply any steel (regardless of spot or contract) or just some steel
(conditional on contract).  And resolving that factual dispute was clearly relevant to the broader
inquiry of whether USS can produce steel, whether by spot or contract.

[8] Seneca maintains that this email chain was about "any and all products."  Pl.'s Cmts. at 14.  That
interpretation is not persuasive, let alone compelled by the record evidence:  Seneca's Vice
President for Strategic Sourcing states that Seneca would "be interested in about any spec" that
can be offered.  He then follows up with a particular spec, "116RS," and tonnage, "3,000 tons," [[

]] C.R. 341.

Court No. 22-00243                                                                     Page 18
*PUBLIC VERSION*

quantity requested by Seneca in that email chain.[9]  The agency was not required to reach that

speculative conclusion.

Commerce reasonably relied on USS's certifications, and none of Seneca's attached emails

compelled Commerce to conclude otherwise.  In Seneca I, Commerce erred by failing to address

countervailing evidence and only cursorily acknowledging the seemingly supportive emails.  Its

reasoned decisionmaking has now been made clear on remand.  Ultimately, and as noted above,

"the burden of creating an adequate record lies with [the interested parties] and not with

Commerce." QVD Food, 658 F.3d at 1324.  USS bore a burden to "identify how it will be able to

produce and deliver the quantity of steel . . . needed" as part of its obligation to "clearly identify,

and provide support for, its opposition to the proposed exclusion." 15 C.F.R. pt. 705, supp. 1(d)(4).

But Seneca also bore a burden to establish that the steel article was "not produced in the United

States in a sufficient, reasonably available amount, and of a satisfactory quality." Id. pt. 705, supp.

1(c)(5)(i).  Seneca's eight requests hinge collectively on three short email chains, each suffering

from various deficiencies as to relevance.  Commerce weighed what the parties submitted to it.

Lacking additional evidence, Seneca "simply ask[s] too much of the court to wade into fact finding

on a sparse record." SMA Surfaces, Inc. v. United States, 47 CIT __, __, 617 F. Supp. 3d 1263,

1279 (2023) (internal quotation marks and citation omitted).  The court therefore affirms the

factual sufficiency of Commerce's denials of all eight exclusion requests.

---

[9] [[



                                                                                        ]]

## II.    Commerce's Denials Did Not Contravene Regulations and Prior Practice

Seneca next argues that Commerce's denials of Seneca's requests are arbitrary and capricious because aspects of the decisionmaking underlying the denials departed from the agency's own regulations and prior practice.  See Pl.'s Cmts. at 19.  Commerce generally may not "appl[y] different standards" to "similarly situated" entities without "a reasoned explanation and substantial evidence."  Euzebio v. McDonough, 989 F.3d 1305, 1322 (Fed. Cir. 2021) (internal quotation marks and citation omitted).  And "though past agency decision-making may not be precedential in the same way as case law through stare decisis, it remains of great importance . . . nearly seventy years of Supreme Court and Federal Circuit precedent recognize an agency's duty to address departure from prior norms and policies."  DAK Ams. LLC v. United States, 44 CIT __, __, 456 F. Supp. 3d 1340, 1355–56 (2020) (citations and footnote omitted), aff'd, 829 F. App'x 529 (Fed. Cir. 2020).  Here, though, none of Seneca's three identified bases for this asserted agency practice–related error is availing.

Seneca first cites three unrelated denials by Commerce of steel exclusion requests under Section 232 as evidence of a past agency practice that Commerce has contravened here.  Those three requests were filed on July 29, 2022, by the same requester, Borusan Mannesmann Pipe U.S. Inc. ("Borusan"), in relation to varying steel products and quantities.  See ECF No. 62, at 68–85.[10] In those requests, objector Zekelman Industries ("Zekelman") certified that it could supply 100

---

[10] See also Request No. 312626, U.S. Dep't of Com., https://232app.azurewebsites.net/Forms/ ExclusionRequestItem/312626 (last visited Oct. 16, 2024); Request No. 312627, U.S. Dep't of Com., https://232app.azurewebsites.net/Forms/ExclusionRequestItem/312627 (last visited Oct. 16, 2024); Request No. 312628, U.S. Dep't of Com., https://232app.azurewebsites.net/Forms/ ExclusionRequestItem/312628 (last visited Oct. 16, 2024).

percent of Borusan's requested volume.  Borusan attached email correspondence between itself

and Zekelman from May 2022.  Commerce reasoned, in relation to all three requests, that

Zekelman's showing was insufficient:

> Zekelman's response indicated it does not currently have the capacity to provide
> the requested product.  SME analysis confirms the requested product and the
> product detailed in the emails provided by Borusan match.  The email evidence
> provided by Borusan contradicts Zekelman's claim that it can provide the requested
> quantity.  As such, Zekelman does not meet the quantity criterion.

ECF No. 62, at 70, 76, 82.[11]

Commerce's reasoning as to Zekelman's objections to the three Borusan requests does not

control the outcome here.  Seneca has not shown how the Zekelman-specific reasoning Borusan

denials, which relied on the same piece of evidence and functionally operate as a single instance

of Commerce's practice, are evidence of an established agency practice that Commerce has

contravened here.  See In re Section 301 Cases, 570 F. Supp. 3d at 1347 (defining an "agency

practice" from which unexplained deviation is unlawful as "the existence of 'a uniform and

established procedure . . . that would lead a party, in the absence of notification of a change,

reasonably to expect adherence to the established practice or procedure.'" (quoting Ranchers–

Cattlemen Action Legal Found. v. United States, 23 CIT 861, 884–85, 74 F. Supp. 2d 1353, 1374

(1999))). The Zekelman-specific reasoning in the Borusan denials is better understood as evidence

of Commerce's "exercise of discretion on a case-by-case and fact-specific basis."  Id. (internal

quotation marks and citation omitted).  Commerce exercised its discretion there and here on a fact-

---

[11] Commerce nevertheless denied each of Borusan's exclusion requests because it found that "at
least one objector" besides Zekelman "meets the quality, quantity, and timeliness criteria."  Id. at
68, 74, 80.

Court No. 22-00243                                                                 Page 21
**PUBLIC VERSION**

specific basis, and the Borusan requests are not similar enough to suggest error in this case.[12]

Second, Seneca argues that when Commerce evaluates timeliness, the proper starting point should be the dates on which Seneca placed the purchase orders with the foreign suppliers rather than the dates of the exclusion requests. See Pl.'s Cmts. at 24. Questions involving the timing of administrative proceedings "generally implicate Commerce's procedural, not policymaking, discretion." Goodluck India Ltd. v. United States, 43 CIT __, __, 670 F. Supp. 3d 1353, 1371 (2023). The court's limited task in such a circumstance is to review whether Commerce abused that discretion. See Stupp Corp. v. United States, 5 F.4th 1341, 1349 (Fed. Cir. 2021). But Seneca cites no regulation, agency practice, or other authority to suggest that Commerce's choice of a starting date is an abuse of discretion. As the Government explains, some requesters are like Seneca and submit their exclusion requests after purchase orders with foreign suppliers, and other requesters file the exclusion request first. Commerce's choice of setting the starting point at the filing date keeps the timeliness inquiry consistent across all scenarios. See Def.'s Resp. at 16. Seneca's choice of starting point may be reasonable, but so is Commerce's. Under arbitrary-and-capricious review, Commerce's approach is lawful.

---

[12] Regarding the January 2022 Request, Seneca relatedly argues that Commerce should have evaluated the timeliness and quantity criteria separately when reviewing the attached November 2021 email as opposed to reviewing the email for only the timeliness prong. See Pl.'s Cmts. at 23.

It is unclear why that distinction matters here. Commerce must find that both the timeliness and quantity promised by an objector are insufficient to the foreign alternative. So failure of either means failure of the whole exclusion request. The timeliness and quantity inquiries are two sides of the same "sufficient and reasonably available amount" criterion, which is defined to mean "that the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." 15 C.F.R. pt. 705 supp. 1(c)(6)(i).

Court No. 22-00243                                                                          Page 22
**PUBLIC VERSION**

      Third, Seneca contends that Commerce erred in its calculation of timeliness by double counting the shipping time in its equation. <u>See</u> Pl.'s Cmts. at 25. In its form, Commerce collects information from requesters in two fields:

> 2.d. Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization[.]

> 2.f. Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock[.]

P.R. 6. Commerce then "determines the Requestor's import delivery time by adding the numbers in 2[.]d and 2[.]f of the exclusion request form, plus any appropriate adjustments based on evidence provided in any submitted documentation." <u>Id.</u> Seneca contends that adding those two values double-counts the time of shipping from a foreign port to the requester's loading dock if the terms of purchase include the seller's delivery to the buyer under CIF or DDP shipping terms.[13] <u>See</u> Pl.'s Resp. to OAQs at 9–10. If the requester "take[s] delivery" in the United States, then adding 2.d and 2.f would indeed double-count the shipping time. USS also appeared to acknowledge as much when it certified to Commerce that it could deliver Seneca's requested steel within Seneca's

---

[13] CIF, or "cost, insurance, and freight," is "[a] mercantile-contract term allocating the rights and duties of the buyer and the seller of goods with respect to delivery, payment, and risk of loss, whereby the seller must (1) clear the goods for export, (2) arrange for transportation by water, (3) procure insurance against the buyer's risk of damage during carriage, and (4) pay the costs of shipping to the port of destination." <u>Cost, Insurance, and Freight</u>, Black's Law Dictionary (12th ed. 2024).

DDP, or "delivered duty paid," is "[a] mercantile-contract term allocating the rights and duties of the buyer and the seller of goods with respect to delivery, payment, and risk of loss, whereby the seller must (1) clear the goods for export, (2) bear the costs of carriage, (3) pay the buyer's import duties, and (4) make the goods available to the buyer on board the carrier at the destination." <u>Delivered Duty Paid</u>, Black's Law Dictionary (12th ed. 2024).

Court No. 22-00243                                                                 Page 23
**PUBLIC VERSION**

2.d estimate, rather than the sum of Seneca's 2.d and 2.f estimates.  See P.R. 28, 78, 127, 176, 225,

274, 321, 370.  Defendant states that its method is "standardized" and notes that the requester may

use the narrative portions of the form to provide information about shipping times.  Def.'s Post-

Arg. Subm. at 2.

As an initial matter, Seneca has forfeited this issue.  Commerce's formula was made

apparent in its initial set of denials, see, e.g., P.R. 5 (reciting the formula and stating that Seneca

reports 170 days for import delivery time).  But Seneca did not raise it in the Complaint or in the

first round of USCIT briefing.  See Dorbest Ltd. v. United States, 604 F.3d 1363, 1375–77 (Fed.

Cir. 2010).

Even assuming Seneca's preservation of its assertion of error, and assuming further that

Commerce's erred in double-counting,[14] such error would be harmless here.  The APA requires

that "due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706; see also Intercargo

Ins. Co. v. United States, 83 F.3d 391, 394 (Fed. Cir. 1996) ("It is well settled that principles of

harmless error apply to the review of agency proceedings.").  On these particular facts,

---

[14] The Government appears to suggest that the use of formula which adds 2.d and 2.f, "plus any appropriate adjustments based on evidence provided in any submitted documentation," creates a default rule whereby Commerce assumes that requesters take delivery outside the United States unless there exists some positive indication to the contrary.  In theory, that would push the burden of rebutting that assumption onto requesters, and Commerce would issue the "appropriate adjustment[]" by excluding 2.f upon a sufficient showing.

That system would possibly be permissible if it ensured the provision of some notice to requesters that the 2.d and 2.f values would be added.  But Commerce's formula does not appear in the rules on the steel exclusion request process.  See 15 C.F.R. pt. 705 supp. 1.  Instead, Commerce publishes notice of its formula in the final ITA memorandum recommending the grant or denial of the exclusion request.  By that point, the exclusion request has been decided and any notice to a requester is provided too late.

Commerce's analysis in the <u>Remand Results</u> would have remained unaffected whether Seneca's foreign supplier time was estimated at 120 (for TFS) and 270 (for ETP) versus 170 (for TFS) and 360 (for ETP). Commerce credited USS's certified statements, which relied exclusively on the more conservative estimates in stating that USS could timely produce Seneca's requested product. And insofar as Commerce's analysis in the <u>Remand Results</u> hinged on timeliness instead of quantity, it was Seneca's emails, and their relative timing to the filing dates, that were problematic. The differential on the backend of USS's allotted timeframe was not dispositive.

Fourth, Seneca argues that Commerce departed from its regulations by concluding on remand that it "does not generally give considerable weight to the evidence of history or interactions of requestors and objectors in its analysis unless it is clearly related to a denial of a prior request for the same product, or clearly indicative of the parties' future dealings." <u>Remand Results</u> at 12. Seneca states that this reasoning contradicts Commerce's statements that the "rebuttal process allows the exclusion requester to document in the rebuttal the past activity with the objector." <u>Interim Final Rule</u>, 85 Fed. Reg. at 81065. But Seneca's quotation is selective; the two sets of statements are easily reconcilable.

In the interim final rule Commerce expressly acknowledged Seneca's concern, shared with at least one commenter on the rule, that the current process "could lead to the negation of exclusion requests in situations where one company files an objection that claims that it in theory could make that product in sufficient quantity or quality." <u>Id.</u> The agency's solution to that issue is outlined below:

(1) The requester files an initial exclusion request, and an objector is allowed to object with a certification that it can supply the requested steel articles.

(2) Commerce decides the initial exclusion request. Of course, in so doing, it can grant the request on the basis that the objector's certification is unwarranted.

(3) But if the first exclusion request is denied because the agency reasonably credits the objector's certification, then the requester should place an order with the objector. That way, "the exclusion requester will be able to determine definitively whether an objector is in fact able" to supply the steel article. Id. at 81065.

(4) If the objector cannot supply the steel article, the requester can file a new exclusion request for the same steel article. "If the same objector objects to the new exclusion request, the rebuttal process allows the exclusion requester to document in the rebuttal the past activity with that objector." Id. at 81066.

Here, Commerce stated that it generally did not weigh course-of-dealing evidence "unless it is clearly related to a denial of a prior request for the same product," which is relevant to step 4 of the process outlined above, or "clearly indicative of the parties' future dealings," which is relevant to determining the veracity of the objector's prospective certifications in steps 2 and 4. Remand Results at 12. Commerce, then, did not unlawfully contradict a prior statement in articulating its course-of-dealing practice in the Remand Results.[15]

Fifth, and somewhat relatedly, Seneca suggests that these exclusion requests are at step 4 rather than step 2. See Pl.'s Cmts. at 27–28. Seneca points to a set of exclusion requests for prime ETP that it filed in 2018, to which USS objected and which Commerce denied. See ECF No. 62, at 91–92. But Seneca never mentioned the 2018 requests on the agency record; nor did it mention the argument that this set of exclusion requests was somehow a follow-on of the 2018 requests. Because the agency did not have the opportunity to address that argument in the first instance, it is unexhausted for purposes of judicial review. See Sandvik Steel Co. v. United States, 164 F.3d

---

[15] Because Commerce did not include this reasoning in its initial determinations, the court did not consider it in Seneca I. See 663 F. Supp. 3d at 1340 n.9; see also SEC v. Chenery Corp., 332 U.S. 194, 199 (1947).

596, 599 (Fed. Cir. 1998); <u>see also</u> 28 U.S.C. § 2637(d).[16]  The absence of any reference to the 2018 requests goes to the argument's merits, too.  Seneca's exclusion requests shortly followed ETP orders from foreign suppliers.  There is no evidence on this agency record suggesting that those ETP orders were related to the 2018 requests, or that USS violated its 2018 certification that it could supply steel to Seneca.  Commerce accordingly had no obligation to consider Seneca's argument on this score.

The court concludes that Commerce's denials of Seneca's requests were, in most part, consistent with the agency's own regulations and reasonable practice.  The one seeming error, which is ultimately harmless, concerns Commerce's formula for estimating requesters' delivery times.  Commerce could have done more to clarify the meaning of fields 2.d and 2.f, and would do well to provide such clarity with regard to future requests.

### III.    *Commerce's Denials Reasonably Focused on Prospective Evidence of Steel Production*

Seneca's final argument appears to question one aspect of Commerce's Section 232 exclusion request policy.  Seneca contends that Commerce's approach, even if in line with Commerce's own regulations and practice, gives short shrift to course-of-dealing evidence suggesting that the objector will not supply steel.  Commerce's "purely prospective methodology," Seneca argues, "provides no 'relief' at all when on-the-ground market realities contradict objectors' theoretical projections of future availability. . . . Turning a blind eye to an undisputed

---

[16] Seneca states that the 2018 decisions are on the agency's "public docket," were mentioned in the Complaint initiating this litigation, and included in a letter sent to Commerce as it was reconsidering the denials on remand.  <u>See</u> Pl.'s OAQ Resp. at 9–10.  Of course, none of that is on the actual agency record, let alone raised in the first instance.

record of past and present dealings while focusing on hypothetical future dealings renders the entire exclusion process arbitrary." Pl.'s Cmts. at 30.[17]

To be clear, Commerce stated that it "will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request." P.R. 6. That cutoff is reasonable. The Proclamation authorizes Commerce to "provide relief" from duties "for any steel article determined not to be produced in the United States in a sufficient and reasonably available amount" but leaves it to the agency to set the timeframe of permissible evidence. Proclamation, 83 Fed. Reg. at 11627. Commerce's prospective focus is consistent with the tariff's stated purpose and expected effect, ex ante, of enabling "domestic steel producers to use approximately 80 percent of existing domestic production capacity and thereby achieve long-term economic viability through increased production." Id. at 11625. And to that end, Commerce will consider evidence of past dealings that are "clearly indicative of the parties' future dealings." Remand Results at 12. Seneca asks for Commerce's consideration of older course-of-dealing evidence, but nothing compels Commerce to do so.[18]

---

[17] Seneca states that it understands that Commerce's evaluation is not solely prospective and clarifies that it is making the following contention: "if Commerce's current regulations and guidance regarding past dealings with objectors had been properly applied, Commerce would have dismissed U.S. Steel's objections and approved Seneca's requests." Pl.'s OAQ Resp. at 5. But see Pl.'s Cmts. at 30 (calling Commerce's methodology "purely prospective"). In any event, the court addresses this challenge, as raised in Plaintiff's comments, for completeness. See id. at 28–31.

[18] Seneca argues that the APA requires the consideration of older evidence, but the two cases that Seneca cites for that proposition are inapposite. First, in American Petroleum Institute v. EPA, the court held that the petitioner could challenge the EPA's prediction methodology in the years

More to the point, requesters like Seneca are not without administrative recourse when faced with potentially unreliable domestic producers.  A requester can submit an initial request after executing foreign purchase orders, undergo the multistep process outlined above if a domestic objector promises but later fails to supply steel, and receive relief from Commerce that is retroactive to the entries associated with the initial request.  See 15 C.F.R. pt. 705 supp. 1(h)(2)(iii)(A) ("Companies are able to receive retroactive relief on granted requests dating back to the date of the request's submission on unliquidated entries."); see also Def.'s Resp. at 16, 20–21.  Seneca argues that this remedy is insufficient because the retroactive relief would relate back to the renewed exclusion request (step 4) rather than the initial exclusion request (step 2).  See Pl.'s OAQ Resp. at 11.  But so long as that renewed exclusion request is for the same "unliquidated

---

following its initial adoption because the "reasonableness of adopting a predictive methodology is not the same as the reasonableness of maintaining one in the face of experience; considering whether to maintain a methodology necessarily invites reflection on the success of earlier applications." 706 F.3d 464, 477 (D.C. Cir. 2013) (emphasis omitted).  But that case does not control here, where Commerce informally adjudicates each request on its own record.  The agency credits prior evidence in some cases, like in the Borusan requests, and not in others, like in this one.  Commerce does not adhere to a rigid formula in determining whether to credit such evidence; that determination hinges ultimately on the administrative posture of the specific case.

Second, in Bechtel v. FCC, the court reasoned that while "changes of [agency] policy require a rational explanation, it is also true that changes in factual and legal circumstances may impose upon the agency an obligation to reconsider a settled policy or explain its failure to do so." 957 F.2d 873, 881 (D.C. Cir. 1992).  In the rulemaking context, the court noted, sufficiently changed circumstances could include "a significant factual predicate of a prior decision" being removed.  Id. (internal quotation marks and citation removed).  But it is unclear what has changed since the passage of the Presidential Proclamation that would itself prompt Commerce to rethink the prospective focus of its analysis.  So long as the tariffs are in place, the President can be presumed to adopt their stated rationale of encouraging domestic steel production.  See Cleveland-Cliffs Inc. v. United States, 48 CIT __, __ n.13, 693 F. Supp. 3d 1341, 1360 n.13 (2024) (collecting authorities and noting that "[c]ourts have used inferences of presidential intent to ascertain the continuing effect of presidential proclamations even when the proclaiming president no longer holds office.").

Court No. 22-00243                                                                         Page 29
***PUBLIC VERSION***

entries" associated with the initial request, the rule's text suggests that Commerce can grant relief

to the requester that is functionally the same as relating back to the initial request.  Commerce

would do well to clarify that point to requesters.

The court appreciates that the task of timing iterative exclusion requests with hurried

business needs can be difficult for requesters.  But Commerce's procedures, on their face, offered

a valid remedy in this case that Seneca did not avail itself of.  Having focused on prospective

availability and having offered a reasonable administrative process for relief, Commerce has

executed denials here that were not arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Commerce's denials of the October 2021, January 2022, and March 2022

Requests in the Remand Results are sustained.  Judgment on the agency record will enter for

Defendant accordingly.

**SO ORDERED.**

/s/     *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: October 21, 2024
New York, New York

**Web Pages Cited in the Opinion**

U.S. Department of Commerce

Section 232 Steel and Aluminum

## Product Information

Submission Date: 7/29/2022

Public Status: Denied

**Please select product type**

Steel

**Identify the class of product for which the Exclusion is sought**

Carbon and Pipe and Tube

**10-Digit Harmonized Tariff Schedule Code of the United States (HTSUS) for the single product covered by this request**

7306296050

**If this is a renewal of a previously granted exclusion request, please provide the ID number of the previously granted exclusion request**

## Requesting Organization Information

**Full Organization Legal Name**

Borusan Mannesmann Pipe U.S. Inc.  (&quot;BMP&quot;)

**Street Address**

363 N. Sam Houston Parkway East, Suite 500

**City**

Houston

**State**

Texas

**Zip Code**

77060

**Headquarters Country**

United States

**Point of Contact Name**

Joel Johnson

**Phone Number**

832-399-6001

E-mail Address

jjohnson@borusan.com

Web Site Address

https://borusanmannesmannpipe.com/

## Parent Company of Requesting Organization

Full Organization Legal Name

BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S. (&quot;BMB&quot;)

Street Address

Meclisi Mebusan Caddesi, No:35-37

City

Salipazari

Headquarters Country

Turkey

State/Province

Beyoglu/Istanbul

Zip Code

34427

Web Site Address

https://www.borusanmannesmann.com/en/

## Importer of Record for Organization Requesting an Exclusion

Full Organization Legal Name

Borusan Mannesmann Pipe U.S. Inc. (&quot;BMP&quot;)

Street Address

363 N. Sam Houston Parkway East, Suite 500

City

Houston

State

Texas

Zip Code

77060

Headquarters Country

> United States

**Point of Contact Name**

> Joel Johnson

**Phone Number**

> 832-399-6001

**E-mail Address**

> jjohnson@borusan.com

**Web Site Address**

> https://borusanmannesmannpipe.com/

## Requester's Authorized Representative/Agent (if applicable)

**Requestor Point of Contact Name**

> Julie C. Mendoza

**Point-of-Contact Organization**

> Morris, Manning & Martin LLP

**Country Location**

> United States

**Phone Number**

> 202-216-4817

**E-Mail Address**

> jmendoza@mmmlaw.com

**Web Site Address**

> https://www.mmmlaw.com

**Other Information**

## Exclusion Request Details

Does the parent organization hold ownership in (partially or completely), or is it otherwise engaged as a: Manufacturer; Distributor; Exporter or, Importer?

> Yes

Identify the activity

| Manufacturer |
| --- |

**Identify the organization**

| BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S. |
| --- |

**Identify the country where the organization is headquartered**

| Turkey |
| --- |

**Comments**

> BMP produces and finishes oil country tubular goods (&quot;OCTG&quot;) at its mill in Baytown, Texas.  BMP will be submitting 2 exclusion requests for its imports of HTS 7306.29.6050 with outside diameter sizes of 2.375&quot; and 2.875 &quot;.  For upgradeable OCTG casing, BMP will be submitting 1 exclusion request for its imports of HTS 7306.29.4100 with an outside diameter sizes of 5.5&quot;.  The total quantity requested under these three exclusions

**Identify the primary type of activity of the Exclusion Requester**

| Manufacturer |
| --- |

**Comments**

| |
| --- |

**Total Requested Annual Exclusion Quantity in Kilograms (1 metric ton = 1,000 kilograms)**

| 1800000 | Kilograms |
| --- | --- |

**Average annual consumption for years 2015-2017 of the product that is subject of this Exclusion Request (Kilograms)**

| 26169000 | Kilograms |
| --- | --- |

**Explain why your organization requires an Exclusion**

| Insufficient U.S. Availability |
| --- |

**Please provide comments**

| |
| --- |

| | | |
| --- | --- | --- |
| Identify the percentage of total product covered under this Exclusion Request not available from manufacturers in the United States | 100 | % |
| Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization | 120 | days |
| Estimate the number of days required to manufacture the product covered by this Exclusion Request, from the time a binding purchase order is executed | 100 | days |
| Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock | 30 | days |
| Estimate the number of distinct shipments from the foreign port(s) of departure that will be needed for transporting to the United States the product subject to this Exclusion Request | 6 | shipments |

Identify the U.S. Destination Port(s) of Entry through which the product subject to this Exclusion Request would be transported

Port 1 Port of Houston

Port 2 Port of New Orleans

Port 3 Port of Galveston

Port 4 Port of Lake Charles

Is the organization making this Exclusion Request doing so on behalf of a non-U.S. producer that does not manufacture products in the United States?

No

Identify the non-U.S. producer

Identify the country where the organization is headquartered

Comments

## Exclusion Request Product Information

For this single Exclusion Request, provide a full, complete description of the product in the space provided below.See explanation below.

The product for which an Exclusion is being requested is defined as follows: *

Upgradeable welded tubing used in drilling for oil or gas of iron or nonalloy steel, with an outside diameter of 2.375&quot; (59.52 mm - 61.08 mm), with a wall thickness of 4.82 mm.

*With regard to the product for which an Exclusion is requested, such a description must be limited to a single product. The description must be limited solely to physical properties (e.g., chemical requirements, mechanical requirements, dimensions, etc.) and exact descriptive terms/phrases covering the product subject to the Exclusion Request (e.g., "hot-rolled," "seamless pipe," "suitable for use in boilers," "longitudinally submerged arc welded," etc.).

All such physical properties must be defined based on actual, rather than nominal, measurements; references to specific dimensions (e.g., "cross-sectional diameter of 5.50 mm") or measurements (e.g., "yield strength of 300 MPa," "carbon content 0.08%," etc.) will be interpreted as meaning the exact dimension or measurement. Ranges (e.g., "cross-sectional diameter falling within the range 5.35 mm and 5.65 mm," "yield strength greater than or equal to 300 MPa," "carbon content less than or equal to 0.15%, by weight," etc.) are allowed. Where a range is needed, it should be identified based on the end points of the range (as in the examples above), rather than through references to absolute or percentage tolerances.

Comments

There is insufficient U.S. availability of OCTG generally in the U.S. and BMP is operating at full capacity and is thus unable to supply all of the OCTG that BMP's customers demand. BMP requires this exclusion request as its Baytown mill cannot



Identify the standards organizations that have set specifications for the product type that is the subject of this Exclusion Request, and provide the reference designation(s) for the identified standards organization(s), (e.g., ASTM A108-13):

**Organization Designation**

1 API          API 5CT J55 Upgradable

Identify the classification and properties of the product covered under this Exclusion Request. Other classification or properties may be described in the textboxes below. (Select all that apply)

| Slab ☐ | Blooms ☐ | Billets ☐ | Ingots ☐ | Flat ☐ | Long ☐ |
|---|---|---|---|---|---|
| Beams ☐ | Semi-Finished ☐ | Pipe ☐ | Tube ☑ | Stainless ☐ | Wire ☐ |
| Hot Rolled ☐ | Cold Rolled ☐ | Annealed ☐ | Plated ☐ | Electro-Plated ☐ | Galvanized ☐ |
| Electro-Galvanized ☐ | Zinc Plated ☐ | Aluminum Plated ☐ | Lead Plated ☐ | Tin Plated ☐ | Painted ☐ |
| Varnished ☐ | Plasticized ☐ | Pickled ☐ | Fittings ☐ | | |

Use the text boxes on the right if property is not listed above.

> Tubing for Oil Country

Comments

Identify the chemical composition of the specific product for which your organization seeks an Exclusion. Numbers may appear rounded, but full values will be stored. Format should starts with 0(example: 0.975)

| Chemical | Aluminum | Antimony | Bismuth | Boron | Carbon |
|---|---|---|---|---|---|
| Minimum % | 0.02 | 0.0002 | 0.00001 | 0.00001 | 0.23 |
| Maximum % | 0.06 | 0.006 | 0.0097 | 0.0007 | 0.29 |
| | Chromium | Cobalt | Copper | Iron | Lead |
| Minimum % | 0.017 | 0 | 0.08 | 97.4999 | 0 |
| Maximum % | 0.076 | 0 | 0.2 | 98.35537 | 0.0097 |
| | Magnesium | Manganese | Molybdenum | Nickel | Niobium |
| Minimum % | 0 | 1.12 | 0.0035 | 0.03 | 0.0001 |
| Maximum % | 0 | 1.40 | 0.026 | 0.1 | 0.016 |
| | Nitrogen | Phosphorus | Selenium | Silicon | Sulfur |
| Minimum % | 0.0005 | 0.002 | 0 | 0.14 | 0.0005 |

| | | | | |
|---|---|---|---|---|
| Maximum % | 0.009 | 0.019 | 0 | 0.25 | 0.008 |

| | Tellurium | Tin | Titanium | Tungsten | Vanadium |
|---|---|---|---|---|---|
| Minimum % | 0 | 0 | 0.0008 | 0 | 0.00001 |
| Maximum % | 0 | 0 | 0.011 | 0 | 0.009 |

| | Zinc | Zirconium | Calcium | | |
|---|---|---|---|---|---|
| Minimum % | 0 | 0 | 0.00025 | | |
| Maximum % | 0.013 | 0 | 0.0038 | | |

Comments

Provide the following information on the single product that is the subject of this Exclusion Request: 1) dimensional information for the single product and a single size -- not a range of products and or sizes (e.g., 19 mm dia. rebar - not 19, 22, 25, and 29 mm.). A separate Exclusion Request must be submitted for each product by physical dimension; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature.

Product Specifications (Millimeters)

| | Thickness | Inside Diameter | Outside Diameter | Length | Width | Height |
|---|---|---|---|---|---|---|
| Minimum | 4.66 | 0 | 59.52 | 9000 | 0 | 0 |
| Maximum | 5.13 | 0 | 61.08 | 10211 | 0 | 0 |

Strength

| | Tensile Strength Mega Pascal (MPa) | Yield Strength Mega Pascal (MPa) | Hardness (specify method - Brinnell, Rockwell, Vickers, etc.) |
|---|---|---|---|
| | | | N/A |
| Minimum | 570 | 380 | |
| Maximum | 640 | 490 | |

Toughness (If Applicable)

| Test Type | Drop-Weight Tear Testing | Impact (Charpy) Testing | Other |
|---|---|---|---|
| | | | Provide Test Method |
| Temperature | | | |
| Joules | | | |
| % Shear | | | |

Provide the following information on the single product that is the subject of this Exclusion Request: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness.

| | Global Ductility | | Local Ductility | |
|---|---|---|---|---|
| | Elongation % | Reduction in Area % | Hole Expansion % | Bendability (mm) |
| Minimum | 25 % | 0 % | 0 % | 0 mm |
| Maximum | 39 % | 0 % | 0 % | 0 mm |

| | Magnetic Permeability | | | Surface Finish |
|---|---|---|---|---|
| | Epstein Test | Greer Lab Method | Stacked Wide Sheet | Profilometer - [SAE J911] |
| Minimum | 0 | 0 | 0 | 0 |
| Maximum | 0 | 0 | 0 | 0 |

**Coating Type and Composition**

| Coating Method | Coating Product Name and Abbreviation | Composition (e.g., Zn, Al, Si, Mg) |
|---|---|---|
| Other | Temporary Varnishing | Acetone, Butyl Acetate, Toluene, |

**Coating Weight and Thickness**

| | Coating Weight | Coating Thickness |
|---|---|---|
| Minimum | 8.9 grams psq | 10 micrometers |
| Maximum | 25 grams psq | 25 micrometers |

Specify any Additional Methods Used

Comments

## Product Commercial Names

List the Commercial Name(s) of the single product that is the subject of this exclusion

Upgradeable OCTG J55 tubing with outside diameter of 2.375"

Comments

Identify the Association code for the product that is the subject of this Exclusion Request

State the 1) application for the product (e.g., automotive, appliances, industrial products, structural, etc.) that is the subject of this Exclusion Request, and 2) why similar products manufactured in the United States, if available, are not suitable: *

1. This product is used in the oil and gas industry. Please see attached detailed reasons for the exclusion request for an explanation of why BMP's imports of this product qualifies for an exemption under the U.S. Department of Commerce's regulations. 2. BMP has attempted to source this product from domestic competitors, but these attempts failed as there is no commercial supply of unfinished OCTG.  BMP notes that despite operating 24/7, investing $50 million for the

If the Exclusion is needed to support U.S. national security requirements (critical infrastructure or national defense systems), provide a detailed description of the specific uses of this single product:

Granting this proposed exclusion meets and advances a "specific national security consideration" by helping to secure necessary domestic production of OCTG to serve U.S. critical infrastructure in the energy sector, while increasing high-paying steel jobs in the United States for years to come.  In addition, granting this proposed exclusion also advances a specific national security consideration in that the OCTG market is currently suffering a major shortage that has been

## Source Countries

Identify the source countries for the single product for which the Exclusion is requested, the annual quantity to be supplied in kilograms, and the name of the current manufacturer(s) of the product. If this product is not obtained directly from the manufacturer, identify the current supplier(s) and the country of the supplier(s). The Exclusion Request, if granted, will pertain solely to the identified supplier(s) listed in this form and the country of origin. NOTE: Products encompassing more than one 10 - digit HTSUS code must submit a separate Exclusion Request for each pertinent code.

| | Country of Origin | Country of Export | Exclusion Quantity | Current Manufacturer | Current Supplier (if not obtained directly from manufacturer) |
|---|---|---|---|---|---|
| 1 | Turkey | Turkey | 1800000 | Borusan Mannesi | Borusan Mannesmann Boru S |

## Product Availability Information

Does the Requester possess knowledge of any domestic U.S. parties that currently manufacture the described product in the United States?

Yes

Comments

There are producers of finished OCTG that must first produce unfinished or green tube.  However, such products are not normally sold in commercial markets as OCTG producers are not willing to sell unfinished OCTG to their competitors.

Does the Requester possess knowledge of any parties that currently manufacture the described product in a country exempted from this tariff? If yes, identify the country or countries below.

Yes

Comments

There are international companies that produce finished OCTG and therefore must produce green tube as part of the manufacturing process but this is not a product normally sold commercially. To the limited extent it is supplied to the

Is the Requester aware of any manufacturers capable of producing a substitute for the product in the United States? If "Yes" provide supporting information (name and address) in the space below?

No

Comments

There is no substitute for this product.   This exclusion is for a welded OCTG product.  BMP does not produce seamless OCTG.

Has the Exclusion Requester attempted to qualify any manufacturer in the United States as a supplier of the product that is the subject of this Exclusion Request in the past two years? If "Yes" provide supporting information in the space below.

No

Please provide names of the manufacturers.

**Manufacturers**

Comments

Has the Exclusion Requester attempted to purchase the described product that is the subject of this Exclusion Request, or a substitute, from a U.S. manufacturer in the past two years? If "Yes" identify the manufacturers, addresses, and your points of contact at the U.S. manufacturing organizations in the comments below.

> Yes

Comments

> BMP reached out to all of its domestic competitors.  Four of these competitors chose not to respond to BMP's inquiry.  Some of those competitors produce seamless pipe while BMP produces only welded pipe.  For those that did respond, 

Has the Exclusion Requester had supply contracts, or does it have current contracts, with producers that manufacture in the United States the product identified in the Exclusion Request? If "Yes" identify the U.S. manufacturers, addresses, and your points of contact at the U.S. manufacturing organizations in the comments below.

> No

Comments

> BMP's domestic competitors will not supply it with unfinished upgradeable OCTG tubing and casing.  Furthermore, BMP as well as its domestic competitors are facing unprecedented demand for OCTG that has only been further exacerbated 

Has the Exclusion Requester determined that there is no U.S. manufacturer that produces a near-equivalent product that would meet qualification requirements? If "Yes" identify in the space below the testing standards/procedures employed to make that determination (e.g., magnetic core loss, etc).

> Yes

Comments

> BMP determined that there is no commercial supply of unfinished OCTG by contacting all of its domestic competitors.  None of these companies have provided all of the information requested by BMP and thus BMP is unable to qualify them 

In the last two years, has the Requester purchased a substitute product manufactured in the United States in place of the product described in the Exclusion Request? If "Yes" provide supporting information in the comments below.

> No

Comments

> There is no substitute for this product.   This exclusion is for a welded OCTG product.  BMP does not produce seamless OCTG.

Provide a detailed explanation as to how U.S. Customs and Border Protection (CBP) will be able to reasonably distinguish the product subject to the Exclusion Request at time of entry, without adding undue burden to their current entry system and procedures.

> BMP's exclusion request will not add any undue burden on CBP's current entry system and procedures.  CBP can reasonably distinguish the steel product subject to this Exclusion Request by using the HTS code and sizes identified herein.

## Certification

Instruction: This Exclusion Request must be signed by an organization official specifically authorized to certify the document as being accurate and complete. The undersigned certifies that the information herein supplied in response to this questionnaire is complete and correct to the best of his/her knowledge.

Effective for all exclusion requests submitted on or after December 14, 2020, the undersigned certifies in the 232 Exclusions Portal that the information herein supplied in response to this questionnaire is complete and correct to the best of his/her knowledge. By signing the certification below, I attest that:

    A. My organization intends to manufacture, process, or otherwise transform the imported product for which I have filed an exclusion request or I have a purchase order or orders for such products;

    B. My organization does not intend to use the exclusion for which I have filed an exclusion request, if granted, solely to hedge or arbitrage the price;

    C. My organization expects to consume, sell, or otherwise use the total volume of product across all my active exclusions and pending exclusion requests in the course of my organization's business activities within the next calendar year;

    D. If my organization is submitting an exclusion request for a product for which we previously received an exclusion, I certify that my organization either imported the full amount of our approved exclusion(s) last year or intended to import the full amount but could not due to one of the following reasons:

        1. loss of contract(s);

        2. unanticipated business downturns; or

        3. other factors that were beyond my organizations' control that directly resulted in less need for steel or aluminum articles; and

    E. I certify that the exclusion amount requested this year is in line with what my organization expects to import based on our current business outlook. If requested by the Department of Commerce, my organization shall provide documentation that justifies its assertions in this certification regarding its past imports of steel or aluminum articles and its projections for the current year, as it relates to past and current calendar year exclusion requests.

**It is a criminal offense to willfully make a false statement or representation to any department or agency of the United States Government as to any matter within its jurisdiction.** [18 U.S.C. 1001 (1984 & SUPP. 1197)]

**Company Name**

Borusan Mannesmann Pipe U.S. Inc.

**Name of Authorizing Official**

Joel Johnson

**Title of Authorizing Official**

Chief Executive Officer

**Phone Number**

832-399-6001

**Email of Authorizing Official**

jjohnson@borusan.com

If the Point of Contact is different from the Authorizing Official provide point-of-contact information below.

**Point-of-Contact Name**

Julie C. Mendoza

**Title**

Partner

**E-mail Address**

jmendoza@mmmlaw.com

Phone Number

202-216-4817

Do you have additional information to provide that is proprietary or otherwise business confidential that is relevant and necessary to this submission?
*Note: If the answer is 'Yes', do not attach business confidential information at this time.*

Yes                                                                                              ⌄

Small Business?

No

## Attachment

View attachment file

## Published Objection Filings

| Company | Product | Posted Date | Details |
|---|---|---|---|
| Zekelman Industries | Steel | 9/2/2022 | Details |
| Maverick Tube Corporation | Steel | 9/2/2022 | Details |

## BIS Decision Memo

View attachment file

## ITA Public Recommendation Memo

View attachment file

[Back]

For questions about the exclusion process, please email or call:
Aluminum232@bis.doc.gov or 202-482-4757 for aluminum-related inquiries, and Steel232@bis.doc.gov or 202-482-5642 for steel-related inquiries.

**U.S. Department of Commerce**
1401 Constitution Ave NW
Washington, DC 20230

Accessibility   •   Privacy policy

**U.S. Department of Commerce**

Section 232 Steel and Aluminum

## Product Information

Submission Date: 7/29/2022

Public Status: Denied

Please select product type

| Steel |
|---|

Identify the class of product for which the Exclusion is sought

| Carbon and Pipe and Tube |
|---|

10-Digit Harmonized Tariff Schedule Code of the United States (HTSUS) for the single product covered by this request

| 7306296050 |
|---|

If this is a renewal of a previously granted exclusion request, please provide the ID number of the previously granted exclusion request

| |
|---|

## Requesting Organization Information

Full Organization Legal Name

Borusan Mannesmann Pipe U.S. Inc.  (&quot;BMP&quot;)

Street Address

363 N. Sam Houston Parkway East, Suite 500

City

Houston

State

Texas

Zip Code

77060

Headquarters Country

United States

Point of Contact Name

Joel Johnson

Phone Number

832-399-6001

Email Address

jjohnson@borusan.com

Web Site Address

https://borusanmannesmannpipe.com/

## Parent Company of Requesting Organization

Full Organization Legal Name

BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S. (&quot;BMB&quot;)

Street Address

Meclisi Mebusan Caddesi, No:35-37

City

Salipazari

Headquarters Country

Turkey

State/Province

Beyoglu/Istanbul

Zip Code

34427

Web Site Address

https://www.borusanmannesmann.com/en/

## Importer of Record for Organization Requesting an Exclusion

Full Organization Legal Name

Borusan Mannesmann Pipe U.S. Inc. (&quot;BMP&quot;)

Street Address

363 N. Sam Houston Parkway East, Suite 500

City

Houston

State

Texas

Zip Code

77060

Headquarters Country

United States

**Point of Contact Name**

Joel Johnson

**Phone Number**

832-399-6001

**E-mail Address**

jjohnson@borusan.com

**Web Site Address**

https://borusanmannesmannpipe.com/

## Requester's Authorized Representative/Agent (if applicable)

**Requestor Point of Contact Name**

Julie C. Mendoza

**Point-of-Contact Organization**

Morris, Manning & Martin LLP

**Country Location**

United States

**Phone Number**

202-216-4817

**E-Mail Address**

jmendoza@mmmlaw.com

**Web Site Address**

https://www.mmmlaw.com

**Other Information**

## Exclusion Request Details

Does the parent organization hold ownership in (partially or completely), or is it otherwise engaged as a: Manufacturer; Distributor; Exporter or, Importer?

Yes

Identify the activity

| Manufacturer |
|---|

**Identify the organization**

| BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S. |
|---|

**Identify the country where the organization is headquartered**

| Turkey |
|---|

**Comments**

BMP produces and finishes oil country tubular goods (&quot;OCTG&quot;) at its mill in Baytown, Texas.  BMP will be submitting 2 exclusion requests for its imports of HTS 7306.29.6050 with outside diameter sizes of 2.375"; and 2.875";.  For upgradeable OCTG casing, BMP will be submitting 1 exclusion request for its imports of HTS 7306.29.4100 with an outside diameter sizes of 5.5&quot;.  The total quantity requested under these three exclusions

**Identify the primary type of activity of the Exclusion Requester**

| Manufacturer |
|---|

**Comments**

|  |
|---|

**Total Requested Annual Exclusion Quantity in Kilograms (1 metric ton = 1,000 kilograms)**

| 4200000 | Kilograms |
|---|---|

**Average annual consumption for years 2015-2017 of the product that is subject of this Exclusion Request (Kilograms)**

| 27481000 | Kilograms |
|---|---|

**Explain why your organization requires an Exclusion**

| Insufficient U.S. Availability |
|---|

**Please provide comments**

|  |
|---|

| Identify the percentage of total product covered under this Exclusion Request not available from manufacturers in the United States | 100 | % |
|---|---|---|
| Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization | 120 | days |
| Estimate the number of days required to manufacture the product covered by this Exclusion Request, from the time a binding purchase order is executed | 100 | days |
| Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock | 30 | days |
| Estimate the number of distinct shipments from the foreign port(s) of departure that will be needed for transporting to the United States the product subject to this Exclusion Request | 6 | shipments |

Identify the U.S. Destination Port(s) of Entry through which the product subject to this Exclusion Request would be transported

Port 1 Port of Houston

Port 2 Port of New Orleans

Port 3 Port of Galveston

Port 4 Port of Lake Charles

Is the organization making this Exclusion Request doing so on behalf of a non-U.S. producer that does not manufacture products in the United States?

No

Identify the non-U.S. producer

Identify the country where the organization is headquartered

Comments

## Exclusion Request Product Information

For this single Exclusion Request, provide a full, complete description of the product in the space provided below.See explanation below.

The product for which an Exclusion is being requested is defined as follows: *

Upgradeable welded tubing used in drilling for oil or gas of iron or nonalloy steel, with an outside diameter of 2.875&quot; (72.22 mm - 73.75 mm), with a wall thickness of 5.51 mm.

*With regard to the product for which an Exclusion is requested, such a description must be limited to a single product. The description must be limited solely to physical properties (e.g., chemical requirements, mechanical requirements, dimensions, etc.) and exact descriptive terms/phrases covering the product subject to the Exclusion Request (e.g., "hot-rolled," "seamless pipe," "suitable for use in boilers," "longitudinally submerged arc welded," etc.).

All such physical properties must be defined based on actual, rather than nominal, measurements; references to specific dimensions (e.g., "cross-sectional diameter of 5.50 mm") or measurements (e.g., "yield strength of 300 MPa," "carbon content 0.08%," etc.) will be interpreted as meaning the exact dimension or measurement. Ranges (e.g., "cross-sectional diameter falling within the range 5.35 mm and 5.65 mm," "yield strength greater than or equal to 300 MPa," "carbon content less than or equal to 0.15%, by weight," etc.) are allowed. Where a range is needed, it should be identified based on the end points of the range (as in the examples above), rather than through references to absolute or percentage tolerances.

Comments

There is insufficient U.S. availability of OCTG generally in the U.S. and BMP is operating at full capacity and is thus unable to supply all of the OCTG that BMP's customers demand.  BMP requires this exclusion request as its Baytown mill cannot



Identify the standards organizations that have set specifications for the product type that is the subject of this Exclusion Request, and provide the reference designation(s) for the identified standards organization(s), (e.g., ASTM A108-13):

**Organization Designation**
1 API         API 5CT J55 Upgradable

Identify the classification and properties of the product covered under this Exclusion Request. Other classification or properties may be described in the textboxes below. (Select all that apply)

| Slab ☐ | Blooms ☐ | Billets ☐ | Ingots ☐ | Flat ☐ | Long ☐ |
| Beams ☐ | Semi-Finished ☐ | Pipe ☐ | Tube ☑ | Stainless ☐ | Wire ☐ |
| Hot Rolled ☐ | Cold Rolled ☐ | Annealed ☐ | Plated ☐ | Electro-Plated ☐ | Galvanized ☐ |
| Electro-Galvanized ☐ | Zinc Plated ☐ | Aluminum Plated ☐ | Lead Plated ☐ | Tin Plated ☐ | Painted ☐ |
| Varnished ☐ | Plasticized ☐ | Pickled ☐ | Fittings ☐ | | |

Use the text boxes on the right if property is not listed above.

Comments

> Tubing for Oil Country

Identify the chemical composition of the specific product for which your organization seeks an Exclusion. Numbers may appear rounded, but full values will be stored. Format should starts with 0(example: 0.975)

| Chemical | Aluminum | Antimony | Bismuth | Boron | Carbon |
|---|---|---|---|---|---|
| Minimum % | 0.02 | 0.0002 | 0.00001 | 0.00001 | 0.23 |
| Maximum % | 0.06 | 0.006 | 0.0097 | 0.0007 | 0.29 |
| | Chromium | Cobalt | Copper | Iron | Lead |
| Minimum % | 0.017 | 0 | 0.08 | 97.4999 | 0 |
| Maximum % | 0.076 | 0 | 0.2 | 98.35537 | 0.0097 |
| | Magnesium | Manganese | Molybdenum | Nickel | Niobium |
| Minimum % | 0 | 1.12 | 0.0035 | 0.03 | 0.0001 |
| Maximum % | 0 | 1.40 | 0.026 | 0.1 | 0.016 |
| | Nitrogen | Phosphorus | Selenium | Silicon | Sulfur |
| Minimum % | 0.0005 | 0.002 | 0 | 0.14 | 0.0005 |

| | | | | | |
|---|---|---|---|---|---|
| Maximum % | 0.009 | 0.019 | 0 | 0.25 | 0.008 |

| | Tellurium | Tin | Titanium | Tungsten | Vanadium |
|---|---|---|---|---|---|
| Minimum % | 0 | 0 | 0.0008 | 0 | 0.00001 |
| Maximum % | 0 | 0 | 0.011 | 0 | 0.009 |

| | Zinc | Zirconium | Calcium | | |
|---|---|---|---|---|---|
| Minimum % | 0 | 0 | 0.00025 | | |
| Maximum % | 0.013 | 0 | 0.0038 | | |

Comments

Provide the following information on the single product that is the subject of this Exclusion Request: 1) dimensional information for the single product and a single size -- not a range of products and or sizes (e.g., 19 mm dia. rebar - not 19, 22, 25, and 29 mm.). A separate Exclusion Request must be submitted for each product by physical dimension; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature.

Product Specifications (Millimeters)

| | Thickness | Inside Diameter | Outside Diameter | Length | Width | Height |
|---|---|---|---|---|---|---|
| Minimum | 5.32 | 0 | 72.22 | 9000 | 0 | 0 |
| Maximum | 5.85 | 0 | 73.75 | 10211 | 0 | 0 |

Strength

| | Tensile Strength Mega Pascal (MPa) | Yield Strength Mega Pascal (MPa) | Hardness (specify method - Brinnell, Rockwell, Vickers, etc.) |
|---|---|---|---|
| | | | N/A |
| Minimum | 550 | 380 | |
| Maximum | 650 | 510 | |

Toughness (If Applicable)

| Test Type | Drop-Weight Tear Testing | Impact (Charpy) Testing | Other |
|---|---|---|---|
| | | | Provide Test Method |
| **Temperature** | | | |
| **Joules** | | | |
| **% Shear** | | | |

Provide the following information on the single product that is the subject of this Exclusion Request: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness.

| | Global Ductility | | Local Ductility | |
|---|---|---|---|---|
| | Elongation % | Reduction in Area % | Hole Expansion % | Bendability (mm) |
| **Minimum** | 24 % | 0 % | 0 % | 0 mm |
| **Maximum** | 39 % | 0 % | 0 % | 0 mm |

| | Magnetic Permeability | | | Surface Finish |
|---|---|---|---|---|
| | Epstein Test | Greer Lab Method | Stacked Wide Sheet | Profilometer - [SAE J911] |
| **Minimum** | 0 | 0 | 0 | 0 |
| **Maximum** | 0 | 0 | 0 | 0 |

### Coating Type and Composition

| Coating Method | Coating Product Name and Abbreviation | Composition (e.g., Zn, Al, Si, Mg) |
|---|---|---|
| Other | Temporary Varnishing | Acetone, Butyl Acetate, Toluene, |

### Coating Weight and Thickness

| | Coating Weight | Coating Thickness |
|---|---|---|
| **Minimum** | 8.9 grams psq | 10 micrometers |
| **Maximum** | 25 grams psq | 25 micrometers |

Specify any Additional Methods Used

Comments

## Product Commercial Names

List the Commercial Name(s) of the single product that is the subject of this exclusion

Upgradeable OCTG J55 tubing with outside diameter of 2.875"

Comments

Identify the Association code for the product that is the subject of this Exclusion Request

State the 1) application for the product (e.g., automotive, appliances, industrial products, structural, etc.) that is the subject of this Exclusion Request, and 2) why similar products manufactured in the United States, if available, are not suitable: *

1. This product is used in the oil and gas industry. Please see attached detailed reasons for the exclusion request for an explanation of why BMP's imports of this product qualifies for an exemption under the U.S. Department of Commerce's regulations. 2. BMP has attempted to source this product from domestic competitors, but these attempts failed as there is no commercial supply of unfinished OCTG. BMP notes that despite operating 24/7, investing $50 million for the

If the Exclusion is needed to support U.S. national security requirements (critical infrastructure or national defense systems), provide a detailed description of the specific uses of this single product:

Granting this proposed exclusion meets and advances a "specific national security consideration" by helping to secure necessary domestic production of OCTG to serve U.S. critical infrastructure in the energy sector, while increasing high-paying steel jobs in the United States for years to come. In addition, granting this proposed exclusion also advances a specific national security consideration in that the OCTG market is currently suffering a major shortage that has been

## Source Countries

Identify the source countries for the single product for which the Exclusion is requested, the annual quantity to be supplied in kilograms, and the name of the current manufacturer(s) of the product. If this product is not obtained directly from the manufacturer, identify the current supplier(s) and the country of the supplier(s). The Exclusion Request, if granted, will pertain solely to the identified supplier(s) listed in this form and the country of origin. NOTE: Products encompassing more than one 10 - digit HTSUS code must submit a separate Exclusion Request for each pertinent code.

| | Country of Origin | Country of Export | Exclusion Quantity | Current Manufacturer | Current Supplier (if not obtained directly from manufacturer) |
|---|---|---|---|---|---|
| 1 | Turkey | Turkey | 4200000 | Borusan Mannesı | Borusan Mannesmann Boru S |

## Product Availability Information

Does the Requester possess knowledge of any domestic U.S. parties that currently manufacture the described product in the United States?

Yes

Comments

There are producers of finished OCTG that must first produce unfinished or green tube.  However, such products are not normally sold in commercial markets as OCTG producers are not willing to sell unfinished OCTG to their competitors.

Does the Requester possess knowledge of any parties that currently manufacture the described product in a country exempted from this tariff? If yes, identify the country or countries below.

Yes

Comments

There are international companies that produce finished OCTG and therefore must produce green tube as part of the manufacturing process but this is not a product normally sold commercially. To the limited extent it is supplied to the

Is the Requester aware of any manufacturers capable of producing a substitute for the product in the United States? If "Yes" provide supporting information (name and address) in the space below?

No

Comments

There is no substitute for this product.   This exclusion is for a welded OCTG product.  BMP does not produce seamless OCTG.

Has the Exclusion Requester attempted to qualify any manufacturer in the United States as a supplier of the product that is the subject of this Exclusion Request in the past two years? If "Yes" provide supporting information in the space below.

No

Please provide names of the manufacturers.

**Manufacturers**

Comments

Has the Exclusion Requester attempted to purchase the described product that is the subject of this Exclusion Request, or a substitute, from a U.S. manufacturer in the past two years? If "Yes" identify the manufacturers, addresses, and your points of contact at the U.S. manufacturing organizations in the comments below.

Yes

Comments

BMP reached out to all of its domestic competitors. Four of these competitors chose not to respond to BMP's inquiry. Some of those competitors produce seamless pipe while BMP produces only welded pipe. For those that did respond, 

Has the Exclusion Requester had supply contracts, or does it have current contracts, with producers that manufacture in the United States the product identified in the Exclusion Request? If "Yes" identify the U.S. manufacturers, addresses, and your points of contact at the U.S. manufacturing organizations in the comments below.

No

Comments

BMP's domestic competitors will not supply it with unfinished upgradeable OCTG tubing and casing. Furthermore, BMP as well as its domestic competitors are facing unprecedented demand for OCTG that has only been further exacerbated 

Has the Exclusion Requester determined that there is no U.S. manufacturer that produces a near-equivalent product that would meet qualification requirements? If "Yes" identify in the space below the testing standards/procedures employed to make that determination (e.g., magnetic core loss, etc).

Yes

Comments

BMP determined that there is no commercial supply of unfinished OCTG by contacting all of its domestic competitors. None of these companies have provided all of the information requested by BMP and thus BMP is unable to qualify them 

In the last two years, has the Requester purchased a substitute product manufactured in the United States in place of the product described in the Exclusion Request? If "Yes" provide supporting information in the comments below.

No

Comments

There is no substitute for this product. This exclusion is for a welded OCTG product. BMP does not produce seamless OCTG.

Provide a detailed explanation as to how U.S. Customs and Border Protection (CBP) will be able to reasonably distinguish the product subject to the Exclusion Request at time of entry, without adding undue burden to their current entry system and procedures.

BMP's exclusion request will not add any undue burden on CBP's current entry system and procedures. CBP can reasonably distinguish the steel product subject to this Exclusion Request by using the HTS code and sizes identified herein.

## Certification

Instruction: This Exclusion Request must be signed by an organization official specifically authorized to certify the document as being accurate and complete. The undersigned certifies that the information herein supplied in response to this questionnaire is complete and correct to the best of his/her knowledge.

Effective for all exclusion requests submitted on or after December 14, 2020, the undersigned certifies in the 232 Exclusions Portal that the information herein supplied in response to this questionnaire is complete and correct to the best of his/her knowledge. By signing the certification below, I attest that:

    A. My organization intends to manufacture, process, or otherwise transform the imported product for which I have filed an exclusion request or I have a purchase order or orders for such products;

    B. My organization does not intend to use the exclusion for which I have filed an exclusion request, if granted, solely to hedge or arbitrage the price;

    C. My organization expects to consume, sell, or otherwise use the total volume of product across all my active exclusions and pending exclusion requests in the course of my organization's business activities within the next calendar year;

    D. If my organization is submitting an exclusion request for a product for which we previously received an exclusion, I certify that my organization either imported the full amount of our approved exclusion(s) last year or intended to import the full amount but could not due to one of the following reasons:

        1. loss of contract(s);

        2. unanticipated business downturns; or

        3. other factors that were beyond my organizations' control that directly resulted in less need for steel or aluminum articles; and

    E. I certify that the exclusion amount requested this year is in line with what my organization expects to import based on our current business outlook. If requested by the Department of Commerce, my organization shall provide documentation that justifies its assertions in this certification regarding its past imports of steel or aluminum articles and its projections for the current year, as it relates to past and current calendar year exclusion requests.

**It is a criminal offense to willfully make a false statement or representation to any department or agency of the United States Government as to any matter within its jurisdiction.** [18 U.S.C. 1001 (1984 & SUPP. 1197)]

**Company Name**

Borusan Mannesmann Pipe U.S. Inc.

**Name of Authorizing Official**

Joel Johnson

**Title of Authorizing Official**

Chief Executive Officer

**Phone Number**

832-399-6001

**Email of Authorizing Official**

jjohnson@borusan.com

If the Point of Contact is different from the Authorizing Official provide point-of-contact information below.

**Point-of-Contact Name**

Julie C. Mendoza

**Title**

Partner

**E-mail Address**

jmendoza@mmmlaw.com

Phone Number

202-216-4817

Do you have additional information to provide that is proprietary or otherwise business confidential that is relevant and necessary to this submission?
*Note: If the answer is 'Yes', do not attach business confidential information at this time.*

Yes ⌄

Small Business?

No

## Attachment

View attachment file

## Published Objection Filings

| Company | Product | Posted Date | Details |
|---|---|---|---|
| Zekelman Industries | Steel | 9/2/2022 | Details |
| Maverick Tube Corporation | Steel | 9/2/2022 | Details |

## BIS Decision Memo

View attachment file



## ITA Public Recommendation Memo



View attachment file

Back

For questions about the exclusion process, please email or call:
Aluminum232@bis.doc.gov or 202-482-4757 for aluminum-related inquiries, and Steel232@bis.doc.gov or 202-482-5642 for steel-related inquiries.

**U.S. Department of Commerce**
1401 Constitution Ave NW
Washington, DC 20230

Accessibility    •    Privacy policy

# U.S. Department of Commerce

Section 232 Steel and Aluminum

## Product Information

Submission Date: 7/29/2022

Public Status: Denied

**Please select product type**

Steel

**Identify the class of product for which the Exclusion is sought**

Carbon and Pipe and Tube

**10-Digit Harmonized Tariff Schedule Code of the United States (HTSUS) for the single product covered by this request**

7306294100

**If this is a renewal of a previously granted exclusion request, please provide the ID number of the previously granted exclusion request**

## Requesting Organization Information

**Full Organization Legal Name**

Borusan Mannesmann Pipe U.S. Inc.  (&quot;BMP&quot;)

**Street Address**

363 N. Sam Houston Parkway East, Suite 500

**City**

Houston

**State**

Texas

**Zip Code**

77060

**Headquarters Country**

United States

**Point of Contact Name**

Joel Johnson

**Phone Number**

832-399-6001

E-mail Address

jjohnson@borusan.com

Web Site Address

https://borusanmannesmannpipe.com/

## Parent Company of Requesting Organization

Full Organization Legal Name

BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S. (&quot;BMB&quot;)

Street Address

Meclisi Mebusan Caddesi, No:35-37

City

Salipazari

Headquarters Country

Turkey

State/Province

Beyoglu/Istanbul

Zip Code

34427

Web Site Address

https://www.borusanmannesmann.com/en/

## Importer of Record for Organization Requesting an Exclusion

Full Organization Legal Name

Borusan Mannesmann Pipe U.S. Inc. (&quot;BMP&quot;)

Street Address

363 N. Sam Houston Parkway East, Suite 500

City

Houston

State

Texas

Zip Code

77060

Headquarters Country

United States

**Point of Contact Name**

Joel Johnson

**Phone Number**

832-399-6001

**E-mail Address**

jjohnson@borusan.com

**Web Site Address**

https://borusanmannesmannpipe.com/

## Requester's Authorized Representative/Agent (if applicable)

**Requestor Point of Contact Name**

Julie C. Mendoza

**Point-of-Contact Organization**

Morris, Manning & Martin LLP

**Country Location**

United States

**Phone Number**

202-216-4817

**E-Mail Address**

jmendoza@mmmlaw.com

**Web Site Address**

https://www.mmmlaw.com

**Other Information**

## Exclusion Request Details

Does the parent organization hold ownership in (partially or completely), or is it otherwise engaged as a: Manufacturer; Distributor; Exporter or, Importer?

Yes

Identify the activity

| Manufacturer |
| --- |

**Identify the organization**

| BORUSAN MANNESMANN BORU SANAYI VE TICARET A.S. |
| --- |

**Identify the country where the organization is headquartered**

| Turkey |
| --- |

**Comments**

> BMP produces and finishes oil country tubular goods (&quot;OCTG&quot;) at its mill in Baytown, Texas.  BMP will be submitting 2 exclusion requests for its imports of HTS 7306.29.6050 with outside diameter sizes of 2.375" and 2.875".  For upgradeable OCTG casing, BMP will be submitting 1 exclusion request for its imports of HTS 7306.29.4100 with an outside diameter size of 5.5&quot;.  The total quantity requested under these three exclusions is 18,000 MT or

**Identify the primary type of activity of the Exclusion Requester**

| Manufacturer |
| --- |

**Comments**

| |
| --- |

**Total Requested Annual Exclusion Quantity in Kilograms (1 metric ton = 1,000 kilograms)**

| 12000000 | Kilograms |
| --- | --- |

**Average annual consumption for years 2015-2017 of the product that is subject of this Exclusion Request (Kilograms)**

| 334596000 | Kilograms |
| --- | --- |

**Explain why your organization requires an Exclusion**

| Insufficient U.S. Availability |
| --- |

**Please provide comments**

| |
| --- |

| Identify the percentage of total product covered under this Exclusion Request not available from manufacturers in the United States | 100 | % |
| --- | --- | --- |
| Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization | 120 | days |
| Estimate the number of days required to manufacture the product covered by this Exclusion Request, from the time a binding purchase order is executed | 100 | days |
| Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock | 30 | days |
| Estimate the number of distinct shipments from the foreign port(s) of departure that will be needed for transporting to the United States the product subject to this Exclusion Request | 6 | shipments |

Identify the U.S. Destination Port(s) of Entry through which the product subject to this Exclusion Request would be transported

Port 1 Port of Houston

Port 2 Port of New Orleans

Port 3 Port of Galveston

Port 4 Port of Lake Charles

Is the organization making this Exclusion Request doing so on behalf of a non-U.S. producer that does not manufacture products in the United States?

> No

Identify the non-U.S. producer

Identify the country where the organization is headquartered

Comments

## Exclusion Request Product Information

For this single Exclusion Request, provide a full, complete description of the product in the space provided below.See explanation below.

The product for which an Exclusion is being requested is defined as follows: *

> Upgradeable welded casing used in drilling for oil or gas of iron or other alloy steel, with an outside diameter of 5.5&quot;
> (139 mm - 141 mm), with a wall thickness of 9.17 mm.

*With regard to the product for which an Exclusion is requested, such a description must be limited to a single product. The description must be limited solely to physical properties (e.g., chemical requirements, mechanical requirements, dimensions, etc.) and exact descriptive terms/phrases covering the product subject to the Exclusion Request (e.g., "hot-rolled," "seamless pipe," "suitable for use in boilers," "longitudinally submerged arc welded," etc.).

All such physical properties must be defined based on actual, rather than nominal, measurements; references to specific dimensions (e.g., "cross-sectional diameter of 5.50 mm") or measurements (e.g., "yield strength of 300 MPa," "carbon content 0.08%," etc.) will be interpreted as meaning the exact dimension or measurement. Ranges (e.g., "cross-sectional diameter falling within the range 5.35 mm and 5.65 mm," "yield strength greater than or equal to 300 MPa," "carbon content less than or equal to 0.15%, by weight," etc.) are allowed. Where a range is needed, it should be identified based on the end points of the range (as in the examples above), rather than through references to absolute or percentage tolerances.

Comments

> There is insufficient availability of OCTG generally in the U.S. and BMP is operating at full capacity and is thus unable to supply all of the OCTG that BMP's customers demand.  BMP wishes to use its U.S. finishing capacity for casing to the



Identify the standards organizations that have set specifications for the product type that is the subject of this Exclusion Request, and provide the reference designation(s) for the identified standards organization(s), (e.g., ASTM A108-13):

**Organization Designation**

1 API          API 5CT J55 Upgradable

Identify the classification and properties of the product covered under this Exclusion Request. Other classification or properties may be described in the textboxes below. (Select all that apply)

| Slab ☐ | Blooms ☐ | Billets ☐ | Ingots ☐ | Flat ☐ | Long ☐ |
| Beams ☐ | Semi-Finished ☐ | Pipe ☑ | Tube ☐ | Stainless ☐ | Wire ☐ |
| Hot Rolled ☐ | Cold Rolled ☐ | Annealed ☐ | Plated ☐ | Electro-Plated ☐ | Galvanized ☐ |
| Electro-Galvanized ☐ | Zinc Plated ☐ | Aluminum Plated ☐ | Lead Plated ☐ | Tin Plated ☐ | Painted ☐ |
| Varnished ☐ | Plasticized ☐ | Pickled ☐ | Fittings ☐ | | |

Use the text boxes on the right if property is not listed above.

Pipe and Tube Casing

Comments

Identify the chemical composition of the specific product for which your organization seeks an Exclusion. Numbers may appear rounded, but full values will be stored. Format should starts with 0(example: 0.975)

| Chemical | Aluminum | Antimony | Bismuth | Boron | Carbon |
|---|---|---|---|---|---|
| Minimum % | 0.018 | 0.00 | 0 | 0.0008 | 0.24 |
| Maximum % | 0.07 | 0.00422 | 0.01 | 0.0032 | 0.304 |
| | Chromium | Cobalt | Copper | Iron | Lead |
| Minimum % | 0.00001 | 0 | 0.002 | 95.62008 | 0 |
| Maximum % | 0.133 | 0 | 0.29 | 98.47049 | 0.005 |
| | Magnesium | Manganese | Molybdenum | Nickel | Niobium |
| Minimum % | 0 | 1.08 | 0.00001 | 0.00 | 0.00001 |
| Maximum % | 0 | 1.5 | 0.029 | 0.09 | 0.012 |
| | Nitrogen | Phosphorus | Selenium | Silicon | Sulfur |
| Minimum % | 0.00001 | 0.00001 | 0 | 0.16 | 0.00025 |

| | | | | | |
|---|---|---|---|---|---|
| Maximum % | 0.0095 | 0.027 | 0 | 0.42 | 0.018 |

| | Tellurium | Tin | Titanium | Tungsten | Vanadium |
|---|---|---|---|---|---|
| Minimum % | 0 | 0 | 0.014 | 0 | 0.0004 |
| Maximum % | 0 | 0 | 0.041 | 0 | 0.014 |

| | Zinc | Zirconium | Calcium | | |
|---|---|---|---|---|---|
| Minimum % | 0.00001 | 0 | 0.00003 | | |
| Maximum % | 0.006 | 0 | 0.008 | | |

Comments

Provide the following information on the single product that is the subject of this Exclusion Request: 1) dimensional information for the single product and a single size -- not a range of products and or sizes (e.g., 19 mm dia. rebar - not 19, 22, 25, and 29 mm.). A separate Exclusion Request must be submitted for each product by physical dimension; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature.

Product Specifications (Millimeters)

| | Thickness | Inside Diameter | Outside Diameter | Length | Width | Height |
|---|---|---|---|---|---|---|
| Minimum | 8.85 | 0 | 139 | 11582 | 0 | 0 |
| Maximum | 9.76 | 0 | 141 | 14000 | 0 | 0 |

Strength

| | Tensile Strength Mega Pascal (MPa) | Yield Strength Mega Pascal (MPa) | Hardness (specify method - Brinnell, Rockwell, Vickers, etc.) |
|---|---|---|---|
| | | | N/A |
| Minimum | 560 | 470 | |
| Maximum | 730 | 660 | |

Toughness (If Applicable)

| Test Type | Drop-Weight Tear Testing | Impact (Charpy) Testing | Other |
|---|---|---|---|
| | | | Provide Test Method |
| **Temperature** | | | |
| **Joules** | | | |
| **% Shear** | | | |

Provide the following information on the single product that is the subject of this Exclusion Request: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness.

| | Global Ductility | | Local Ductility | |
|---|---|---|---|---|
| | Elongation % | Reduction in Area % | Hole Expansion % | Bendability (mm) |
| **Minimum** | 22 % | 0 % | 0 % | 0 mm |
| **Maximum** | 33 % | 0 % | 0 % | 0 mm |

| | Magnetic Permeability | | | Surface Finish |
|---|---|---|---|---|
| | Epstein Test | Greer Lab Method | Stacked Wide Sheet | Profilometer - [SAE J911] |
| **Minimum** | 0 | 0 | 0 | 0 |
| **Maximum** | 0 | 0 | 0 | 0 |

**Coating Type and Composition**

| Coating Method | Coating Product Name and Abbreviation | Composition (e.g., Zn, Al, Si, Mg) |
|---|---|---|
| Other | Temporary Varnishing | Acetone, Butyl Acetate, Toluene, |

**Coating Weight and Thickness**

| | Coating Weight | Coating Thickness |
|---|---|---|
| **Minimum** | 8.9 grams psq | 10 micrometers |
| **Maximum** | 25 grams psq | 25 micrometers |

Specify any Additional Methods Used

Weld Normalization

Comments

## Product Commercial Names

List the Commercial Name(s) of the single product that is the subject of this exclusion

Upgradeable OCTG J55 casing with outside diameter of 5.5"

Comments

Identify the Association code for the product that is the subject of this Exclusion Request

State the 1) application for the product (e.g., automotive, appliances, industrial products, structural, etc.) that is the subject of this Exclusion Request, and 2) why similar products manufactured in the United States, if available, are not suitable: *

1. This product is used in the oil and gas industry. Please see attached detailed reasons for the exclusion request for an explanation of why BMP's imports of this product qualifies for an exemption under the U.S. Department of Commerce's regulations. 2. BMP has attempted to source this product from domestic competitors, but these attempts failed as there is no commercial supply of unfinished OCTG.  BMP notes that despite operating 24/7, investing $50 million for the

If the Exclusion is needed to support U.S. national security requirements (critical infrastructure or national defense systems), provide a detailed description of the specific uses of this single product:

Granting this proposed exclusion meets and advances a "specific national security consideration" by helping to secure necessary domestic production of OCTG to serve U.S. critical infrastructure in the energy sector, while increasing high-paying steel jobs in the United States for years to come.  In addition, granting this proposed exclusion also advances a specific national security consideration in that the OCTG market is currently suffering a major shortage that has been

## Source Countries

Identify the source countries for the single product for which the Exclusion is requested, the annual quantity to be supplied in kilograms, and the name of the current manufacturer(s) of the product. If this product is not obtained directly from the manufacturer, identify the current supplier(s) and the country of the supplier(s). The Exclusion Request, if granted, will pertain solely to the identified supplier(s) listed in this form and the country of origin. NOTE: Products encompassing more than one 10 - digit HTSUS code must submit a separate Exclusion Request for each pertinent code.

| | Country of Origin | Country of Export | Exclusion Quantity | Current Manufacturer | Current Supplier (if not obtained directly from manufacturer) |
|---|---|---|---|---|---|
| 1 | Turkey | Turkey | 12000000 | Borusan Mannesı | Borusan Mannesmann Boru S |

## Product Availability Information

Does the Requester possess knowledge of any domestic U.S. parties that currently manufacture the described product in the United States?

Yes

Comments

There are producers of finished OCTG that must first produce unfinished or green tube. However, such products are not normally sold in commercial markets as OCTG producers are not willing to sell unfinished OCTG to their competitors.

Does the Requester possess knowledge of any parties that currently manufacture the described product in a country exempted from this tariff? If yes, identify the country or countries below.

Yes

Comments

There are international companies that produce finished OCTG and therefore must produce green tube as part of the manufacturing process but this is not a product normally sold commercially. To the limited extent it is supplied to the

Is the Requester aware of any manufacturers capable of producing a substitute for the product in the United States? If "Yes" provide supporting information (name and address) in the space below?

No

Comments

There is no substitute for this product. This exclusion is for a welded OCTG product. BMP does not produce seamless OCTG.

Has the Exclusion Requester attempted to qualify any manufacturer in the United States as a supplier of the product that is the subject of this Exclusion Request in the past two years? If "Yes" provide supporting information in the space below.

No

Please provide names of the manufacturers.

**Manufacturers**

Comments

Has the Exclusion Requester attempted to purchase the described product that is the subject of this Exclusion Request, or a substitute, from a U.S. manufacturer in the past two years? If "Yes" identify the manufacturers, addresses, and your points of contact at the U.S. manufacturing organizations in the comments below.

> Yes

Comments

> BMP reached out to all of its domestic competitors.  Four of these competitors chose not to respond to BMP's inquiry.  Some of those competitors produce seamless pipe while BMP produces only welded pipe.  For those that did respond,



Has the Exclusion Requester had supply contracts, or does it have current contracts, with producers that manufacture in the United States the product identified in the Exclusion Request? If "Yes" identify the U.S. manufacturers, addresses, and your points of contact at the U.S. manufacturing organizations in the comments below.

> No

Comments

> BMP's domestic competitors will not supply it with unfinished upgradeable OCTG tubing and casing.  Furthermore, BMP as well as its domestic competitors are facing unprecedented demand for OCTG that has only been further exacerbated



Has the Exclusion Requester determined that there is no U.S. manufacturer that produces a near-equivalent product that would meet qualification requirements? If "Yes" identify in the space below the testing standards/procedures employed to make that determination (e.g., magnetic core loss, etc.)

> Yes

Comments

> BMP determined that there is no commercial supply of unfinished OCTG by contacting all of its domestic competitors.  None of these companies have provided all of the information requested by BMP and thus BMP is unable to qualify them



In the last two years, has the Requester purchased a substitute product manufactured in the United States in place of the product described in the Exclusion Request? If "Yes" provide supporting information in the comments below.

> No

Comments

> There is no substitute for this product.   This exclusion is for a welded OCTG product.  BMP does not produce seamless OCTG.

Provide a detailed explanation as to how U.S. Customs and Border Protection (CBP) will be able to reasonably distinguish the product subject to the Exclusion Request at time of entry, without adding undue burden to their current entry system and procedures.

> BMP's exclusion request will not add any undue burden on CBP's current entry system and procedures.  CBP can reasonably distinguish the steel product subject to this Exclusion Request by using the HTS code and sizes identified herein.

## Certification

Instruction: This Exclusion Request must be signed by an organization official specifically authorized to certify the document as being accurate and complete. The undersigned certifies that the information herein supplied in response to this questionnaire is complete and correct to the best of his/her knowledge.

Effective for all exclusion requests submitted on or after December 14, 2020, the undersigned certifies in the 232 Exclusions Portal that the information herein supplied in response to this questionnaire is complete and correct to the best of his/her knowledge. By signing the certification below, I attest that:

    A. My organization intends to manufacture, process, or otherwise transform the imported product for which I have filed an exclusion request or I have a purchase order or orders for such products;

    B. My organization does not intend to use the exclusion for which I have filed an exclusion request, if granted, solely to hedge or arbitrage the price;

    C. My organization expects to consume, sell, or otherwise use the total volume of product across all my active exclusions and pending exclusion requests in the course of my organization's business activities within the next calendar year;

    D. If my organization is submitting an exclusion request for a product for which we previously received an exclusion, I certify that my organization either imported the full amount of our approved exclusion(s) last year or intended to import the full amount but could not due to one of the following reasons:

        1. loss of contract(s);

        2. unanticipated business downturns; or

        3. other factors that were beyond my organizations' control that directly resulted in less need for steel or aluminum articles; and

    E. I certify that the exclusion amount requested this year is in line with what my organization expects to import based on our current business outlook. If requested by the Department of Commerce, my organization shall provide documentation that justifies its assertions in this certification regarding its past imports of steel or aluminum articles and its projections for the current year, as it relates to past and current calendar year exclusion requests.

**It is a criminal offense to willfully make a false statement or representation to any department or agency of the United States Government as to any matter within its jurisdiction.** [18 U.S.C. 1001 (1984 & SUPP. 1197)]

**Company Name**

Borusan Mannesmann Pipe U.S. Inc.

**Name of Authorizing Official**

Joel Johnson

**Title of Authorizing Official**

Chief Executive Officer

**Phone Number**

832-399-6001

**Email of Authorizing Official**

jjohnson@borusan.com

If the Point of Contact is different from the Authorizing Official provide point-of-contact information below.

**Point-of-Contact Name**

Julie C. Mendoza

**Title**

Partner

**E-mail Address**

jmendoza@mmmlaw.com

Phone Number

202-216-4817

Do you have additional information to provide that is proprietary or otherwise business confidential that is relevant and necessary to this submission?
*Note: If the answer is 'Yes', do not attach business confidential information at this time.*

Yes                                                                                    ⌄

Small Business?

No

## Attachment

View attachment file

## Published Objection Filings

| Company | Product | Posted Date | Details |
|---|---|---|---|
| Zekelman Industries | Steel | 9/3/2022 | Details |
| United States Steel Corporation | Steel | 9/3/2022 | Details |
| Maverick Tube Corporation | Steel | 9/3/2022 | Details |

## BIS Decision Memo

View attachment file



ITA Public Recommendation Memo

View attachment file

Back

For questions about the exclusion process, please email or call:
Aluminum232@bis.doc.gov or 202-482-4757 for aluminum-related inquiries, and Steel232@bis.doc.gov or 202-482-5642 for steel-related inquiries.



**U.S. Department of Commerce**
1401 Constitution Ave NW
Washington, DC 20230

Accessibility     •     Privacy policy

Slip Op. 23-152

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SENECA FOODS CORP., | |
| Plaintiff, | |
| v. | Before: Gary S. Katzmann, Judge |
| UNITED STATES, | Court No. 22-00243 |
| Defendant. | |

## <u>OPINION AND ORDER</u>

[ All eight of Commerce's denials are remanded for further explanation or reconsideration. ]

Dated: <u>October 18, 2023</u>

<u>James M. Smith</u>, Covington & Burling LLP, of Washington, D.C., argued for Plaintiff Seneca Foods Corp. With him on the briefs were <u>Thomas Brugato</u>, <u>Kwan Woo Kim</u>, and <u>Brock M. Mason</u>.

<u>Kyle S. Beckrich</u>, Trial Attorney, U.S. Department of Justice, Washington, D.C., argued for Defendant United States. With him on the briefs were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.

Katzmann, Judge: This case arises from an agency's true-as-steel obligation to review the entire record and to sufficiently explain its determinations for judicial review and subsequent remedy. Claiming that domestic steel producers are unable to provide it with sufficient tin mill products consisting of steel in order to manufacture cans, Plaintiff Seneca Foods Corporation ("Seneca"), the nation's largest vegetable canner and the last domestic food company that still makes its own cans, challenges eight decisions by the U.S. Department of Commerce ("Commerce") denying each of Seneca's requests for exclusion from steel tariffs, known as "national security" tariffs, imposed on imports from foreign producers of steel under Section 232

of the Trade Expansion Act of 1962, 19 U.S.C. § 1862. See Compl. ¶¶ 7–8, 95–105, Aug. 19,

2022, ECF No. 6; Pl.'s Mot. for J. on Agency R. at 1, Feb. 28, 2023, ECF No. 31 ("Pl.'s Br.").[1]

In its motion for judgment on the agency record, Seneca requests that the court (1) enter judgment

that all eight of Commerce's denials were arbitrary and capricious or otherwise unlawful in

violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, (2) declare that Plaintiff

was entitled to the requested exclusions, or (3) in the alternative, remand the matter for

reconsideration. Commerce opposes Seneca's motion as to six of the exclusion requests—the

October 2021 and January 2022 Requests—and asks the court to remand the two March 2022

Requests for further consideration. Each denial relies on a separate administrative record and is

reviewed independently.

        First, the court concludes that Commerce's denials of the October 2021 and January 2022

Requests were arbitrary and capricious for their failure to consider and address record evidence

---

[1] Of the eight requests filed by Seneca, five requests, filed in October 2021, were denied in April 2022. See Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257423 (Apr. 9, 2022), P.R. 1; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257428 (Apr. 9, 2022), P.R. 50; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257709 (Apr. 9, 2022), P.R. 149; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257712 (Apr. 9, 2022), P.R. 198 (together, the "October 2021 Requests").

One request, filed in January 2022, was denied in April 2022. Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 275504 (Apr. 30, 2022), P.R. 247 (the "January 2022 Request").

The final two requests, filed in March 2022, were denied in July 2022. See Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 283368 (July 9, 2022), P.R. 293; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 283369 (July 9, 2022), P.R. 342 (together, the "March 2022 Requests").

that ran counter to Commerce's stated reasoning. But because the record does not compel a grant of the exclusion requests, the denials are remanded to Commerce. Second, the denials of the March 2022 Requests are remanded, as sought by Commerce, without reaching the question of error specific to those requests. All eight denials are therefore remanded to Commerce for reconsideration consistent with this opinion.

## BACKGROUND

### I.      *Legal Background*

Section 232 enables the President to impose tariffs on certain imported goods when the Secretary of Commerce determines that the products in question are brought into the country in "such quantities or under such circumstances as to threaten or impair the national security." 19 U.S.C. § 1862(c)(1)(A). Presidential Proclamation 9705, issued in March 2018, invoked Section 232 to impose a 25 percent tariff on imports of specific steel articles from all countries except Canada and Mexico. See Adjusting Imports of Steel into the United States, Pres. Proc. No. 9705, 83 Fed. Reg. 11625 (Mar. 8, 2018).

The exclusion of a particular steel article from the steel tariffs was possible on one of two bases. To justify relief, Commerce was required to determine either (1) that the article was not "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality" or (2) that "specific national security considerations" justified the exclusion of the article. Id. at 11627. "Such relief shall be provided for a steel article only after a request for exclusion is made by a directly affected party located in the United States." Id. Commerce accordingly issued rules detailing the procedure for its review of exclusion requests. See Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations

<u>Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the
United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and
Aluminum</u>, 15 C.F.R. pt. 705, supp. 1 (Dep't Com. Dec. 14, 2020).

The process begins with the filing of an exclusion request by a "directly affected
individual[] or organization[] located in the United States." <u>Id.</u> pt. 705, supp. 1(c)(1). The request
must clearly identify and establish one of the two bases for exclusion: either (1) that the article "is
not produced in the United States in a sufficient, reasonably available amount, and of a satisfactory
quality," or (2) that "specific national security considerations" justify the exclusion of the article.
<u>Id.</u> pt. 705, supp. 1(c)(5)(i). Commerce further defines the criteria for exclusion:

- An article "[n]ot produced in the United States in a sufficient and reasonably available
  amount" means that the article is not available "immediately" in the United States to meet
  the requester's specified business activities, with "immediately" defined as eight weeks or,
  if not possible, a date earlier than the time required for the requester to obtain the entire
  quantity of the product from the requester's foreign supplier. <u>Id.</u> pt. 705, supp. 1(c)(6)(i).

- An article "not produced in the United States in a satisfactory quality" means that no
  domestic "substitute product" for the article exists; a substitute product "means that the
  steel or aluminum being produced by an objector can meet 'immediately' . . . the quality
  (e.g., industry specs or internal company quality controls or standards), regulatory, or
  testing standards, in order for the U.S.-produced steel to be used in that business activity
  in the United States by that end user." <u>Id.</u> pt. 705, supp. 1(c)(6)(ii).

- "The exclusion review criterion 'or for specific national security considerations' is
  intended to allow the U.S. Department of Commerce, in consultation with other parts of
  the U.S. Government as warranted, to make determinations whether a particular exclusion
  request should be approved based on specific national security considerations." <u>Id.</u> pt. 705,
  supp. 1(c)(6)(iii).

Following the exclusion request, a domestic steel producer can file an objection that refutes "the
specific basis identified in, and the support provided for, the submitted exclusion request." <u>Id.</u> pt.
705, supp. 1(d)(4). In its objection, the domestic steel producer must "identify how it will be able
to produce and deliver the quantity of steel . . . needed" as part of its obligation to "clearly identify,

and provide support for, its opposition to the proposed exclusion." Id. pt. 705, supp. 1(d)(4). The "burden is on that supplier to demonstrate that the exclusion should be denied because of failure to meet the specified criteria." Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46026, 46029 (Dep't Com. Sept. 11, 2018). The requester and objector may file a rebuttal and surrebuttal, respectively. 15 C.F.R. pt. 705, supp. 1(f)–(g).

All filings in the process—from the exclusion request to the surrebuttal—are submitted via online forms made available through Commerce's "232 Exclusions Portal." Id. pt. 705, supp. 1(d)–(h). It is further "incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times." Id. pt. 705, supp. 1(d)(4). Such additional evidence may include confidential or proprietary business information ("CBI"). 15 C.F.R. pt. 705, supp. 1(b)(5)(iii). Moreover, each online form requires the filer to certify that the information submitted is "complete and correct to the best of [the filer's] knowledge." See P.R. 18, 29–30, 35, 48.[2]

Commerce's Bureau of Industry and Security ("BIS") then evaluates all filings to determine whether the steel article meets one of the two bases for exclusion. To determine whether the potentially excluded steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, BIS solicits a memorandum from the International

---

[2] P.R. refers to the Public Record, which contains the eight public administrative records relevant to this case. See Pub. Admin. R., December 2, 2022, ECF No. 25. Seneca has also made public certain information that it had treated as business proprietary given the "passage of time." Pl.'s Resps. to Letter at 4 n.1, July 7, 2023, ECF No. 45. Citations to this now-public information, which does not appear in the Public Record as filed, refer to the Confidential Record ("C.R."). See Confidential Admin. R., Dec. 2, 2022, ECF No. 24.

Trade Administration ("ITA") that makes factual findings and recommends granting or denying

the exclusion request in full or in part.  <u>See</u> P.R. 1.  BIS then issues a determination with an

explanation that is "responsive to any of the objection(s), rebuttal(s) and surrebuttal(s) for that

submitted exclusion request."  15 C.F.R. pt. 705, supp. 1(h)(2)(i).  In so doing, BIS's determination

may accept and adopt the ITA's recommended findings if the BIS finds that there are no overriding

national security concerns that compel a grant of the exclusion request.  <u>See</u> P.R. 1.

      If the objector thereafter refuses to fulfill the requester's orders of the steel article in a

sufficient and reasonably available amount or in a satisfactory quality, "the requester may submit

a new request with documentation evidencing this refusal."  <u>Section 232 Steel and Aluminum</u>

<u>Tariff Exclusions Process: Interim Final Rule</u>, 85 Fed. Reg. 81060, 81065 (Dep't Com. Dec. 14,

2020) ("<u>Interim Final Rule</u>").  That new exclusion request restarts the entire process described

above.  If the objector continues to contest the new exclusion request, Commerce allows "the

exclusion requester to document in the rebuttal the past activity with that objector."  <u>Id.</u>

      ***II.     Factual Background***

      As has been noted, Plaintiff Seneca is a U.S.-based company in the business of processing

and canning fruits and vegetables.  <u>See</u> P.R. 20.  As the nation's largest vegetable canner and the

last domestic food company that still makes its own cans, Seneca requires tin mill products

consisting of steel to manufacture the cans.  <u>See</u> P.R. 20.  Citing domestic supply constraints and

high demand, Seneca began in 2014 to import a portion of its required tin mill products from

abroad.  P.R. 21.  In 2021, Seneca repeatedly contacted domestic suppliers to inquire about their

availability of tin mill products but was only able to secure a limited volume that was below its

needs.  <u>See</u> P.R. 21–22.  In particular, Seneca stated that U.S. Steel, a domestic producer of steel,

was unwilling to give a quote for tin mill products due to its inability to supply any additional

material in 2021 and beyond.  P.R. 22.  Faced with such domestic supply shortages in recent years, Seneca continued to purchase steel from foreign suppliers to meet its needs.  P.R. 22.

Seeking to exempt its purchases from Section 232 tariffs, Seneca filed a total of eight exclusion requests with Commerce on the basis of insufficient U.S. availability of tin mill products. See P.R. 10, 59, 109, 158, 207, 256, 306, 351.  The five October 2021 Requests were denied on April 9, 2022; the January 2022 Request was denied on April 30, 2022; and the March 2022 Requests were denied on July 9, 2022.  Compl. ¶ 61; see also supra note 1.  The requests covered imports of tin-free steel ("TFS") from Japan and China, as well as prime electrolytic tinplate ("ETP") from China and Turkey.  See Pl.'s Br. at 5.  U.S. Steel Corporation ("USS"), a domestic producer of steel,  objected to each of the eight exclusion requests.  Compl. ¶ 11.  Seneca and USS also filed rebuttals, surrebuttals, and additional evidence for all eight exclusion requests.  Id. ¶¶ 63–94.

The chart below summarizes each request and accompanying denial, and the following sections describe the requests and subsequent agency decisions in detail.

| Seneca's Exclusion Requests | | | | |
|---|---|---|---|---|
| **Shorthand** | **Number** | **Date Filed** | **Date Denied** | **Status in This Litigation** |
| October 2021 & January 2022 Requests | 257423 | Oct. 20, 2021 | Apr. 9, 2022 | Contested |
| | 257428 | Oct. 20, 2021 | Apr. 9, 2022 | Contested |
| | 257708 | Oct. 21, 2021 | Apr. 9, 2022 | Contested |
| | 257709 | Oct. 21, 2021 | Apr. 9, 2022 | Contested |
| | 257712 | Oct. 21, 2021 | Apr. 9, 2022 | Contested |
| | 275504 | Jan. 23, 2022 | Apr. 30, 2022 | Contested |
| March 2022 Requests | 283368 | Mar. 15, 2022 | July 9, 2022 | Remand Requested by Commerce |
| | 283369 | Mar. 15, 2022 | July 9, 2022 | Remand Requested by Commerce |

## A. *October 2021 and January 2022 Requests*

In the October 2021 Requests, Seneca submitted a letter with the initial exclusion requests that described the domestic shortages of the goods that it had imported. The letter recounted Seneca's attempts to secure supplies from domestic producers, including USS, prior to placing orders with importers. See P.R. 20.[3] USS filed an objection, stating in its online form that USS could supply 100 percent of the requested quantity of tin mill products within a timeframe shorter than that of Seneca's foreign suppliers. P.R. 28. USS also stated that it had supplied Seneca with tin mill products within the two years prior to the filing. P.R. 29.

Seneca rebutted USS's statements by submitting a letter and two email exhibits. Seneca's letter first emphasized that Seneca had placed purchase orders with foreign suppliers on November 20, 2020, April 22, 2021, and May 3, 2021, only after it had confirmed that no domestic producers were able to supply its requested volumes during 2021. P.R. 37. Corroborating its efforts, Seneca attached an email, dated November 13, 2020, from its Vice President of Strategic Sourcing to other Seneca employees. P.R. 41. The email, labeled "USS Update" and documenting a phone call with USS, states: "They are not offering anything now at any price," and "They say if they have available production in any month, they will contact us and see if we have interest. They just don't want to commit to anything right now." P.R. 36, 41. Seneca's letter then stated that in the time period between USS's objection and Seneca's rebuttal filing, Seneca had engaged USS over email for volumes to be delivered in 2022; once again, USS had purportedly offered nothing. P.R. 37–

---

[3] The records and Commerce's denials of each of the October 2021 Requests are almost identical in relevant part. To avoid citations to five different records with each reference to the October 2021 Requests, the court cites the page in the record for the October 2021 Request that was filed first, numbered 257423.

38.  The second exhibit, an email chain between Seneca's Vice President of Strategic Sourcing

and a USS account manager from November 29–30, 2023, reads in relevant part:

> SENECA:     When we talked a couple months ago, you advised USS has no
> tinplate or TFS to offer us for 2022.  You did say that if your
> production efficiencies are good, some availability may free up later
> in the year.  I understood that was kind of a long shot.
>
> Has anything changed on the availability of ETP or TFS?
>
> USS:        Right now for Feb I don't have anything as of yet, if that changes
> I'll let you know.

C.R. 43; see also supra note 2 (explaining that Seneca made this email public).  Among other

arguments, Seneca also stressed that USS's statement that it had supplied materials to Seneca

within the preceding two years was plainly false.  P.R. 38.

In its surrebuttal, USS emphasized that "Section 232 exclusion requests are prospective,

not retrospective, based on current availability," and maintained that it could supply Seneca with

the requested tin mill products through spot sales rather than contract sales.[4]  P.R. 45–46.  USS

explained that while it had not been able to supply products throughout 2020 and much of 2021

due to the Covid-19 pandemic and other economic shocks, it could nonetheless deliver the product

immediately at the time of filing the objection.  P.R. 45–46.  USS also included a letter containing

CBI to substantiate its claim that Seneca's tin mill products were immediately available.  P.R. 48–

---

[4] Spot sales and contract sales are different "methods of contracting" between purchasers and
suppliers.  See, e.g., Uruguay Round Agreements Act, Statement of Administrative Action, H.R.
Doc. No. 103-316, at 887 (1994).  In the context of this case, a spot sale is a "[a] contract to buy
or sell a . . . commodity . . . for immediate payment and delivery on a specified date."  Spot
Contract, Black's Law Dictionary (11th ed. 2019).  By contrast, a contractual sale is a contract to
purchase and deliver the commodity on a repeated basis over a certain period of time, which may
be annual or shorter-term.  See, e.g., Tin- and Chromium-Coated Steel Sheet from Japan at 15,
Inv. No. 731-TA-860 (Third Review), USITC Pub. 4795 (June 2018).

49.  The letter detailed USS's facilities' combined capacity to produce tin mill products, which exceeded Seneca's demand, and the production and delivery lead times for Seneca's requested products, which was shorter than those of Seneca's foreign suppliers.  P.R. 48–49.  USS also clarified that it had last supplied Seneca with tin mill products in February 2019, which was more than two years before USS's objection was filed; its contradictory statements in the objection were made in error.  P.R. 48.

The filings in the January 2022 Request proceeded in a similar manner but with a few notable differences.  After domestic producers allegedly declined to offer any tin mill products in late 2021, Seneca turned to importers to secure needed materials and filed an exclusion request.  P.R. 269–70.  USS objected and stated that it could timely meet 100 percent of Seneca's demand.  P.R. 279.  USS once again indicated that it had supplied Seneca with tin mill products within the preceding two years.  P.R. 280.  In the rebuttal, Seneca submitted a letter similar to the letter it had submitted in the October 2021 Requests and included only the second email from November 2021.  P.R. 291.  USS in its surrebuttal reiterated its ability to immediately meet demand but did not mention the distinction between spot and contract sales in the online form, as it had done in the surrebuttals to the October 2021 Requests.  See P.R. 287–90.  Instead, in its attached letter supplementing the record with CBI, USS stated only once that its "relevant tin mill facilities currently have available capacity to supply spot shipments."  P.R. 291.  Also unlike in the October 2021 Requests, USS did not correct its misstatement on the record that it had supplied Seneca with tin mill products within the preceding two years.  See P.R. 291–92.

Commerce denied the October 2021 and January 2022 Requests in April 2022.  In all six instances, BIS adopted ITA's factual conclusions and recommendations to deny the exclusion

requests.  P.R. 1, 247.  The ITA memoranda found that USS's tin mill products would be identical

to the articles subject to the exclusion request, P.R. 4, 250, and could be timely delivered, P.R. 5,

251.  As for USS's ability to produce Seneca's requested quantity, Commerce concluded that

nothing in the "request, rebuttal, or surrebuttal, including attachments, provide[d] evidence to

contradict the objector's claims" across all six of the requests.  P.R. 4, 250.  The memoranda for

the October 2021 requests further elaborated:

> U.S. Steel can produce 100 percent of the requested volume.  As such, U.S. Steel
> meets the quantity criterion. . . . Based on the evidence submitted, nothing
> contradicts the information certified by U.S. Steel in its objection submission.
> Seneca states in its rebuttal, "Contrary to its claims, USS has been unwilling to
> commit to any contractual volume thus far, most recently in November 2021."  U.S.
> Steel states in its surrebuttal that it can provide the requested TFS as spot sales
> rather than contract volumes.  This does not impact U.S. Steel's ability to supply
> the requested quantity.

P.R. 4.  Commerce's denial of the January 2022 Request, however, differed slightly in why the

quantity criterion had not been met:

> U.S. Steel can produce 100 percent of the requested volume.  As such, U.S. Steel
> meets the quantity criterion.  ITA notes that Seneca states in its rebuttal, ". . . in
> November 2021 USS affirmatively declined to supply the very same volume that
> is at issue in this request."  Seneca also submitted confidential business information
> with its rebuttal.  Nothing in the information provided contradicts U.S. Steel's
> certified statements in its objection and in its surrebuttal that it can currently
> manufacture 100% of the requested quantity.

P.R. 250.

### B.  March 2022 Requests

Seneca filed two more exclusion requests for tin mill products in March 2022, to which

USS also filed objections.  P.R. 304, 349.[5]  A rebuttal and surrebuttal followed.  P.R. 316, 338.

---

[5] The records and Commerce's denials of each of the March 2022 Requests are almost identical in
relevant part.  To avoid citations to two different records with each reference to the March 2022

Seneca placed on the record the same email chain from November 2022, as well as later communications that remain confidential. C.R. 338, 340–41. Similar to the surrebuttal in the January 2022 Request, USS reiterated its capacity to deliver Seneca's volume and mentioned only once in its attached letter that volume was available in the form of spot sales. P.R. 337.

Commerce also denied these requests but did not provide a complete analysis as to any of the quantity, quality, and timeliness criteria. The ITA memoranda, adopted by BIS in its denials, stated without further elaboration that ITA was "unable to provide a complete analysis" as to the quantity criterion "due to an issue with the request[s]." P.R. 296. ITA's subject-matter expert also "determined there is insufficient technical information available" to evaluate the quality criterion. P.R. 296. As for the timeliness criterion, ITA concluded that the CBI in Seneca's rebuttal contained "conflicts with the delivery information in this exclusion request," and that ITA was therefore "unable to evaluate this exclusion request." P.R. 297.

### III. *Procedural History*

Seneca timely filed this action against Defendant the United States ("the Government") on August 19, 2022. See Compl. USS moved to intervene in the instant action under USCIT Rule 24, see Mot. to Intervene as Def.-Inter., Oct. 5, 2022, ECF No. 11, which the court denied, see Seneca Foods Corp. v. United States, 46 CIT __, 607 F. Supp. 3d 1295 (2022), ECF No. 26.

On February 28, 2023, Seneca filed a motion for judgment on the agency record under USCIT Rule 56.1. See Pl.'s Br. Defendant filed a response on April 11, 2022, see Def.'s Br. in Opp'n to Pl.'s Mot. for J. on the Agency R., Apr. 11, 2023, ECF No. 33 ("Def.'s Br."), to which

---

Requests, the court cites the page in the record for the March 2022 Request that was filed first, numbered 283368. See also supra note 3 (applying the same practice to the October 2021 Requests).

Plaintiff filed a reply on May 2, 2023, <u>see</u> Pl.'s Reply Br. in Supp. of Mot. for J. on Agency R., May 2, 2023, ECF No. 36 ("Pl.'s Reply").  The court issued questions in advance of oral argument, <u>see</u> Letter re: Qs. for Oral Arg., June 23, 2023, ECF No. 42, to which the parties filed responses, <u>see</u> Pl.'s Resps. to Letter; Def.'s Resp. to the Ct.'s Qs. for Oral Arg., July 7, 2023, ECF No. 44. The court invited parties to file submissions after oral argument on July 11, 2023, <u>see</u> Oral Arg., July 11, 2023, ECF No. 46, and both parties made such submissions, <u>see</u> Pl.'s Post-Arg. Subm., July 21, 2023, ECF No. 49; Def.'s Post-Arg. Subm., July 21, 2023, ECF No. 48.  With briefing in hand, the court turns to the merits.

## DISCUSSION

Jurisdiction lies under 28 U.S.C. § 1581(i)(2), which authorizes the Court of International Trade to hear civil actions arising out of federal laws providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  Where jurisdiction exists under § 1581(i), this court must apply "the standard of review set forth by the Administrative Procedure Act and will 'hold unlawful and set aside [agency] action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" <u>Canadian Lumber Trade All. v. United States</u>, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (quoting 5 U.S.C. § 706(2)).

Agency action is arbitrary and capricious when the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or made a decision "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.</u>

Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also NLMK Pa., LLC v. United States, 47 CIT __, __,

617 F. Supp 3d 1316, 1320 (2023).  Because arbitrary and capricious review ensures "that agencies

have engaged in reasoned decisionmaking," Judulang v. Holder, 565 U.S. 42, 53 (2011), agencies

must "examine the relevant data and articulate a satisfactory explanation for [their] action," State

Farm, 463 U.S. at 43.  The record supporting an agency's decision must ultimately support a

"rational connection between the facts found and the choice made."  Burlington Truck Lines, Inc.

v. United States, 371 U.S. 156, 168 (1962).  Moreover, arbitrary and capricious review is a

"narrow" inquiry.  F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009).  In reviewing

agency action, the court may not reweigh evidence or substitute the agency's reasoned

decisionmaking with its own reasoning.  See Nippon Steel Corp. v. Int'l Trade Comm'n, 345 F.3d

1379, 1381–82 (Fed. Cir. 2003); In re Section 301 Cases, 47 CIT __, __, 628 F. Supp. 3d 1235,

1248 (2023) (explaining that agency action cannot be overturned on the basis of "mere

disagreement").

## I.      *Commerce's Denials of the October 2021 and January 2022 Requests Were Arbitrary and Capricious and Are Remanded*

Plaintiff argues that Commerce's denials of the October 2021 and January 2022 Requests

were arbitrary and capricious for three reasons: (1) the denials failed to address evidence on the

record that contradicted the agency's findings; (2) the record evidence compels the contrary

outcome of granting the exclusion requests; and (3) Commerce's procedure for considering

Section 232 exclusion requests is itself arbitrary and capricious, as applied and facially.  Pl.'s Br.

at 22–28; Pl.'s Reply at 2–11.  Plaintiffs also contend that an open remand would be futile and

instead request a remand with instructions or directed outcome as the appropriate remedy.  See

Pl.'s Br. at 37–39; Pl.'s Reply at 14–15.

The court concludes that Commerce's denials were arbitrary and capricious because they failed to acknowledge and address evidence on the record that contradicted the agency's findings. For slightly different reasons, the denials of the October 2021 Requests and of the February 2022 Requests were both too threadbare in addressing whether USS would be able to meet 100 percent of Seneca's demand, and Commerce's reasoning for crediting USS's statements was not otherwise reasonably discernible. Moreover, an open remand is the appropriate remedy and would not be futile. The denials of the October 2021 and January 2022 Requests are remanded to the agency for reconsideration of the denial or, if the agency opts to deny the exclusion requests again, for further explanation of its decision.[6]

### A.      Commerce's Denials of the October 2021 Requests Were Arbitrary and Capricious

Recall that Commerce adopted the following explanation from the ITA memoranda, which concluded that USS was able to produce the volume of tin mill products that Seneca required:

> U.S. Steel can produce 100 percent of the requested volume. As such, U.S. Steel meets the quantity criterion. . . . Based on the evidence submitted, nothing contradicts the information certified by U.S. Steel in its objection submission. Seneca states in its rebuttal, "Contrary to its claims, USS has been unwilling to commit to any contractual volume thus far, most recently in November 2021." U.S. Steel states in its surrebuttal that it can provide the requested TFS as spot sales rather than contract volumes. This does not impact U.S. Steel's ability to supply the requested quantity.

---

[6] In evaluating Plaintiffs' arguments, the court must review the record for each exclusion request independently. See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("The task of the reviewing court is to apply the appropriate . . . standard of review to the agency decision based on the record the agency presents to the reviewing court."); Yama Ribbons & Bows Co., Ltd. v. United States, 36 CIT 1250, 1256 (2012) ("[E]ach investigation has its own unique and separate administrative record."). Because the records and denials of the October 2021 Requests are almost identical in relevant part, the court considers all five denials at once. See infra section I.A; see also supra note 3. The denial of the January 2022 Request, however, merits separate discussion because it involved a slightly different record. See infra section I.B.

P.R. 4 (quoting P.R. 33). Quoting from Seneca's rebuttal, Commerce acknowledges that Seneca

failed to secure contractual volume from USS. <u>See</u> <u>id.</u> But Commerce then references the fact

that USS, per its filing, was "only offering additional spot—not contract—volumes of tin mill

products for 2022." P.R. 46; <u>see also</u> P.R. 47. Commerce appears to have concluded that Seneca's

requested quantity was available through spot sales but not contract sales.

That determination was in error. Commerce did not clearly address evidence on the record

that contradicted the conclusion that Seneca's requested quantity was available through spot sales.

Without explaining why, Commerce disregarded Seneca's representations and evidence that

emphasized that USS was unwilling to offer <u>any</u> volume—spot or contract—and instead construed

Seneca's representations as limited to contractual volume. Take, for instance, the following

excerpts from Seneca's initial exclusion request and rebuttal:

- "These orders were placed soon after all relevant domestic producers affirmatively declined to award Seneca <u>any</u> additional volume for 2021." P.R. 20 (emphasis added).

- "No domestic producer is able and willing to make <u>any</u> additional supply available to us within the relevant timeframe in 2021." P.R. 21 (emphasis added).

- "For its part, U.S. Steel was unwilling even to give us a quote for tin mill products due to its inability to supply <u>any</u> additional material in 2021 or beyond." P.R. 22 (emphasis added).

- "Further, the relevant purchase order was placed only after USS declined to commit <u>any</u> 2021 volume to Seneca." P.R. 33–34 (emphasis added).

- "The imports of tin mill products covered by these exclusion requests are limited to volumes ordered—on November 20, 2020; April 22, 2021; and May 3, 2021—only after USS declined to contract to supply <u>any</u> tin mill products to Seneca during 2021. As USS itself concedes, it had <u>no</u> <u>availability</u> to supply Seneca with <u>any</u> tin mill products at the time Seneca placed the purchase orders at issue." P.R. 36 (citation omitted) (first emphasis in original and following emphases added).

- "In fact, as noted above, USS still to this day has <u>no volume</u> available for Seneca; most recently in November 2021, USS advised that it has <u>no ETP or TFS</u> to offer Seneca in 2022, after stating and certifying the opposite to Commerce." P.R. 36 (emphasis added).

- "Finally, on Nov. 13, 2020, USS confirmed via phone that it would not offer Seneca <u>any</u> steel for 2021 delivery, regardless of price. USS stated that it did not want to make <u>any</u> commitment at the time at <u>any</u> price and noted that if it had available volume in future months, it would contact Seneca. To date, USS has not reached out to Seneca to commit <u>any</u> 2021 volume." P.R. 37 (first and last emphases in original and other emphases added).

These statements make clear that Seneca took issue with USS's failure to supply <u>any</u> volume, as opposed to contract volume in particular. So, too, with Seneca's email communications in the record.[7] <u>See</u> P.R. 41; C.R. 43. Neither email appears to distinguish between spot or contract sales. <u>See</u> P.R. 41, 43. What the emails do indicate, however, is that USS did not have capacity to offer

---

[7] Recall that Seneca introduced two emails into the agency records for the October 2021 Requests. <u>See</u> <u>supra</u> pp. 8–9.

The first email, dated November 13, 2020, was from Seneca's Vice President of Strategic Sourcing to other Seneca employees. P.R. 41. Headed by the subject line "USS Update," the body of the email documented a phone call with USS and reads: "They are not offering <u>anything</u> now at any price," and "They say if they have available production in any month, they will contact us and see if we have interest. They just don't want to commit to anything right now." P.R. 36, 41. The second email—a chain between Seneca's Vice President of Strategic Sourcing and a USS account manager from November 29–30, 2021—reads in relevant part:

SENECA:        When we talked a couple months ago, you advised USS has <u>no tinplate or TFS</u> to offer us for 2022. You did say that if your production efficiencies are good, some availability may free up later in the year. I understood that was kind of a long shot.

Has anything changed on the availability of ETP or TFS?

USS:            Right now for Feb I don't have <u>anything</u> as of yet, if that changes I'll let you know.

C.R. 43.

"anything" in November 2020 and—all the more probative—"anything" in November 2021, which was mere days after USS had filed its objections.  P.R. 41; C.R. 43.

Why any of Seneca's representations or communications with USS were limited in scope to contractual sales, as opposed to any sales, is not clear from the record or Commerce's denial. Omitting any discussion of Seneca's representations and evidence, Commerce went so far as to conclude that "<u>nothing</u> contradicts the information certified by U.S. Steel in its objection submission."  P.R. 4 (emphasis added).  That statement itself constitutes agency error.  Either (1) Commerce overlooked Seneca's arguments and countervailing evidence entirely, <u>see</u> <u>Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.</u>, 786 F.3d 960, 970 (Fed. Cir. 2015) (holding that an agency cannot "disregard" evidence "without explanation"), or (2) Commerce, having acted for reasons that are not reasonably discernible, failed to explain why Seneca's evidence is construed as limited to contractual sales, <u>see</u> <u>Packard Press, Inc. v. Hewlett-Packard Co.</u>, 227 F.3d 1352, 1357 (Fed. Cir. 2000) (requiring an agency to "explain[ ] its decisions with sufficient precision, including the underlying factfindings and . . . rationale"); <u>JSW Steel (USA) Inc. v. United States</u>, 44 CIT __, __, 466 F. Supp. 3d 1320, 1330 (2020) (remanding where the court was unable to discern what additional evidence "was weighed, or why the evidence compelled denial").  For example, if there is an industry understanding that a reference to "for 2022" or "for Feb" in the second email would suggest a contractual sale, <u>see</u> C.R. 43, then Commerce would need to articulate that basis for interpreting the emails.  Alternatively, if the text of the emails cannot support an interpretation that is limited to contract sales, then Commerce will need to reweigh and address Seneca's evidence in its final determination.

The Government's counterarguments are unavailing. The Government first points out that Commerce's denial does note that, per Seneca's own rebuttal, USS failed to supply Seneca with contract volumes since 2018. See P.R. 4 (Commerce acknowledges that "Seneca states in its rebuttal, 'Contrary to its claims, USS has been unwilling to commit to any contractual volume thus far, most recently in November 2021.'"). But that begs the question; it fails to clarify why all of the evidence concerning any volume is either disregarded or construed as limited to contractual volume. See also NMLK, 617 F. Supp. 3d at 1323 (rejecting conclusory analysis because it failed to "address[] any of the issues raised in [the] Requests, Rebuttals, or Sur-Rebuttals"). Second, the Government argues that it is generally "entitled to rely on" certified factual statements in determining whether a party will comply with certain requirements. Allied Tech., 649 F.3d at 1330. But while USS indeed made a certified factual statement to the agency that USS could fulfill all of Seneca's demand via spot sales, see P.R. 46–47, 48–49, Commerce's obligation to review all "relevant data and articulate a satisfactory explanation for its action" is unflagging. State Farm, 463 U.S. at 43. Agencies relying on certified statements must still consider countervailing evidence that "create[s] doubt" about the veracity of a party's statements. Allied Tech. at 1331 (quoting In re Spectrum Sys., Inc., B–401130, 2009 WL 1325352, at *2 (G.A.O. May 13, 2009)).

Commerce's failure to consider and address Seneca's representations and email evidence resulted in arbitrary and capricious decisionmaking, and the denials of the October 2021 Requests are remanded for further explanation or reconsideration. Commerce must articulate on remand— and potentially reconsider—why it credits USS's statements about spot sale capacity in light of Seneca's representations and email evidence.

### B.     *Commerce's Denial of the January 2022 Request Was Arbitrary and Capricious*

Commerce's denial of the January 2022 Request was even more opaque than its denials of

the October 2021 Requests.  Recall that the ITA memoranda for this request determined:

> U.S. Steel can produce 100 percent of the requested volume.  As such, U.S. Steel meets the quantity criterion.  ITA notes that Seneca states in its rebuttal, ". . . in November 2021 USS affirmatively declined to supply the very same volume that is at issue in this request."  Seneca also submitted confidential business information with its rebuttal.  Nothing in the information provided contradicts U.S. Steel's certified statements in its objection and in its surrebuttal that it can currently manufacture 100% of the requested quantity.

P.R. 250.  Notably, Commerce did not invoke the distinction between spot and contract sales, <u>see</u>

P.R. 250, and USS mentioned its ability to provide Seneca's volume via spot sales only once

between its objection and surrebuttal, <u>see</u> P.R. 297.  Specifically, USS stated in its attached letter

containing CBI that its "relevant tin mill facilities currently have available capacity to supply spot

shipments."  P.R. 291.

Commerce's denial of the January 2022 Request is impermissibly conclusory.  As in the

October 2021 Requests, Seneca's representations and email communications appear to address the

availability of <u>any</u> supply from USS, regardless of sale type.  <u>See</u> P.R. 266–68, 279–80, 282–84,

292; <u>see also, e.g.</u>, P.R. 280 ("In fact, USS has declined to quote, offer, or deliver a single ton of

steel to Seneca for more than two years.").  But Commerce once again concluded that "[n]othing

in the information provided contradicts U.S. Steel's certified statements in its objection and in its

surrebuttal that it can currently manufacture 100% of the requested quantity."  P.R. 250 (emphasis

added).  Once again, either (1) Commerce overlooked Seneca's arguments and countervailing

evidence entirely, <u>see</u> <u>Princeton Vanguard</u>, 786 F.3d at 970, or (2) Commerce, having acted for

reasons that are not reasonably discernible, failed to explain why Seneca's evidence did not

contradict USS's statements about prospective capacity, see Packard Press, 227 F.3d at 1357; JSW Steel, 466 F. Supp. 3d at 1330. And to be clear, simply mentioning the difference between spot and contract volume would not be enough. If Commerce again determines that USS can meet Seneca's demand via spot sales and Seneca's evidence is cabined only to the unavailability of contractual volume, then Commerce will need to justify that read of the record on remand.

Commerce's treatment of the October 2021 and January 2022 Requests raises broader questions about the administration of steel tariff exclusions. As discussed above, Commerce may credit an objector's certified factual statement that it can meet 100 percent of requested volume, but it may not do so if it results in arbitrary and capricious decisionmaking. See Allied Tech., 649 F.3d at 1330. According to Seneca, if Commerce's position is that Seneca's evidence of past and contemporaneous failure to secure volume constitutes "nothing" that "contradicts" USS's statements about future capacity, P.R. 4, 250, then the administrative process "only perpetuates the precise result Commerce claims it wants to avoid: allowing domestic producers to object but then 'refus[e] to fill orders,'" Pl.'s Br. at 36 (quoting Interim Final Rule, 85 Fed. Reg. at 81065).[8] In other words, Seneca argues that a purely prospective approach to evaluating an objector's capacity would be arbitrary and capricious both as applied and facially. See Pl.'s Reply at 9–12; see also State Farm, 463 U.S. at 43 ("[A]n agency rule [is] arbitrary and capricious if the agency has . . . entirely failed to consider an important aspect of the problem . . . ."). But because the agency's position is unclear in the denials before the court, and where the court has already

---

[8] The Interim Final Rule had addressed the issue of an objector's refusal to supply volume, see supra p. 6, but that guidance appears to apply only to a renewed exclusion request following a denial, not a first-time exclusion request. See 85 Fed. Reg. at 81065 (responding to a commenter's concern that "rebuttals to [claims of availability] are difficult to make without more detailed information from objectors on how they could make products in sufficient quantity or quality").

determined that Commerce erred in denying Seneca's exclusion requests, Seneca's as-applied and facial challenges raise questions that are best left to another day.[9]  Commerce's reasoning on remand will likely provide a fuller context in which to assess such challenges, if pursued.

Because Commerce's failure to consider and address Seneca's representations and email evidence resulted in arbitrary and capricious decisionmaking,[10] the denial of the January 2022 Request is also remanded for further explanation or reconsideration.  Commerce must articulate on remand—and potentially reconsider—why Seneca's evidence did not contradict USS's statements about prospective capacity.

---

[9] Commerce does argue that its regulations do not require it to examine past interactions between objectors and requesters where the requester simply made an offer that went unaccepted, as opposed to executing an order that was later unfulfilled.  See Def.'s Br. at 19.  But that reasoning was never articulated in any of denials of the October 2021 and February 2022 Requests, so it cannot be the basis for sustaining Commerce's actions here.  See SKF USA Inc. v. United States, 254 F.3d 1022, 1028 (Fed. Cir. 2001) (citing SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)).

[10] Seneca also stresses that USS incorrectly represented to Commerce that it had supplied Seneca with tin mill products within the two years prior to its objections.  See Pl.'s Br. at 27; see also P.R. 29, 280.  USS stated in the surrebuttal to the October 2021 Requests that its representation was an error, see P.R. 49, but it never corrected the record in the January 2022 Request.

Any error resulting from USS's misstatement is harmless on the record now before the court. Commerce did not rely on USS's representation in either set of requests.  In the October 2021 Requests, USS corrected itself, and Seneca fails to identify where in the administrative record Commerce relied on USS's initial misstatement.  As for the January 2022 Request, the denial expressly states that Commerce relied on USS's "certified statements . . . that it can currently manufacture 100% of the requested quantity."  P.R. 250.  USS's statement about its history with Seneca, even if later contested in the record by Seneca, see P.R. 288, did not form a basis for Commerce's determination.  Commerce's purported error in not taking note of that contested fact is, on the record now before the court, harmless.  See 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); see also Intercargo Ins. Co. v. United States, 83 F.3d 391, 394 (Fed. Cir. 1996) ("It is well settled that principles of harmless error apply to the review of agency proceedings.").

### *C.  Open Remand of Commerce's Denials of the October 2021 and February 2022 Requests Is the Appropriate Remedy*

Seneca also asks the court to direct Commerce to grant the October 2021 and February 2022 exclusion requests.  See Pl.'s Br. at 37–39; Pl.'s Reply at 14–15.  Because the record before the court now does not compel a grant of the exclusion requests, the court declines to do so.

In fashioning an administrative remedy, the Court of International Trade "may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision," 28 U.S.C. § 2643(b), which include an "order[] of remand," id. § 2643(c)(1).  The so-called ordinary remand rule provides that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  INS v. Ventura, 537 U.S. 12, 16 (2002) (quoting Fla. Power, 470 U.S. at 744).  This rule exists, in part, to allow an "agency [to] bring its expertise to bear upon the matter" in reviewing evidence in first instance and to avoid judicial intrusion into the administrative process.  Id. at 16–17.  Moreover, remand is usually appropriate "because 'the record may well be enlarged' and 'even if it is not, new findings and explanations by the [agency] can be expected.'"  Nexteel Co., Ltd. v. United States, 28 F.4th 1226, 1238 (quoting Nippon Steel Corp. v. Int'l Trade Comm'n, 345 F.3d 1379, 1380–82 (Fed. Cir. 2003)).  In the rare case when the record "supports only one outcome," however, the court may find that a remand is "futile" and instead direct the agency to act.  See id. (citing Nippon Steel, 345 F.3d at 1359).

An open remand is the appropriate remedy here.  While Seneca has shown that Commerce has failed to consider or address certain representations and evidence, Seneca has not shown that the agency record before the court compels a grant of the exclusion requests.  See supra sections I.A–.B; see also NLMK, 617 F. Supp. 3d at 1327–28 (concluding that the plaintiffs had shown that

Commerce had erred but not that "Commerce could reach only one possible conclusion from the record"). Moreover, the exclusion requests at issue may greatly benefit from a reopening of the record, which Commerce may exercise its discretion to do. Nexteel, 28 F.4th at 1238. Commerce's denials of the October 2021 and January 2022 Requests are therefore remanded for further explanation or reconsideration consistent with this opinion.

## II.  *Commerce's Denials of the March 2022 Requests Are Remanded*

Without confessing error, the Government asks the court to remand the denials of the March 2022 Requests so that it may reconsider the merits of the requests. See Def.'s Br. at 22. Seneca had initially argued that Commerce erred in two ways. Pl.'s Br. at 28. First, despite having access to similar evidence as for the October 2021 and January 2022 Requests, Commerce determined that it was unable to render a decision due to uncertain issues with the request. Id. at 29–30. Second, Seneca maintained that the decisions included important factual errors regarding Seneca's submissions. Id. at 30. Following the Government's request to remand, Seneca did not oppose and instead asked the court to remand the denials of the March 2022 Requests alongside the other denials. Pl.'s Reply at 12.

Commerce's request to remand is granted. An agency's request to remand, subject to the reviewing court's discretion, is appropriate where "the agency's concern is substantial and legitimate." SKF USA, 254 F.3d at 1029. Commerce's concern here is substantial because it has a compelling interest in deciding the merits of the March 2022 Requests in the first instance. See Ventura, 537 U.S. at 16–17; Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States, 29 CIT 1516, 1523, 412 F. Supp. 2d 1330, 1336 (2005). Moreover, Commerce's concern is legitimate; no party alleges bad faith, frivolous conduct, or an effort to evade judicial review. See SKF USA, 254 F.3d at 1029. "[T]he need for finality" here "does not outweigh the

justification for voluntary remand," and the scope of the request is otherwise "appropriate." <u>Shakeproof</u>, 29 CIT at 1523–26, 412 F. Supp. 2d at 1336–39.

The denials of the March 2022 Requests are therefore remanded for reconsideration.  In so doing, the court notes that there is significant factual and evidentiary overlap between the March 2022 requests on the one hand, and the October 2021 and January 2022 Requests on the other.

## CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that Commerce's denials of the October 2021 and January 2022 Requests, numbered 257423, 257428, 257708, 257709, 257712, and 275504, are remanded for further explanation and reconsideration consistent with this opinion; and it is further

**ORDERED** that Commerce's denials of the March 2022 Requests, numbered 283368 and 283369, are remanded for reconsideration; and it is further

**ORDERED** that Commerce will file its remand redeterminations with the court within ninety days of this date; that Seneca will have thirty days to file comments on the remand redetermination thereafter; that Commerce will have thirty days to file its replies to the comments on the remand redetermination thereafter; that the parties shall file the Joint Appendix within fourteen days thereafter; and that Commerce shall file the administrative record within fourteen days of the date of filing its remand determination.

**SO ORDERED.**

/s/      *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: <u>October 18, 2023</u>
New York, New York



**UNITED STATES DEPARTMENT OF COMMERCE**
**Office of the General Counsel**
OFFICE OF CHIEF COUNSEL FOR INDUSTRY AND SECURITY
**Washington, D.C. 20230**

April 1, 2024

<u>**FILED ELECTRONICALLY VIA CM/ECF**</u>

Mario Toscano
Clerk of the Court
U.S. Court of International Trade
One Federal Plaza
New York, NY 10278-0001

Re: Reconsideration Pursuant to Court Remand Order in *Seneca Foods Corporation. v. United States*, Court No. 22-00243

Dear Mr. Toscano:

      Pursuant to the Court's order of October 18, 2023, please find attached the U.S. Department of Commerce's Reconsideration Pursuant to Court Remand in the above-captioned action.  The Department's remand redeterminations are public documents, however the recommendations upon which they are based contain redacted confidential information.
      Should you have any questions concerning the matter, please contact me at (202) 482-5591.

                       Respectfully submitted,

                       <u>/s/ Tristan C. de Vega</u>
                       Tristan C. de Vega
                       Attorney Advisor
                       Office of the Chief Counsel
                         for Industry and Security

Attachment

cc:

Kyle S. Beckrich
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
Email: kyle.beckrich@usdoj.gov

Mr. Mario Toscano
April 1, 2024
Page 2


cc:

Tara Kathleen Hogan
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
Email: tara.hogan@usdoj.gov


Elisa S. Solomon
U.S. Department of Justice
International Trade Field Office
Email: elisa.s.solomon@usdoj.gov


James McCall Smith
Covington & Burling LLP
Email: jmsmith@cov.com


Kwan Woo Kim
Covington & Burling LLP
Email: kkim@cov.com

FINAL RESULTS PURSUANT TO COURT REMAND
*Seneca Foods Corporation v. United States*,
CIT Court No. 22-00243

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 257423**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime Tin-Free Steel (TFS or ECCS) according to ASTM A623, Type L, DR8, CA, 7C Melted Finish, CDC-3 Chemical Treatment, Electrolytic Chromium-Coated Steel, 68# Basis Weight (0.18999mm thickness)
- HTSUS: 7210500020

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated April 9, 2022. Seneca Foods filed suit in the U.S. Court of International Trade challenging the denial on August 19, 2022. On October 18, 2023 the Court remanded and directed the Government to provide further explanation or reconsideration.

BIS and the International Trade Administration (ITA) have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), subject

matter expert opines, BIS's report to the President of January 11, 2018, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review of the record, BIS and ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and BIS/ITA joint analysis and recommendation on remand, adopts the analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #257423**

_____**X**_____        I approve denying this exclusion request.

_____        I do not approve denying this exclusion request.

_____        I would like to discuss.



*Matthew S. Borman*        <u>March 28, 2024</u>
Deputy Assistant Secretary of Export Administration        Date

FINAL RESULTS PURSUANT TO COURT REMAND
*Seneca Foods Corporation v. United States*,
CIT Court No. 22-00243

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 257428**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime Tin-Free Steel (TFS or ECCS) according to ASTM A623, Type L, DR8, CA, 7C Melted Finish, CDC-3 Chemical Treatment, Electrolytic Chromium-Coated Steel, 95# Basis Weight (0.26543mm thickness)
- HTSUS: 7210500020

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated April 9, 2022. Seneca Foods filed suit in the U.S. Court of International Trade challenging the denial on August 19, 2022. On October 18, 2023 the Court remanded and directed the Government to provide further explanation or reconsideration.

BIS and the International Trade Administration (ITA) have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), subject

matter expert opines, BIS's report to the President of January 11, 2018, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review of the record, BIS and ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and BIS/ITA joint analysis and recommendation on remand, adopts the analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #257428**

| | |
|---|---|
| **X** | I approve denying this exclusion request. |
| | I do not approve denying this exclusion request. |
| | I would like to discuss. |

*Matthew S. Borman*
_____
Deputy Assistant Secretary of Export Administration

**March 28, 2024**
_____
Date

FINAL RESULTS PURSUANT TO COURT REMAND
*Seneca Foods Corporation v. United States*,
CIT Court No. 22-00243

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 257708**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime electrolytic tinplate according to ASTM A623M, Type L, DR8.5, CA, 7C Melted Finish, CDC-3 Chemical Treatment, coating 1.1gm2/2.2gm2, 58# Base Weight (0.16205mm thickness)
- HTSUS: 7210120000

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated April 9, 2022. Seneca Foods filed suit in the U.S. Court of International Trade challenging the denial on August 19, 2022. On October 18, 2023 the Court remanded and directed the Government to provide further explanation or reconsideration.

BIS and the International Trade Administration (ITA) have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), subject

matter expert opines, BIS's report to the President of January 11, 2018, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review of the record, BIS and ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and BIS/ITA joint analysis and recommendation on remand, adopts the analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #257708**

_____**X**_____          I approve denying this exclusion request.

_____          I do not approve denying this exclusion request.

_____          I would like to discuss.

*Matthew S. Borman*                         <u>March 28, 2024</u>
Deputy Assistant Secretary of Export Administration                    Date

FINAL RESULTS PURSUANT TO COURT REMAND
*Seneca Foods Corporation v. United States*,
CIT Court No. 22-00243

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 257709**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime electrolytic tinplate according to ASTM A623M, Type L, DR8.5, CA, 7C Melted Finish, CDC-3 Chemical Treatment, coating 1.1gm2/2.2gm2, 58# Base Weight (0.16205mm thickness)
- HTSUS: 7210120000

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated April 9, 2022. Seneca Foods filed suit in the U.S. Court of International Trade challenging the denial on August 19, 2022. On October 18, 2023 the Court remanded and directed the Government to provide further explanation or reconsideration.

BIS and the International Trade Administration (ITA) have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), subject

matter expert opines, BIS's report to the President of January 11, 2018, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review of the record, BIS and ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and BIS/ITA joint analysis and recommendation on remand, adopts the analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #257709**

| | |
|---|---|
| _____X_____ | I approve denying this exclusion request. |
| _____ | I do not approve denying this exclusion request. |
| _____ | I would like to discuss. |

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

**March 28, 2024**
Date

FINAL RESULTS PURSUANT TO COURT REMAND
*Seneca Foods Corporation v. United States*,
CIT Court No. 22-00243

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 257712**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime electrolytic tinplate according to ASTM A623M, Type L, DR8.5, CA, 7C Melted Finish, CDC-3 Chemical Treatment, coating 1.1gm2/2.2gm2, 58# Base Weight (0.16205mm thickness)
- HTSUS: 7210120000

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated April 9, 2022. Seneca Foods filed suit in the U.S. Court of International Trade challenging the denial on August 19, 2022. On October 18, 2023 the Court remanded and directed the Government to provide further explanation or reconsideration.

BIS and the International Trade Administration (ITA) have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), subject

matter expert opines, BIS's report to the President of January 11, 2018, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review of the record, BIS and ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and BIS/ITA joint analysis and recommendation on remand, adopts the analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #257712**

| | |
|---|---|
| _____X_____ | I approve denying this exclusion request. |
| _____ | I do not approve denying this exclusion request. |
| _____ | I would like to discuss. |

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

**March 28, 2024**
Date

FINAL RESULTS PURSUANT TO COURT REMAND
*Seneca Foods Corporation v. United States*,
CIT Court No. 22-00243

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 275504**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime electrolytic tinplate according to ASTM A623M, Type L, DR8.5, CA, 7C Melted Finish, CDC-3 Chemical Treatment, coating 1.1gm2/2.2gm2, 58# Base Weight (0.16205mm nominal thickness)
- HTSUS: 7210120000

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated April 30, 2022. Seneca Foods filed suit in the U.S. Court of International Trade challenging the denial on August 19, 2022. On October 18, 2023 the Court remanded and directed the Government to provide further explanation or reconsideration.

BIS and the International Trade Administration (ITA) have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), subject

matter expert opines, BIS's report to the President of January 11, 2018, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review of the record, BIS and ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and BIS/ITA joint analysis and recommendation on remand, adopts the analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #275504**

| | |
|---|---|
| **X** | I approve denying this exclusion request. |
| | I do not approve denying this exclusion request. |
| | I would like to discuss. |

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

<u>March 28, 2024</u>
Date

FINAL RESULTS PURSUANT TO COURT REMAND
*Seneca Foods Corporation v. United States*,
CIT Court No. 22-00243

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 283368**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime tin-free steel (TFS) according to ASTM A623M, Type L, DR8, CA, 7C Melted Finish, CDC-3 Chemical Treatment, electrolyticly plated with Chromium and Chromium Oxide, 65# Base Weight (0.18161mm nominal thickness)
- HTSUS: 7210500020

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated July 9, 2022. Seneca Foods filed suit in the U.S. Court of International Trade challenging the denial on August 19, 2022. On October 18, 2023 the Court remanded and directed the Government to provide further explanation or reconsideration.

BIS and the International Trade Administration (ITA) have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), subject

matter expert opines, BIS's report to the President of January 11, 2018, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review of the record, BIS and ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and BIS/ITA joint analysis and recommendation on remand, adopts the analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #283368**

| | |
|---|---|
| **X** | I approve denying this exclusion request. |
| | I do not approve denying this exclusion request. |
| | I would like to discuss. |

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

<u>March 28, 2024</u>
Date

FINAL RESULTS PURSUANT TO COURT REMAND
*Seneca Foods Corporation v. United States*,
CIT Court No. 22-00243

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 283369**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime electrolytic tinplate according to ASTM A623M, Type L, DR8.5, CA, 7C Melted Finish, CDC-3 Chemical Treatment, coating 1.1gm2/2.2gm2, 58# Base Weight (0.16205mm nominal thickness).
- HTSUS: 7210120000

**Analysis:**

On remand from the U.S. Court of International Trade, the Bureau of Industry and Security ("BIS") is deciding anew the exclusion request(s), referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS originally denied the request in a final decision dated July 9, 2022. Seneca Foods filed suit in the U.S. Court of International Trade challenging the denial on August 19, 2022. On October 18, 2023 the Court remanded and directed the Government to provide further explanation or reconsideration.

BIS and the International Trade Administration (ITA) have reviewed this request anew and BIS is issuing this remand final decision in accordance with the requirements of Supplement 1 of 15 CFR Part 705 that were in effect at the time BIS made its initial decision, any relevant court remand instructions or procedures, and based on the following administrative record documents: the formal evidence and submissions provided by the parties during the original administrative proceeding (including the exclusion request and any objections, rebuttals, and surrebuttal filings, and any accompanying supplemental filings and confidential or proprietary business information), subject

matter expert opines, BIS's report to the President of January 11, 2018, and any interagency information as applicable to BIS's national security review.

In examining this request and evaluating whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, the Department of Commerce has fully considered all of the evidence and information submitted to the administrative record. Based upon their review of the record, BIS and ITA recommend denying this request for an exclusion.

BIS, having reviewed the record and BIS/ITA joint analysis and recommendation on remand, adopts the analysis and denial recommendation and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the recommendation of denial.

In reaching this remand determination, the Department did not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties. The BIS decisionmaker on remand certifies that this remand decision is based exclusively on his independent review and consideration of the remand administrative records referenced above.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be denied. This denial is without prejudice and the requester may file a new exclusion request for this product if, for example, new or different facts or circumstances exist which meet the criteria for approving an exclusion request.

**DECISION ON EXCLUSION REQUEST #283369**

_____X_____        I approve denying this exclusion request.

_____        I do not approve denying this exclusion request.

_____        I would like to discuss.


*Matthew S. Borman*        <u>**March 28, 2024**</u>

Deputy Assistant Secretary of Export Administration        Date

***Seneca Foods Corporation v. United States*,**
**Court No. 22-00243, Slip Op. 23-152 (CIT October**
**18, 2023)**

**Redetermination Recommendation Document Pursuant to Court Remand**

## I. BACKGROUND

Seneca Foods Corporation (Seneca) filed a total of eight exclusion requests seeking to exempt its purchases of tin mill products from Section 232 tariffs based on insufficient U.S. availability of tin mill products. Seneca filed five requests in October 2021, one in January 2022, and two in March 2022. The requests covered imports of tin-free steel (TFS) from Japan and China, as well as prime electrolytic tinplate from China and Turkey. United States Steel Corporation (U.S. Steel) was the sole objector for all eight requests. The Department of Commerce (Commerce) denied all eight of Seneca's exclusion requests. In October 2023, all eight requests were remanded to Commerce for reconsideration consistent with the *Remand Opinion and Order* from the Court of International Trade (Court). *See Remand Opinion and Order,* CIT No. 22-243, Slip Op 23-152 (Oct. 18, 2023) (*Remand Order*).

## II. ANALYSIS

As a preliminary matter, Seneca does not challenge U.S. Steel's assertion that it can produce identical products that are the subject of each of Seneca's exclusion requests. Thus, Commerce finds that U.S. Steel meets the quality criterion. Accordingly, the remaining analysis focuses upon whether U.S. Steel meets the quantity and timeliness criteria.

### A. October 2021 Requests

For the five exclusion requests filed in October 2021, Commerce issued denials in April 2022. For these five requests, in addition to the initial request filed by Seneca and initial objection filed by U.S. Steel, Seneca also filed a rebuttal and U.S. Steel filed a surrebuttal. Both parties also filed confidential business information (CBI) attached to their rebuttals and surrebuttals. Per the Court's instructions, Commerce has reexamined these requests and responds herein to the Court's *Remand Order*.

#### 1. Email Correspondence

The Court cites to two email correspondences placed on the record by Seneca in its rebuttal, and ordered that Commerce articulate why it credits U.S. Steel's statements about its capacity in light of Seneca's email evidence. *See Remand* Order at 19. Thus, Commerce has provided an explanation below as to its conclusions and how it weighed all the evidence on the record.

### a. The November 13, 2020 email

The first email correspondence is dated November 13, 2020, and the second email correspondence is dated November 29–30, 2021. In January 2024, as part of its reexamination, Commerce sent these five requests to the Subject Matter Expert (SME) to determine whether the emails were referencing the same product as in the request. For the email correspondence dated November 13, 2020, the SME indicated that the email did not identify any product or provide any details about a product. Thus, the SME concluded that this email does not refer to the same product as the requested product in any way because there is no product identified in the email. The email uses the phrases "anything" and "available production" without indicating which product or products the emails concerns. It is Commerce's practice to discount the evidentiary value of emails or other sales correspondence when there is a lack of evidence to ascertain whether the correspondence refers to the same product as the requested product. Here, nowhere does the email make any reference to the product that is being discussed. Therefore, we did not ultimately rely upon these generalized statements in the November 13, 2020, email in forming our final analysis. However, because the Court ordered Commerce to articulate why it credits U.S. Steel's statements about capacity in light of Seneca's email evidence, we will provide the Court with additional analysis of this email.

In each of the memorandums Commerce issued for these five exclusion requests, Commerce noted in the General Notes section its general policy concerning consideration of dated correspondence: "Per Department of Commerce policy, Commerce will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request." The November 13, 2020, email is dated almost a year before the October 2021 exclusion requests were filed. Commerce does not find this correspondence outside this timeframe to be informative due to the ever-changing nature of steel and aluminum production schedules and industry. Additionally, as mentioned above, the SME determined that no specific product was referenced in the email and thus, it would be purely speculative for Commerce to conclude the email was referring to or relevant to the same product as the requested product almost a year later. Therefore, even assuming these generalized discussions concerned one of the products that is the subject of a specific request, which is speculative, Commerce finds it inappropriate to rely on the November 13, 2020, email for purposes of analyzing if U.S. Steel can manufacture the requested product in the requested quantity during the relevant timeframe because it is dated almost a year before the requests were filed.

Notwithstanding the above, the email also included the statement "They just don't want to commit to anything right now." This further highlights the temporal nature of the business because Commerce interprets the phrase "right now" to mean November 2020. Therefore, Commerce has assigned virtually no weight to this email (1) sent almost a year before the requests were filed; (2) which references a period of time long before the request was filed; and (3) which the SME stated does not even refer to the same product as the requested product.

### b. The November 29–30, 2021 emails

The second email placed on the record by Seneca and referenced by the Court is dated November 29–30, 2021. For the second email dated November 29–30, 2021, the SME concluded that this email does refer to the same product as the requested product because it references TFS, which the SME indicated means tin free steel. The SME also indicated that, while the specific details of product are missing, the requested product falls under the higher-level blanket category of TFS, and for the purposes of the email dated November 29–30, 2021, the email is referencing and referring to the same product as the requested product.

In this email correspondence, U.S. Steel states that ███████████████████████
████████████████████████████ As this email was sent in November 2021, Commerce
interprets the reference to ██████ to mean February 2022. Since the five exclusion requests
were filed in October 2021, this email is within 90 days of the date of the requests. Commerce's practice is to consider documents that are dated within 90 days of the exclusion request as relevant to the analysis because Commerce has determined that those documents are recent enough to be impactful to the analysis and not outdated. Moreover, as stated above, the SME determined that the November 29–30, 2021 email does reference the requested product. Therefore, Commerce has considered this email in its analysis and, in light of the Court's *Remand Order*, has provided an explanation of the weight that Commerce afforded to this email.

### i. October Exclusion Requests 257423 and 257428

To properly analyze the potential effect of the November 29–30, 2021 email, Commerce examined the import delivery times reported by Seneca in its October 2021 requests. The import delivery time is the amount of time Seneca says that it needs to obtain the product from its foreign supplier. For a requestor to obtain an exclusion, it must be able to satisfy the regulatory criterion "that the article is not produced in the United States in [a] sufficient and reasonably available amount." 15 C.F.R. § 705 Supp.1 (c)(6) ("The reviews will be made on a case-by-case basis to determine whether the requester has shown that the article is not produced in the United States in sufficient and reasonably available amount."). "Reasonably available amount" in this case means a determination that the domestic producer, here U.S. Steel, would be unable to produce and deliver the product to Seneca faster than Seneca's import delivery time. *Id. at (c)(6)(i).*

These exclusion requests were posted to the 232 Portal on October 21, 2021. To calculate the requestor's "import delivery time," Commerce adds together the requestor's responses to questions *2d* (the number of days required for the importer to take delivery at the foreign port), and *2f* (the additional number of days required to ship the product to the requestor's loading dock). For the October requests 257423 and 257428, Seneca's request indicated a total of 170 days for the import delivery time, which, based on the date of its request, could require delivery as early as approximately April 9, 2022, at the earliest. Thus, for Seneca to obtain these requested exclusions, its request must satisfy the regulatory criterion that the product was not reasonably available to be produced and delivered domestically to Seneca, in this case by U.S. Steel, by April 9, 2022.

3

On its face, and as noted by Seneca and the court, the administrative record contains potentially conflicting evidence concerning U.S. Steel's representations about whether it could timely produce and deliver the requested product. As an example, in U.S. Steel's objection, U.S. Steel states that it "currently produces the requested TFS at its Midwest facility in Portage, Indiana, and has the available capacity to supply additional volumes within the necessary time frame (i.e., 120 days)."

In Seneca's rebuttal, Seneca responds, "contrary to its claims, USS has been unwilling to commit to any contractual volume thus far, most recently in November 2021" and references as support the November 29–30 emails that Seneca included as confidential exhibits to its rebuttal. In these November 29–30, 2021 emails, as noted, U.S. Steel stated that it did not have ███████ ███████.

U.S. Steel, in its response, to Seneca's assertions, in its sur-rebuttal, "confirmed" that it can supply "the requested quantity of TFS within the 120-day manufacturing and delivery day lead time reported for the Requestor's Japanese supplier," and included a confidential submission showing that, as of ████████████████ U.S. Steel could manufacture and deliver the product as quickly as "██ days." In addition, U.S. Steel clarified that its ability to timely offer the requested product to Seneca was in "spot sales-not contract" sales. Accordingly, in these proceedings U.S. Steel has represented that it could deliver the product to Seneca, perhaps as early as mid-February 2022, through spot sales.

As noted by Seneca and the court, the issue raised by this record is whether the Seneca has established unavailability for these exclusion requests on account of the November 2021 emails produced by Seneca, in which U.S. Steel told Seneca that it did that it did not have ████████ ████████████████████. If, as Seneca's email suggests, U.S. Steel were literally unable to produce ████████████████████████ then U.S. Steel, given its required lead time of at least ██ days, would not be able to timely produce and deliver the requested product faster than Seneca says it importer could, which here would be as early as April 9, 2022.

As set forth above, based on the import delivery timeline of 170 days, for U.S. Steel to be able to timely produce the requested product, it would need to be able to produce and deliver the product as early as April 9, 2021. In Commerce's view, Seneca's November email from U.S. Steel does not establish unavailability from U.S. Steel given U.S. Steel's certified representations in these proceedings that it could timely provide the full quantity of the requested product through spot sales. Although the November email in question does not explicitly say that the discussion of unavailability was limited to "contract" sales only, based on the totality of the evidence in the record, Commerce interprets the statement ████████████████████████████████ ████████████████████ as an acknowledgement by U.S. Steel of the unavailability of "contract' sales" only, while leaving open the possibility for future sales, including possibly spot sales.

Looking at the main subject of the email itself, it concerns a long running discussion and attempt to secure future volume of the requested product, including at least several months into the future and the next year, which we interpret to be consistent with a discussion to secure contract sales. At the same time, the discussion acknowledges, and leaves open, the possibility that conditions

4

could change in the future, which we interpret to be consistent with potential sales in the future through either contract sales or spot sales.

The other record evidence in this proceeding supports the same conclusion.  In these proceedings, U.S. Steel has repeatedly indicated that it would be able to timely supply the requested product through spot sales, not contract sales.  For example, in addition to its representations in its objection, U.S. Steel in its sur-rebuttal explained how, following the production constraints in 2020 and 2021 due to the COVID-19 pandemic, "U.S. Steel is currently offering tin mill product spot sales--not contract sales--for 2022."  U. S. Steel further represented that it "can now deliver the relevant product 'immediately' (i.e., within the 120-day lead time reported for Seneca's Japanese supplier)," and urged Commerce to evaluate this request based on such "current availability" only.

Our interpretation is that the email exchange is evidence only of the unavailability of "contract sales" in 2021 and early 2022 is not inconsistent with Seneca's position in this proceeding.  In Seneca's rebuttal response to U.S. Steel's objection, Seneca repeatedly referenced the November email as evidence that "USS has been unwilling to commit to any *contractual* volume thus far." (italics added).  In these submissions, Seneca opted to emphasize only the lack of an offered contract to support its case that no volume was available.  As noted by U.S. Steel, Seneca did not explicitly discuss or reference or rebut U.S. Steel's representation in its objection that it could provide the requested volume through "spot sales--not contract sales--for 2022."  Instead, Seneca acknowledged U.S. Steel's claim that it could provide Seneca with the requested volume as "good news if – for a change – it proves to be true."

In evaluating Seneca's exclusion requests, Commerce is limited to reviewing the certified representations and evidence contained in this administrative record for these particular requests. In doing so, Commerce considers all of the representations and evidence submitted by all of the parties and reaches a reasoned decision based on that evidence that is consistent with the regulations.  Here, U.S. Steel does not dispute that the email is evidence that, as of November 2021, contract sales of the requested product were unavailable through at least February 2022. At the same time, nothing in the email foreclosed U.S. Steel from providing spot sales to Seneca in 2022, and U.S. Steel in these proceedings has certified and represented that it could timely produce and deliver the full amount of the requested to product to Seneca through spot sales, not contract sales.  For its part, Seneca has not explicitly addressed or referenced U.S. Steel's representations that it could timely supply the requested product through spot sales, relying instead on the email to show only that no "contractual" volume was available in early 2022., which we have noted did not foreclose the availability of spot sales.  Based on a totality of the evidence, Commerce's determination is that for these requests Seneca has not satisfied the regulatory criterion for obtaining an exclusion because it has failed to establish that the requested product could not be timely produced domestically, in this case by U.S. Steel.

### ii. October Exclusion Requests 257708, 257709, and 257712

For the October requests 257708, 257709, and 257712, Seneca reported 360 days for the import delivery time.  The objections were posted to the 232 Portal on October 21, 2021.  Therefore, in

order for U.S. Steel to meet the timeliness criterion, U.S. Steel must have been able to deliver product to Seneca by mid-October 2022.

U.S. Steel stated in its objection that it "could supply additional volumes within the necessary time frame (i.e., 270 days)," and further specified in it is confidential submission that it could manufacture and deliver the product within ███████ days ██████████. Accordingly, U.S. Steel represented that it could deliver the product to Seneca by as early as ████████████ but no later than mid-July 2022. As noted above, Commerce adopts the SME's interpretation that the November 29–30, 2021 email was only indicative of U.S. Steel's ability to deliver the product in February 2022. Accordingly, the November 29–30, 2021 emails do not contradict U.S. Steel's certified public statement that it could deliver the product to Seneca by mid-July 2022.

However, the information U.S. Steel provided in its certified public statement is only a generalized representation of its ability to meet the timeliness criteria. The relevant or specific information that U.S. Steel provided in its confidential statement indicates that it could deliver the product by ████████████. However, as noted above, U.S. Steel's November 30, 2021, response to Seneca's email solicitation potentially undermines the reliability of U.S. Steel's confidentially asserted ability to deliver product by ████████████ if that email refers to both contract sales and spot sales.

Here, U.S. Steel has certified and represented in its objection that it can produce the full amount of the requested product within 270 days, or July 2022. However, based on the information contained in its CBI, it could deliver the product as early as ████████████. Either one of these timeframes is quicker than Seneca can receive its imports; therefore, absent a foundational reason for disregarding or doubting U.S. Steel's representations, U.S. Steel can timely produce the product and Seneca's request does not meet the regulatory criterion for unavailability.

Just as in Exclusion Requests 257423 and 257428, Seneca in these requests contends that its November 2021 email correspondence with U.S. Steel disproves U.S. Steel's claim that it could timely provide the requested product anytime between ████████████. Although we note, below, that there is one factual difference in the record between these requests and requests 257423 and 257428 discussed above, we otherwise reach the same conclusion about the November 2021 email – although the email establishes that U.S. Steel could not contractually agree to timely provide the requested product from late November 2021 through February 2022, the email discussion did not foreclose the possibility of U.S. Steel providing the requested product through spot sales.

As we noted, there is one factual distinction between the discussion above in requests 257423 and 257428 and these requests. The relevant factual distinction is that in these requests nowhere in its objection forms did U.S. Steel represent that it's volume of product would made through spot sales, as opposed to contract sales. As a result, Seneca had no notice or opportunity in these requests to rebut the contention. Nevertheless, we note that U.S. Steel stated in its sur-rebuttal that it was only offering "spot—not contract" volumes and that it had offered spot sales to Seneca, thereby providing Commerce with record evidence that U.S. Steel was planning to and able to fulfill any requests through spot sales, as necessary. We further note that, contained in

6

these records, Seneca in its rebuttal form and attached supplement clearly emphasized that its basis for claiming unavailability was due to absence of a contract with U.S. Steel. And in a similar fashion as in the requests above, Seneca carefully characterized the November 2021 email as evidence of U.S. Steel's "unwillingness" to "commit to any contractual volume, thus far." Aside from the factual distinction noted here, the records on this point in requests 257423 and 257428, discussed above, and these requests, are virtually identical in all meaningful respects and we apply the same reasoning as above to find that the November 2021 email did not render unreliable or negate U.S. Steel's representation that it could provide the requested product through spot sales. Therefore, we find that Seneca has not satisfied the unavailability criterion for these requests.

## B. January 2022 Exclusion Request 275504

For the January 2022 request, Commerce issued a denial in April 2022. For this request, in addition to the initial request filed by Seneca and initial objection filed by U.S. Steel, Seneca filed a rebuttal and U.S. Steel filed a surrebuttal. Both parties also filed CBI attachments to their rebuttal and surrebuttal. Per the Court's instructions, Commerce has reexamined this request and responds herein to the Court's *Remand Order*.

In this record, Seneca placed one email correspondence on the record, which is dated November 29–30, 2021. Commerce notes that this is the same email correspondence Seneca placed on the records of the October 2021 exclusions requests. In January 2024, as part of its reexamination, Commerce sent this request to the SME to determine whether the email was referencing the same product as in the request. The SME reviewed the email dated November 29–30, 2021, and the SME concluded that it does refer to the same product as the requested product because it references TFS, which the SME indicated means tin free steel. The SME indicated that while the specific details of product are missing, the requested product falls under the higher-level blanket category of TFS, and for the purposes of the conversation in this email it is referencing and referring to the same product as the requested product.

Because the SME determined this email is referencing the same product as the requested product, and the November 29–30, 2021 email was sent within 90 days of the filing of this request, Commerce has considered it in its analysis and determined the appropriate weight to afford it. In this email, U.S. Steel states ███████████████████████████████████ ████████████████████. As this email was sent in November 2021, Commerce interprets the reference to "Feb" to mean February 2022.

To properly analyze this email, Commerce examined the import delivery time reported by Seneca for this January 2022 request. The import delivery time is the time it would take for Seneca to obtain the product from another country. For U.S. Steel to meet the timeliness criterion and defeat the request, it must be able to deliver the product to Seneca in a fewer number of days than the import delivery time. Seneca posted its exclusion request on January 23, 2022, and indicated 360 days for the import delivery time for this product. Therefore, for U.S. Steel to meet the timeliness criterion the product would have to be available for delivery by mid-January 2023.

U.S. Steel stated in its objection that it "could supply additional volumes within the necessary time frame (i.e., 270 days)," and further specified in it is confidential submission that it could manufacture and deliver the product within ███████ days ████████████████████████████ ████████████████████. Accordingly, U.S. Steel represented that it could deliver the product to Seneca by as early as ██████████████ but no later than late-October 2022. As noted above, Commerce adopts the SME's interpretation that the November 29–30, 2021 emails was only indicative of U.S. Steel's ability to deliver the product in February 2022. Accordingly, the November 29–30, 2021 emails do not contradict U.S. Steel's certified public statement that it could deliver the product to Seneca nearly a year later, by late-October 2022, nor do the emails call into question U.S. Steel's confidentiality avowed delivery date of ████████████. As a result, regardless of whether the November 2021 email concerned the unavailability of contract sales, spot sales, or both, we do not deem the contents of the November 2021 email relevant to a determination in this exclusion request given the long, forward-looking timeframe for production and delivery. Nevertheless, if the email were somehow relevant to a determination of this exclusion request, for the same reasons discussed above we do not construe the email to foreclose U.S. Steel from fulfilling any orders through spot sales only, which is how U.S. Steel in its sur-rebuttal said that it could fill any such requests. Thus, Commerce finds that U.S. Steel has satisfied the timeliness criterion. Similarly, the November 29–30, 2021 emails do not refute U.S. Steel's asserted ability to supply the requested quantity. Thus, Commerce finds that U.S. Steel has satisfied the quantity criterion. Accordingly, Commerce finds that exclusion request 275504 should be denied.

## C. March 2022 Exclusion Requests 283368 and 283369

For the two March 2022 requests, Commerce issued denials in July 2022 citing issues with the request. For this request Seneca filed a rebuttal and U.S. Steel filed a surrebuttal. Both parties also filed CBI. Per the Court's instructions, Commerce reexamined these requests pursuant to a voluntary remand request granted by the Court. Seneca placed three documents on the record of these requests to support its allegations that U.S. Steel cannot meet the quantity and timeliness criteria.

### 1. The November 29–30, 2021 Emails

Seneca placed on the record an email dated November 29–30, 2021. Commerce notes that this email is dated more than 90 days prior to the date on which these two exclusion requests were filed, which was March 15, 2022. In each of the memorandums, Commerce noted in the General Notes section: "Per Department of Commerce (Department) policy, Commerce will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request." This email correspondence is outside of the 90 day timeframe and therefore, Commerce finds that it is inappropriate to consider this information for the purposes of the analysis of these two exclusion requests. However, in light of the Court's order to articulate why Commerce credits U.S. Steel's statements about its capacity in light of Seneca's email evidence, Commerce provides the following additional analysis.

8

Commerce sent these requests to the SME in January 2024, as part of its reexamination, to determine whether the documents submitted by Seneca were referencing the same product as in the request. The SME reviewed the email dated November 29–30, 2021, and the SME concluded that it does refer to the same product as the requested product because it references TFS which the SME stated means tin free steel. The SME indicated that while the specific details of product are missing, the requested product falls under the higher-level blanket category of TFS, and for the purposes of the conversation in this email it is referencing and referring to the same product as the requested product.

An email sent by U.S. Steel in November 2021, which as noted above, only speaks to its capacity to deliver the product in February 2022 has little bearing upon its ability to deliver the product more than a year later. Accordingly, Commerce affords no weight to this email in its analysis of whether Seneca has satisfied the unavailability criterion for this request and whether U.S. Steel meets the quantity and timeliness criteria.

## 2. Foreign Producer's Expected Delivery Date Document

Seneca's rebuttal materials also included a document that purportedly shows its foreign supplier's expected delivery dates for "the volume at issue." In January 2024, as part of its reexamination, Commerce asked a SME to determine whether the requested product was the same as the products listed in the foreign supplier's expected delivery date document. The SME stated that there is no clear reference to the requested product in this document and that in his opinion, neither the specific requested product nor an over-arching category that includes the requested product is present in this document.

Despite the SME's findings, Commerce finds that the foreign producer's expected delivery date document contains sufficient information to conclude that it refers to the requested product. First, the left most column contains the same exclusion numbers that are the subject of these requests, and the second column roughly corresponds to the day that Seneca's exclusion request was posted to the exclusion portal. Third, the seventh column lists "TATA INTERNATIONAL METALS LIMITED," which matches the vendor listed in Seneca's exclusion requests. Finally, the tenth and eleventh columns roughly correspond with the weights of the product Seneca listed in its exclusion requests. Accordingly, Commerce concludes that the foreign producer's expected delivery date document pertains to exclusion requests 283368 and 283369.

However, Commerce does not regard the information contained in the twelfth column, labeled "Expected Delivery," as dispositive of the foreign producer's delivery time. Rather, Commerce finds that the delivery time Seneca provided in its initial exclusion request, rather than the information it provided in its rebuttal, is the operative delivery period upon which to base its analysis. The Section 232 exclusion process is an iterative process that begins with the requestor providing public notice of its foreign producer's delivery time. In turn, domestic producers rely upon the requestor's initial exclusion request when deciding whether to file an objection. As a matter of policy and efficiency, and compliance with the exclusion forms and regulatory criteria, requestors must provide accurate information regarding delivery times at the onset of the exclusion request process. This is especially true in this case, as Seneca had this more precise delivery information as a byproduct of its avowed practice of ordering their product well in

advance of filing their exclusion requests. This does not mean that Commerce disregards the foreign producer's expected delivery document altogether. Instead, Commerce considers this document as corroborative evidence of the delivery times Seneca represented in its initial exclusion requests.

### 3. The February – April Emails

Finally, Seneca's rebuttal materials include emails between Seneca and U.S. Steel, dating from February 24, 2022, to April 13, 2022. In January 2024, as part of its reexamination, Commerce sent these requests to the SME to determine if the product discussed in this email chain is the same as the product in the request. The SME stated that references to TFS in the email refer to the same product as the requested product. The SME further stated that although the specific details of the product are not included, the requested product falls under the higher-level blanket category of TFS, and for the purposes of the conversation in Exhibit 3 it is referencing and referring to the same product as the requested product. Commerce notes that this email chain is also dated within 90 days of the request. Therefore, Commerce has considered this communication in its analysis of the March 2022 request.

The emails discuss potential business between Seneca and U.S. Steel. Seneca indicated its interest in purchasing products from U.S. Steel to which U.S. Steel indicated its willingness to engage in a May sale. Then, over the course of several months, the parties discuss product specifications, quantity, prices, and delivery logistics. The discussion ultimately culminated in U.S. Steel indicating its ability to deliver the product in July, which Commerce interprets to mean July 2022. Commerce notes that Seneca sent its initial solicitation email to U.S. Steel on February 24, 2022. This is approximately four months after it completed purchase orders with its foreign producer, as indicated by the foreign producer's expected delivery date document. As a result, Commerce does not consider this email chain as pertaining to the products at issue in exclusion request 283368 and 283369 because Seneca's initial solicitation email was sent several months after it had already ordered the product from its foreign producer.

As discussed above, Seneca filed an initial exclusion request on March 15, 2022, and stated that its foreign producer could deliver the product within 360 days. U.S. Steel stated in its objection that it "could supply additional volumes within the necessary time frame (i.e., 270 days)," and further specified in it is confidential submission that it could manufacture and deliver the product within ███ days. Accordingly, U.S. Steel represented that it could deliver the product to Seneca by as early as ███████████ but no later than mid-December 2022.

Commerce discounts the evidence Seneca supplied through its initial and rebuttal submissions because they do not pertain to the products specifically at issue in these exclusion requests—the February through April 2022 emails—, are too distant in time—the November 29–30, 2021 emails—, or merely corroborate an uncontested allegation—that the foreign producer could deliver the product within 360 days. The remaining evidence contained in the request and objection materials, along with their associate rebuttals and surrebuttals, does not undermine U.S. Steel's publicly avowed ability to deliver the entire quantity of the requested product within 270 days or its confidentially asserted ███ day delivery time. Therefore, Commerce concludes that Seneca has failed to satisfy the unavailability criterion and U.S. Steel meets both the

10

timeliness and quantity criteria. Accordingly, Commerce finds that exclusion requests 283368 and 283369 should be denied.

## D. Spot Sales versus Contract Sales

For Commerce to deny an exclusion request at least one objector must be able to deliver the product, (identical or substitute quality), the quantity requested, and it must be able to do so in less time than it would take the requestor to obtain it from abroad. Whether the objector does this via a contract or via spot sales is irrelevant to Commerce's analysis and decision. The sales negotiations, which are unrelated to the quality, quantity, and timeliness criteria, have no bearing on Commerce's decision. Whether the two companies agree to receive all the quantity in one or two shipments or whether they agree to a monthly contracted schedule is irrelevant to Commerce's analysis. While Commerce did mention spot sales and contract sales in its prior memorandum it did not use that information to form any basis for the decision except as to the arguments raised by the parties concerning the effect of the November 2021 emails. For example, in the memo for 257423 Commerce stated:

> Seneca states in its rebuttal, "Contrary to its claims, U.S.S has been unwilling to commit to any contractual volume thus far, most recently in November 2021." U.S. Steel states in its surrebuttal that it can provide the requested TFS as spot sales rather than contract volumes. This does not impact U.S. Steel's ability to supply the requested quantity.

In the above analysis, Commerce was acknowledging that U.S. Steel states it can produce the requested quantity of the product, and that regardless of whether it is done via contract sales or spot sales it does not impact the ability of U.S. Steel to supply the product. For example, in request 257423, U.S. Steel had until April 2022 to provide the full quantity to Seneca to meet the timeliness criterion. It is irrelevant to Commerce's analysis of what amounts, numbers of shipments, or under what terms of sales this occurs so long as the total quantity can be delivered in a fewer number of days than the reported import delivery time, which is what U.S. represented it could do. Aside from addressing the specific arguments in this case, Commerce does not otherwise consider spot sales versus contract sales in its analysis for whether the objector can meet the timeliness or quantity criteria. It is an economic factor and does not impact whether the total quantity can be met by a certain date. Accordingly, for these eight requests, Commerce affords no substantive weight to the fact that any potential sales may be made on a contractual basis or on a spot sale basis as it does not examine or consider relevant the type of sale for purposes of analyzing an exclusion request.

## E. Preceding Months and Years

The Court discusses the business relationship between Seneca and U.S. Steel and reiterates Seneca's argument that U.S. Steel has declined to quote, offer, or deliver a single ton of steel to Seneca for more than two years. The Court also states that Seneca argues that a purely prospective approach to evaluating an objector's capacity would be arbitrary and capricious both as applied and facially. The Court does not come to a decision on this point but does acknowledge that Commerce has argued that its regulations do not require it to examine past

11

interactions between objectors and requesters where the requester simply made an offer that went unaccepted, as opposed to executing an order that was later unfulfilled. The Court points out that Seneca also argued that U.S Steel incorrectly represented to Commerce that it had supplied Seneca with tin mill products within the two years prior to its objections and that U.S. Steel admitted this was in error for certain of the eight requests subject to this remand but did not correct it for others.

As the Court stated, the parties' arguments and claims about their history did not form the basis of Commerce's determination. Commerce would like to clarify here that it does not generally give considerable weight to the evidence of history or interactions of requestors and objectors in its analysis unless it is clearly related to a denial of a prior request for the same product, or clearly indicative of the parties' future dealings. In the ordinary course of business, companies can turn down an opportunity to enter into a purchase order agreement with another company for a variety of reasons, including often for economic or practical reasons. They might have supply chain issues at a certain time or be out of additional capacity or adverse pricing arrangements. These circumstances do not impact a company's ability to produce and supply a product domestically for any company or the same company in the future. Commerce therefore finds it irrelevant that U.S. Steel has not sold to Seneca for more than two years. This is particularly true given U.S. Steel's statements about production issues it had at the same time as the global pandemic. Regardless of any past interactions, Commerce views each exclusion request individually, and determines whether the objector meets the quality, quantity, and timeliness criteria. If in one exclusion request an objector is found not to meet one or all the criteria it has no effect on a similar case that is later filed. Accordingly, for these eight requests, Commerce is affording no weight to the claims of Seneca that U.S. Steel's actions for the prior two years preclude it from fulfilling the quantity of the product in these requests in a timely manner.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  25-1310

**Short Case Caption:**  Seneca Foods Corp. v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  13,835  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 02/21/2025

Signature:  /s/ James McCall Smith

Name:  James McCall Smith