No. 2025-1310

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————————

SENECA FOODS CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

———————————————

On Appeal from the Court of International Trade
in case no. 22-243, Judge Gary S. Katzmann.

———————————————

## DEFENDANT-APPELLEE'S BRIEF

———————————————

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

*Of Counsel:*

PATRICIA M. McCARTHY
  *Director*

RENE TRISTAN DE VEGA
B. KATHRYN DEBRASON
  *Attorneys*
  *Office of the Chief Counsel for Industry*
    *and Security*
  *U.S. Department of Commerce*

TARA K. HOGAN
KYLE S. BECKRICH
  *Attorneys, Commercial Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *P.O. Box 480, Ben Franklin Station*
  *Washington, DC 20044*
  *(202) 616-9322*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF JURISDICTION ............................................................................. 1

STATEMENT OF THE ISSUE .................................................................................... 1

STATEMENT OF THE CASE ...................................................................................... 2

I.     Statutory and Regulatory Background ........................................................... 2

II.    Factual Background ........................................................................................ 7

III.   Proceedings Before The Court of International Trade .................................. 9

SUMMARY OF ARGUMENT ................................................................................... 12

ARGUMENT ............................................................................................................... 14

I.     Standard of Review ...................................................................................... 14

II.    Commerce's Decisions Are Not Arbitrary or Capricious Because the
       Record Evidence Shows Domestic Availability ........................................... 14

       A.     October 2021 Requests .................................................................... 15

       B.     January 2022 Exclusion Request ..................................................... 20

       C.     March 2022 Exclusion Requests ...................................................... 20

III.   Commerce's Decisions Were Consistent with Prior Practice, Which
       Requires a Case-by-Case, Record-Intensive Inquiry For Each Exclusion
       Request ......................................................................................................... 23

IV.    Commerce's Regulations, Which Focus on Current Domestic
       Availability, Are Reasonable ........................................................................ 25

V.     Seneca's Perceived Lack of Remedy Is No Basis for This Court to
       Reverse Commerce's Reasoned Decisions ................................................... 28

CONCLUSION ........................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Tech. Grp., Inc. v. United States,*
  649 F.3d 1320 (Fed. Cir. 2011) ................................................................. 16

*Ancientree Cabinet Co., Ltd. v. United States,*
  565 F. Supp. 3d 1373 (Ct. Int'l Trade 2022) ............................................. 24

*Axiom Res. Mgmt, Inc. v. United States,*
  564 F.3d 1374 (Fed. Cir. 2009) ................................................................. 23

*Candle Corp. of Am. v. U.S. Int'l Trade Comm'n,*
  374 F.3d 1087 (Fed. Cir. 2004) ................................................................. 14

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
  401 U.S. 402 (1971) ................................................................................... 23

*Corephotonics, Ltd. v. Apple Inc.,*
  84 F.4th 990 (Fed. Cir. 2023) .................................................................... 19

*Dibble v. Fenimore,*
  545 F.3d 208 (2d Cir. 2008) ....................................................................... 18

*Dixon Ticonderoga Co. v. United States,*
  468 F.3d 1353 (Fed. Cir. 2006) ................................................................. 14

*FCC v. Prometheus Radio Project,*
  592 U.S. 414 (2021) ................................................................................... 17

*Fujian Yinfeng Imp. & Exp. Trading Co. v. United States,*
  607 F. Supp. 3d 1301 (Ct. Int'l Trade 2022) ............................................. 24

*In re Section 301 Cases,*
  570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) ............................................. 23

*Jundulang v. Holder,*
  565 U.S. 42 (2011) ............................................................................... 16, 23

*Level the Playing Field v. FEC,*
  961 F.3d 462 (D.C. Cir. 2020) ........................................................ 15, 19, 22

*QVD Food Co., Ltd. v. United States,*
  658 F.3d 1318 (Fed. Cir. 2011) ....................................................................... 22

*SMA Surfaces, Inc. v. United States,*
  617 F. Supp. 3d 1263 (2023) ........................................................................... 12

*Transpacific Steel LLC v United States,*
  4 F.4th 1306 (Fed. Cir. 2021) ......................................................................... 26

## Statutes

5 U.S.C. § 706................................................................................................... 14

19 U.S.C. § 1862 ................................................................................................. 2

28 U.S.C. § 1295 ................................................................................................. 1

28 U.S.C. § 1581 ............................................................................................... 14

## Regulations

15 C.F.R. Pt. 705.......................................................................................passim

## Other Authorities

*Adjusting Imports of Steel Into the United States, Proclamation 9705*, 83 Fed. Reg. 11,625
  (Mar. 8, 2018) ..........................................................................................passim

*Adjusting Imports of Steel Into the United States, Proclamation 10896*, 90 Fed. Reg. 9,817
  (Feb.10, 2025)................................................................................................ 3, 4

*Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dep't of
  Commerce Dec. 14, 2020) ................................................................................ 3

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*,
  83 Fed. Reg. 46,026 (Dep't of Commerce Sept. 11, 2018)........................................... 7

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The defendant-appellee is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

# INTRODUCTION

Seneca Foods Corporation (Seneca) submitted eight exclusion requests to the Department of Commerce, requesting that Commerce grant Seneca relief from Section 232 duties on steel that Seneca purchased from foreign suppliers. Relying on general business correspondence that was months (and in some cases over a year) old, Seneca argued that the steel it purchased was not available in the United States. However, the evidence in the record, as viewed by Commerce, does not support Seneca's assertion. A domestic manufacturer, U.S. Steel Corporation (U.S. Steel), provided evidence that it could timely supply the steel product at issue in Seneca's exclusion requests. Seneca now challenges the weight that Commerce gave to the evidence in the record.

# STATEMENT OF JURISDICTION

This Court possesses jurisdiction to review an appeal from a final decision of the United States Court of International Trade. 28 U.S.C. § 1295(a)(5).

# STATEMENT OF THE ISSUE

In the course of deciding Seneca's exclusion requests, Commerce was tasked with making factual findings regarding U.S. Steel's availability to deliver certain steel products on a timely basis. Commerce weighed the evidence of availability and explained why it concluded that U.S. Steel had current availability to supply the steel products. The issue in this case is whether Commerce's fact-finding was arbitrary and capricious or otherwise not in accordance with law.

# STATEMENT OF THE CASE

## I.    Statutory and Regulatory Background

Section 232 authorizes the President to adjust imports of an article and its derivatives if the President concurs with a finding by the Secretary of Commerce (the Secretary) that such imports threaten to impair the national security. *See generally* 19 U.S.C. § 1862.

The Secretary initiated an investigation to determine the effect of imports of steel and aluminum on the national security, which was conducted by the Bureau of Industry and Security (BIS), a Commerce sub-agency. *See generally* U.S. Dep't of Commerce, *The Effects of Imports of Steel on the National Security* (Jan. 11, 2018), *available at* https://2017-2021.commerce.gov/sites/default/files/the_effect_of_imports_of_steel _on_the_national_security_-_with_redactions_-_20180111.pdf. The Secretary issued a report and recommendation to the President, finding that steel imports are "weakening {the United States'} internal economy" and "threaten to impair the national security as defined in Section 232." *Id.* at 5.

After considering the Secretary's report, the President issued *Proclamation 9705,* in which he concurred with the Secretary's finding that steel articles are being imported in such quantities and under such circumstances as to threaten to impair the national security of the United States. The President announced measures on "adjusting imports of steel." *Adjusting Imports of Steel Into the United States*, *Proclamation 9705*, 83 Fed. Reg. 11,625 (Mar. 8, 2018) (*Proclamation 9705*). The President

established a 25 percent tariff on imports of certain steel articles, effective March 23, 2018.

Simultaneously, the President authorized the Secretary of Commerce to provide relief from the tariffs for products determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or based upon specific national security considerations. *Proclamation 9705*, Cl. (3). The President explained that "relief shall be provided for a steel article only after a request for exclusion is made by a directly affected party located in the United States." *Id.* The President instructed Commerce to issue procedures for the requests for exclusion within 10 days after *Proclamation 9705* was issued. *Id.* Cl. (4).

On March 19, 2018, Commerce promulgated an interim final rule, establishing the exclusion process envisioned in *Proclamation 9705*. *Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (Dep't of Commerce Mar. 19, 2018), codified at 15 C.F.R. Pt. 705, Supp. 1.[1]

---

[1] The version of the regulations that went into effect December 14, 2020, applied to these exclusion requests, which Seneca filed between October 2021 and March 2022. *See Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dep't of Commerce Dec. 14, 2020). Although not relevant to this appeal, we note that the President recently issued *Proclamation 10896*, which revoked Commerce's

*Continued on next page.*

Under the relevant version of the regulations, only directly affected individuals or organizations (*e.g.*, construction, manufacturing, or supplying steel product to users) located in the United States could submit an exclusion request. 15 C.F.R. Pt. 705, Supp. 1 § (c)(1). Commerce would approve exclusions on a product basis, and the approvals are generally limited to the individual or organization that submitted the request. *Id.* § (c)(2).

Requestors must complete and submit a fillable form available on Commerce's website, *id.* § (b), as well as specify the business activities in the United States with which they are engaged that qualify the individual or organization to be directly affected and thus eligible to submit a request, *id.* § (c)(5)(i). "The request should clearly identify, and provide support for, the basis upon which the exclusion is sought." *Id.*

The fillable form required requestors to supply specific factual information, including: (1) the product type and class for which the exclusion is requested, (2) the 10-digit Harmonized Tariff Schedule Code of the United States (HTSUS) for the single product covered by the request, (3) the quantity of product required (stated in kilograms) under a one-year exclusion, (4) estimates of the number of days required to take delivery of, manufacture, and ship the product covered by the request, (5) a full description of the physical properties and chemical composition of the product the

_____

authority to grant any exclusion requests. *Adjusting Imports of Steel Into the United States, Proclamation 10896*, 90 Fed. Reg. 9,817, 9,825 (Feb. 10, 2025).

requestor seeks to import, (6) any standards organizations that have set specifications for the product, (7) the application for the product, (8) why similar products manufactured in the United States are not suitable, and (9) domestic product availability information. *See, e.g.*, Appx0270-0281.

Commerce reviewed each request to determine whether an article described in the request met one of three criteria: (1) the article is not produced in the United States in a sufficient and reasonably available amount, (2) the article is not produced in the United States in a satisfactory quality, or (3) specific national security considerations. 15 C.F.R. Pt. 705, Supp. 1, § (c)(6).

Not produced in the United States in a sufficient and reasonably available amount "means that the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* § (c)(6)(i). "Immediately" "means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer 'within eight weeks', or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier." *Id.*

Not produced in the United States in a satisfactory quality "does not mean the steel or aluminum needs to be identical, but it does need to be equivalent as a substitute product." *Id.* § (c)(6)(ii). "Substitute product" "means that the steel or aluminum being produced by an objector can meet 'immediately' . . . the quality (e.g.,

industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S.-produced steel to be used in that business activity in the United States by that end user." *Id.*

Any individual or organization that domestically manufactures steel or aluminum articles could file objections to exclusion requests. *Id.* § (d)(1). An objection "should clearly identify, and provide support for, its opposition to the proposed exclusion." *Id.* § (d)(4). The fillable form instructed objectors to: (1) indicate whether the objector currently manufactures the product or is capable of immediately manufacturing the product, (2) explain the time period within which the objector can produce the product, if it does not currently manufacture the product, (3) state whether the objector manufactures, or can immediately manufacture, a substitute product, (4) discuss the suitability of the objector's product compared to that identified in the request, (5) provide a full technical description of the physical properties and chemical composition of the product the objector manufactures relative to specifications cited in the request, (6) state what percentage of the total product tonnage requirement covered by the request that the objector can manufacture on a timely basis, and (7) the number of days required to ship, manufacture, and deliver the product. *See, e.g.*, Appx0285-0293. Requestors could also submit rebuttals and objectors could submit surrebuttals. 15 C.F.R. Pt. 705, Supp. 1 §§ (f)-(g).

Commerce reviews an exclusion request based on the information included in

the exclusion request, any objections to an exclusion request, any rebuttals to the objections made by an individual or organization that submitted the exclusion request, and any surrebuttals.[2] *See id.* § (h)(2)(i). For exclusion requests that receive no objections, Commerce will post a decision granting the request if it identifies no national security concerns. *Id.* § (h)(2)(ii).

Approved exclusions were effective five business days after publication of Commerce's response granting an exclusion, and, on that date, "the requester will be able to rely upon the approved exclusion request in calculating the duties owed on the product imported in accordance with the terms listed in the approved exclusion request." *Id.* § (h)(2)(iii)(A). Commerce further directed that "{e}xclusions will generally be approved for one year." *Id.* § (h)(2)(iv).

## II.    Factual Background

Seneca, the largest vegetable canner and only vegetable can manufacturer in the United States, began sourcing tin mill from foreign sources in 2014. Appx0282-0283. Following the imposition of Section 232 duties on steel in 2018, Seneca began requesting exclusions from the 25 percent tariff to continue purchasing its tin mill

---

[2] Commerce utilizes BIS and the International Trade Administration (ITA) to evaluate requests. BIS is "the lead agency" in deciding whether to grant a request, and ITA "analyz{es} requests and objections to evaluate whether there is domestic production available to meet the requestor's product needs." *Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,027 (Dep't of Commerce Sept. 11, 2018). ITA, upon completion of its review, provides BIS with a recommendation as to whether an exclusion request should be granted.

abroad.  Eight such exclusion requests form the basis of the controversy at hand.

Seneca filed the eight requests at issue in this case in October 2021 (five), January 2022 (one), and March 2022 (two), seeking exemption from the 25 percent tariff for tin-free steel (TFS) imported from Japan and China and prime electrolytic tinplate (ETP) imported from China and Turkey.  Appx0287, Appx0333, Appx0389, Appx0443, Appx0498, Appx0553, Appx0605-06, Appx0657.  In support of its requests, Seneca provided three email chains, dated November 2020, November 2021, and February through April 2022.  *See, e.g.*, Appx0303-0306 (identical documents produced in support of multiple exclusion requests).  The November 2020 email is an internal email from Seneca, while the November 2021 and 2022 emails are correspondence between Seneca and U.S. Steel.  *See, e.g.*, Appx0303-0306.

U.S. Steel objected to all eight requests, Seneca rebutted, and U.S. Steel filed surrebuttals.  Appx0285-0312, Appx0341-0368, Appx0396-0423, Appx0451-0478, Appx0506-0533, Appx0561-0585, Appx0614-0636, Appx0665-0691.  U.S. Steel included confidential business information in its surrebuttals supporting its timeline for production and delivery of the steel items in Seneca's requests.  Appx0311-0312, Appx0367-0368, Appx0422-0423, Appx0477-0478, Appx0532-0533, Appx0584-0585, Appx0636, Appx0690-0691.  Ultimately, Commerce denied all eight of Seneca's exclusion requests after concluding that U.S. Steel had shown it would be able to produce and deliver the needed quantity of steel.  Appx0263-0269, Appx0318-0324, Appx0374-0380, Appx0429-0435, Appx0484-0490, Appx0539-0545, Appx0591-0597,

Appx0642-0648.

## III. Proceedings Before The Court of International Trade

On August 19, 2022, Seneca filed its complaint in the Court of International Trade, challenging Commerce's denials of the exclusion requests as arbitrary and capricious in violation of the Administrative Procedure Act (APA). *See* Appx0085. Seneca filed a motion for judgment on the administrative record, arguing that Commerce's denials were arbitrary and capricious because they failed to adequately explain Commerce's rationale for the denials and they ignored evidence that contradicted U.S. Steel's availability claims. Appx0085-0086.

The trial court remanded Commerce's decisions for all eight requests. Appx0074-0098. The court granted Commerce's request to voluntarily reconsider the March 2022 requests. The trial court also found that Commerce's denial explanations "failed to acknowledge and address evidence on the record that contradicted the agency's findings," were "too threadbare in addressing whether {U.S. Steel} would be able to meet 100 percent of Seneca's demand," and lacked rationale "for crediting {U.S. Steel's} statements." Appx0088.

On remand, Commerce again denied all eight of Seneca's exclusion requests, concluding that U.S. Steel had established, through its certifications and supporting evidence, that it could produce and deliver Seneca's requested steel before the time estimated by Seneca's foreign producer, and therefore that the steel was domestically available. Appx0101-0128.

Commerce expressly addressed the three emails Seneca submitted with its exclusion requests. Appx0117-0127. For the **October 2021** requests, Commerce found the November 2020 sales correspondence email to be too old (because it was sent more than 90 days before Seneca's requests) and too vaguely worded to be probative. Appx0117-0118. Next, Commerce found that the November 2021 email, referencing contract sales, did not contradict U.S. Steel's certifications of availability because U.S. Steel could have timely produced the requested steel through spot sales.[3] Appx0119-0123.

For the **January 2022** and **March 2022** requests, Commerce credited that the November 2021 emails may have established unavailability in February 2022, but did not show unavailability by U.S. Steel's proposed delivery date. Appx0124-0125. Commerce also found that the February through April 2022 emails were irrelevant because they were dated four months after Seneca place its purchase orders with its foreign supplier. Appx0126.

Commerce concluded by noting that (1) "{a}side from addressing the specific arguments in this case," Commerce does not usually consider spot sales versus contract sales in its analysis and (2) Commerce "does not generally give considerable

_____

[3] A spot sale refers to a one-time agreement to buy or sell steel for immediate payment and delivery of the product. *See Spot Contract*, Black's Law Dictionary (12th ed. 2024). As explained by the trial court, a contract sale, on the other hand, refers to an agreement to buy or sell steel on an annual basis, normally negotiated in the fourth quarter of each year for shipments in the following year. *See* Appx0082.

weight to the evidence of history or interactions of requestors and objectors in its analysis *unless* it is clearly related to a denial of a prior request for the same product, or clearly indicative of the parties' future dealings." Appx0127-0128 (emphasis added). Commerce, therefore, found "it irrelevant that {U.S. Steel} had not sold to Seneca for more than two years." Appx0128.

Seneca challenged Commerce's remand results before the trial court, arguing that Commerce's remand determinations were arbitrary and capricious because they failed to address the trial court's concerns in its remand opinion, ignored evidence of U.S. Steel's unavailability to provide steel, departed from Commerce's prior practice, and incorrectly focused on U.S. Steel's current manufacturing and delivery availability. *See* Appx0016-0030. The United States replied, arguing that Commerce had complied with the remand order, that Commerce had not departed from its prior practice, and that the prospective analysis under Commerce's regulations is reasonable. *See* Appx0016-0030.

Following additional briefing and oral argument, the trial court upheld Commerce's decisions on remand, finding that "Commerce's renewed denials rel{ied} on an improved, discernable path detailing the agency's consideration of the record evidence." Appx0013. After reviewing Commerce's analysis of each of Seneca's three emails, the trial court concluded that:

> Seneca's eight requests hinge collectively on three short email chains, each suffering from various deficiencies as to relevance. Commerce weighed what the parties submitted to it. Lacking additional evidence, Seneca

"simply ask{s} too much of the court to wade into fact finding on a sparse record."

Appx0019 (quoting *SMA Surfaces, Inc. v. United States*, 47 CIT __, __, 617 F. Supp. 3d 1263, 1279 (2023)).

Next, the trial court determined that Commerce's actions were not inconsistent with its regulations or prior practice. Appx0020. In reaching this conclusion, the trial court rejected several of Seneca's arguments relevant to this appeal. First, the court determined that Seneca's single cited instance of Commerce disregarding a domestic manufacturer's objection did not establish an agency practice that must be followed. Rather, the court found that Commerce's regulations instruct it to "exercise {its} discretion on a case-by-case and fact-specific basis" for each exclusion request submitted. Appx0020-0222. Second, the trial court concluded that just because Seneca wishes—but fails to support with regulations, agency practice, or other authority—that the timeliness calculation should start on the date of the purchase order does not invalidate Commerce's decision that the timeliness analysis begins on the date the exclusion request is filed. Appx0022. Accordingly, the trial court concluded that Commerce's denials of Seneca's requests were consistent with its own regulations and agency practice. Appx0027.

Seneca appeals the trial court's judgment.

## SUMMARY OF ARGUMENT

Seneca asks this Court to do what the trial court correctly declined to do:

reweigh evidence carefully considered by Commerce. As shown below, Commerce

considered all relevant evidence on the record and reasonably explained why that

evidence showed that U.S. Steel had the current availability to deliver the steel

products at issue in Seneca's exclusion requests. Specifically, U.S. Steel provided

certified statements and confidential business information indicating its availability,

and the only evidence Seneca offered to rebut U.S. Steel's evidence – three emails –

was stale and largely irrelevant.

Further, Commerce's decisions were entirely consistent with its prior practice

in deciding Section 232 exclusion requests. Commerce considers the record

associated with each request on a case-by-case basis to determine whether the facts

show that the product at issue in the exclusion request is domestically available.

Commerce's analysis also appropriately applied Section 232, the President's

proclamation, and the implementing regulations by considering *current* availability at

the time Seneca submitted its exclusion requests, rather than availability months prior

when Seneca placed foreign orders. Commerce's focus on current availability is

consistent with the purpose of the Section 232 import measures, which are intended

to increase and improve domestic capacity over time. Seneca made the business

decision to place orders with foreign suppliers months before submitting its exclusion

requests, thereby assuming the risk of having to pay the 25 percent tariff if its then-

unsubmitted exclusion requests were not subsequently granted.

Despite Seneca's assumption of risk, Commerce's role remained unchanged: to

ascertain whether – at the time of the requests – the domestic industry had availability

to deliver the product.  Regardless of Seneca's apparent desire to the contrary,

Commerce's role was not to facilitate Seneca's business relationships.

## ARGUMENT

### I.     Standard of Review

This Court "reviews decisions by the Court of International Trade pursuant to

28 U.S.C. § 1581(i)" under "the standard of review set forth in 5 U.S.C. § 706."  *Dixon*

*Ticonderoga Co. v. United States*, 468 F.3d 1353, 1355 (Fed. Cir. 2006).  Thus, this Court

will "hold unlawful and set aside agency action, findings, and conclusions found to be

– (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law."  5 U.S.C. § 706(2)(A); *see also Dixon Ticonderoga Co.*, 468 F.3d at 1355 (citing to

*Candle Corp. of Am. v. U.S. Int'l Trade Comm'n*, 374 F.3d 1087, 1091 (Fed. Cir. 2004)).

### II.    Commerce's Decisions Are Not Arbitrary or Capricious Because the Record Evidence Shows Domestic Availability

Commerce explained how it weighed each piece of evidence[4] submitted by

Seneca and U.S. Steel to conclude that U.S. Steel presently and prospectively had the

---

[4]  As a threshold issue, there is no dispute as to whether Commerce considered the emails.  Commerce expressly considered all of Seneca's submissions, including the three attached emails.  Appx0118-0128.  While Seneca alleges that "Commerce unlawfully disregarded every piece of record evidence demonstrative record unavailability from {U.S. Steel}," Seneca Br. at 50, Seneca elsewhere acknowledges that Commerce did in fact consider Seneca's evidence.  Seneca Br. at 26-28.  Seneca's dispute is therefore with the weight Commerce gave to this evidence.

availability and expectation to continue domestically manufacturing the steel products at issue. Indeed, as the trial court correctly noted, Seneca's arguments to the contrary amount to mere "disagree{ment} with" Commerce's "weighing of the evidence," which "is not enough for the courts to overturn {Commerce's} decisions as arbitrary, capricious, or contrary to law." *Level the Playing Field v. FEC*, 961 F.3d 462, 465 (D.C. Cir. 2020).

As Commerce explained, Seneca did not challenge that U.S. Steel could produce identical products to those that were the subject of each of Seneca's exclusion requests, and thus the only question is whether "U.S. Steel meets the quantity and timeliness criteria." Appx0117. As explained above, that evaluation required Commerce to determine whether U.S. Steel would be able to produce and deliver the product to Seneca faster than Seneca's import delivery time. Appx0119 (citing 15 C.F.R. Pt. 705, Supp.1 § (c)(6)(i)). Accordingly, Commerce first determined Seneca's import delivery time based on the information Seneca provided in its requests, and then considered whether U.S. Steel could produce and deliver the requested product before that delivery time.

### A.   October 2021 Requests

For two of Seneca's October 2021 requests (257423 and 257428), Seneca indicated that its import delivery time was 170 days. Appx0119. When measured from the date of the requests, Commerce considered the question of domestic availability based on whether the product could be produced and delivered by U.S.

Steel by April 9, 2022. Appx0119. U.S. Steel certified that it could provide the requested quantity months before April 2022. Appx0120. For the remaining three October 2021 requests (257708, 257709, and 257712), Seneca's requests indicated that its import delivery time was 360 days. Appx0121-0122. Domestic availability was thus based on whether the product could be produced and delivered by U.S. Steel by October 2022. Appx0121-0122. U.S. Steel certified that it could provide the requested quantity months before October 2022. Appx0122.

As the trial court correctly noted, Commerce was entitled to rely on U.S. Steel's certified statements as long as that reliance constitutes "reasoned decisionmaking." Appx0014 (quoting *Jundulang v. Holder*, 565 U.S. 42, 53 (2011)); s*ee also Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330 (Fed. Cir. 2011). Commerce explained why the evidence submitted by Seneca – specifically, two emails – did not undermine U.S. Steel's certified statements.

The first email that Seneca relied on for its October 2021 exclusion requests was dated November 13, 2020. The email was written *by Seneca*, and explained that, according to Seneca's understanding, U.S. Steel "{was} not offering anything now at any price." Appx0303. Commerce afforded no weight to the November 13, 2020 email for two reasons. First, the email did not indicate that the product at issue in the email was the same product for which Seneca requested any exclusion. Appx0118. Second, the email, dated nearly a year before Seneca filed its exclusion requests, was stale. Appx0118. Indeed, as Commerce explained and the trial court found to be

16

reasonable, Appx0028, Commerce "will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request." Appx0268.

Seneca argues that Commerce erred in assigning no weight to the email. Seneca contends that the email relates to a timeframe "well beyond November 2020" because the hearsay statement contained in the email indicates that U.S. Steel would follow up if it subsequently had available production. Seneca Br. at 51. According to Seneca, Commerce should thus treat the email as ongoing correspondence not subject to Commerce's 90-day policy.

Seneca's argument should be rejected. Commerce acted well within "a zone of reasonableness" in determining that Seneca's November 2020 internal email that spoke in terms of U.S. Steel's availability "right now" offered no probative value in determining U.S. Steel's ability to produce and deliver steel nearly a year later. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

Seneca also contends that Commerce's conclusion that the email does not describe the product at issue is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Seneca Br. at 52. Not so. Steel products are myriad and diverse, with requestors required to provide information such as thickness, diameter, strength, and chemical composition. For example, Seneca's exclusion request no. 257423 defined the requested steel product as "Prime Tin-Free Steel (TFS or ECCS) according to ASTM A623, Type L, DR8, CA,

7C Melted Finish, CDC-3 Chemical Treatment, Electrolytic Chromium-Coated Steel, 68# Basis Weight (0.18999mm thickness)." Appx0273. The November 2020 email makes no reference to *any* such specification or even any product. In fact, Seneca repeatedly highlights that the email used the word "anything," arguing that by using "anything," Seneca meant to include all types of steel. Seneca Br. at 52. However, by acknowledging the email's use of "anything" instead of a description of a specific steel product, Seneca cedes that the email lacked specificity, as Commerce appropriately concluded. Accordingly, Commerce appropriately afforded "virtually no weight" to the November 2020 email, Appx0118, and its decision should not be second guessed. *Cf. Dibble v. Fenimore*, 545 F.3d 208, 220 (2d Cir. 2008) (finding that an agency had "ample justification" for affording little weight to pieces of evidence that "were speculation, unsubstantiated generalizations, or hearsay").

The second email chain relied on by Seneca was dated November 29, 2021. This email, sent from U.S. Steel, stated: "Right now for Feb I don't have anything as of yet, if that changes I'll let you know." Appx0305. Because the email was sent within the 90 days prior to Seneca's exclusion requests, Commerce determined the email was not outdated. Appx0119. Commerce likewise determined that the email's context showed that it was referring to the same product as the requested product. Appx0119. However, Commerce concluded that the November 2021 email "does not establish unavailability from U.S. Steel given U.S. Steel's certified representations . . . that it could timely provide the full quantity of the requested

product through *spot* sales." Appx0120 (emphasis added). Following consideration of U.S. Steel's explanation of its availability through spot sales, *see, e.g.*, Appx0124, Commerce interpreted the email as referring to "contract sales only," and thus the email did not contradict U.S. Steel's certified statements. Appx0120.

Seneca argues that the email must be interpreted to mean that U.S. Steel "had nothing available to sell to Seneca, whether on a spot or contract basis." Seneca Br. at 53. However, Seneca does not engage with the evidence relied on by Commerce in reaching its conclusion. Specifically, Commerce explained: (1) U.S. Steel certified that it offered "spot sales—not contract sales—for 2022"; and (2) Seneca itself made several statements indicating that the parties were referring to contractual volumes. Appx0121. For example, Seneca specifically stated that the November 2021 email served as evidence that U.S. Steel "has been unwilling to commit to any *contractual* volume thus far." Appx0121; Appx0296. Seneca's arguments now, that the Court is compelled to conclude that the email referenced spot sales, are belied by the record.

Further, Seneca ignores this Court's standard of review. Even if Seneca offers a plausible interpretation of the evidence, which it does not, this Court must sustain Commerce's factual finding as long as it is rational and adequately supported, even though it might be possible to draw "two inconsistent conclusions from the evidence." *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1001 (Fed. Cir. 2023). Here, Seneca cannot show that Commerce's weighing of the evidence was arbitrary or capricious, and instead invites this Court to simply reweigh the evidence, which it

should not do.  *Level the Playing Field*, 961 F.3d at 465.

### B.    January 2022 Exclusion Request

Seneca's January 2022 request indicated that its import delivery time was 360 days.  Appx0123.  When measured from the date of the request, domestic availability was thus based on whether the product could be produced and delivered by U.S. Steel by mid-January 2023.  Appx0123.  U.S. Steel certified that it could provide the requested quantity at least three months prior to Seneca's delivery time.  Appx0124.

The only evidence Seneca identifies to refute U.S. Steel's certified statement is the November 2021 email discussed above.  As established above, Commerce reasonably concluded that the email did not concern U.S. Steel's ability to provide the requested product through spot sales.  Appx0124.  Further, the email, which speaks to U.S. Steel's availability to supply contract sales in February 2022, is simply not relevant to whether U.S. Steel could provide steel nearly a year later in January 2023.  Accordingly, Commerce reasonably evaluated the evidence and denied the exclusion request.

### C.    March 2022 Exclusion Requests

Seneca's March 2022 requests indicated that its import delivery time was 360 days.  Appx0126.  Although Seneca's rebuttal purported to provide different delivery times than what Seneca set forth in its own request, Commerce determined to reply upon the delivery time provided in the initial exclusion request as "the operative delivery period upon which to base its analysis."  Appx0125.  When measured from

the date of the requests, domestic availability was thus based on whether the product could be produced and delivered by U.S. Steel by mid-March 2023. *See* Appx0126. U.S. Steel certified that it could provide the requested quantity at least three months prior to Seneca's delivery time. Appx0126.

Seneca argues that two email chains disprove U.S. Steel's certification. First, Seneca again relies on the November 2021 email. However, as explained above, Commerce reasonably determined that the November 2021 related to U.S. Steel's availability for contract sales, and U.S. Steel's certified statements related to spot sales. Further, the November 2021 email occurred more than 90 days before the submission of the exclusion requests and thus was not evidence to be considered under Commerce's policy. Appx0124. Finally, Commerce noted that any statements regarding U.S. Steel's availability for February 2022 had "little bearing" on whether U.S. Steel could deliver steel over a year a later. Appx0125.

Second, Seneca relies on email correspondence that took place between February and April 2022. The emails discuss potential business between Seneca and U.S. Steel and culminate in U.S. Steel indicating an ability to deliver steel to Seneca in July 2022. Appx0683-0685. Commerce determined the emails did not pertain to the products at issue in Seneca's March 2022 exclusion requests because Seneca's initial solicitation email to U.S. Steel was sent several months after it had already ordered the product from its foreign producer. Appx0126.

Seneca argues that had Commerce considered an earlier delivery date than

March 2023 (specifically, June 2022), the emails would show that U.S. Steel did not have the availability to meet its need. Seneca Br. at 54. However, Commerce explained that Commerce relied on the delivery date that *Seneca* set forth in its exclusion requests for the purposes of determining product availability. Appx0125-0126. Seneca bears responsibility for the delivery dates set forth in its exclusion requests, and Commerce did not err by relying on those dates. *See QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (holding that interested parties bear the burden of creating an adequate record).

Moreover, Seneca's argument ignores Commerce's rationale. Given that Seneca had already placed its orders to purchase the steel products from foreign producers four months before engaging with U.S. Steel in February 2022, Commerce reasonably determined that those emails did not pertain to the products specifically at issue in the exclusion requests. Appx0126. As the trial court noted, Commerce was not required to accept Seneca's speculative conclusion that because Seneca experienced some difficulty with placing an order for delivery by July 2022, U.S. Steel did not have the availability to deliver the requested product by March 2023. Appx0018-0019. Once again, rather than showing error with respect to Commerce's analysis, Seneca improperly asks the Court to reweigh evidence that was considered and reasonably analyzed by Commerce. *Level the Playing Field*, 961 F.3d at 465.

**III.  Commerce's Decisions Were Consistent with Prior Practice, Which Requires a Case-by-Case, Record-Intensive Inquiry For Each Exclusion Request**

Seneca also challenges Commerce's decisions in this case as being inconsistent with its prior practice "of dismissing baseless objections."  Seneca Br. at 55. Specifically, Seneca relies on extra-record evidence, including exclusion requests by a different requestor, to support its proposition that "where an objector makes contradictory or ambiguous claims in its objection and surrebuttal filings, or where its claims are contradicted by other record evidence, Commerce has an established practice of rejecting the objection."  *Id.* at 55-56.  Seneca's argument is flawed.

As a preliminary matter, the other exclusion requests that Seneca references are not part of the record, and therefore was not considered by the decisionmaker, for any of these exclusion requests.  Commerce's decisions here were based on the original administrative record, subject matter expert opinions, and the 2018 report to the President.  *See, e.g.*, Appx0115-0116.  Judicial review is generally limited to the full administrative record before the agency at the time it rendered its decision.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Axiom Res. Mgmt, Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009).  Section 232 exclusion requests are reviewed and decided "on a case-by-case basis," on the record of the specific request. 15 C.F.R Pt. 705, Supp.1 § (c)(6).  On this basis alone, the Court should decline to entertain Seneca's argument based on extra-record evidence.

If the Court decides to address the merits of Seneca's argument, the Court

should still find it unavailing.  In order to establish that Commerce acted contrary to

an established pattern or practice, Seneca must first point to an established pattern or

practice.  *See In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1347 (Ct. Int'l Trade 2022).

Seneca fails to point to any law, case law, policy, regulation, agency guidance, or other

document that establishes a pattern or practice regarding when to disregard

objections.  Instead,  Seneca merely cites five past decisions in which, based on

different factual records and different objectors and requestors, including different

language in the sales correspondence, Commerce reached a different conclusion about

domestic availability.  Five decisions with different facts out of tens of thousands of

exclusion decisions submitted each year does not evidence arbitrary action or

departure from established practice.  This merely evidences consideration and analysis

of different factual records, which, in juxtaposition to Seneca's argument, is *consistent*

with Commerce's policy of evaluating exclusion requests on a case-by-case, fact

specific basis.  "{I}isolated investigations do not prove the existence of past practice,

but rather only that Commerce thought differently on different facts and different

times."  *Ancientree Cabinet Co., Ltd. v. United States*, 565 F. Supp. 3d 1373, 1381 (Ct. Int'l

Trade 2022) (cleaned up).  Indeed, the very "case-by-case nature" of these fact-bound

analyses "complicates any efforts to divine rules from past agency practice."  *Fujian*

*Yinfeng Imp. & Exp. Trading Co. v. United States*, 607 F. Supp. 3d 1301, 1316 (Ct. Int'l

Trade 2022) (cleaned up).

Finally, Seneca's entire argument assumes that, contrary to the trial court's and

Commerce's conclusions, this Court must adopt that U.S. Steel's certified statements were contradicted by other record evidence. However, Commerce will reject an exclusion request if at least one objector can "deliver the product (identical or substitute quality), {in} the quantity requested" and "in less time that it would take the requestor to obtain it from abroad." *See* Appx0127; 15 C.F.R. Pt. 705, Supp. 1, § (c)(6)(i). As explained above, Commerce considered the evidence on the record to determine that U.S. Steel could deliver the product at issue in these requests. Accordingly, Commerce did not apply a different standard in this case than other cases; rather, the factual record in this case differed from other cases, leading to different results. Such a result is to be expected and shows that Commerce has conducted the required case-by-case analysis the regulations require.

As the trial court found, Seneca "simply asks too much of the court to wade into fact finding on a sparse record," consisting of "three short email chains, each suffering from various deficiencies as to relevance." Appx0019. Nor should the Court here engage in such an endeavor. Rather, the Court should find that Commerce adequately considered the record evidence and provided a sufficient explanation for its well-founded denial of each of Seneca's eight exclusion requests.

## IV. Commerce's Regulations, Which Focus on Current Domestic Availability, Are Reasonable

In addition to challenging the factual basis of Commerce's denials, Seneca argues that Commerce's regulations – as applied to Seneca – should be held unlawful

because Commerce should have focused on availability at the time that Seneca ordered the steel subject to the requests, rather than at the time Seneca filed an exclusion request. *See* Seneca Br. at 34-45. However, as the trial court noted, Seneca offers no regulation, agency practice, or other authority to support its contention that Commerce must measure availability based on the time that Seneca placed its foreign orders. Appx0022.

Further, Commerce's approach is reasonable, cognizant of the dynamic steel industry and market, and consistent with the purpose of the Section 232 measures.

The national security goal of the Section 232 tariffs is to strengthen the domestic steel manufacturing industry, with an aim of increasing domestic capacity utilization. *Transpacific Steel LLC v United States*, 4 F.4th 1306, 1313 (Fed. Cir. 2021); *Proclamation 9705*, 83 Fed. Reg. at 11,626 ¶ 8. The President expected that the imposition of the Section 232 tariffs would, over time, lead to the improvement of the health of the domestic steel manufacturing industry. *Proclamation 9705*, 83 Fed. Reg. at 11,626-27 ¶¶ 8, 11. Indeed, the President anticipated changes in the market, and thus, directed the Secretary of Commerce to monitor steel imports and inform him of significant changes. *Id.* ¶ 5(b). Imposition of the tariffs would lead to a reduced import penetration rate, giving domestic manufacturers the market opportunity to increase production capacity.

Commerce's procedures and criteria are consistent with this purpose. Precisely *because* domestic capacity utilization is expected to increase and improve with

time, Commerce's exclusion process considered the most current situation of the capabilities of domestic steel manufacturers. Commerce's regulatory approach, therefore, appropriately does not focus on past course of dealings between commercial parties. In that sense, Commerce acted consistently with the purpose of the exclusion program by crediting U.S. Steel's specific certified statements regarding specific products over generic business inquiry correspondence.

Proclamation 9705 authorized the Secretary of Commerce to "provide relief" from Section 232 duties "for any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." *Proclamation 9705*, 83 Fed. Reg. at 11,627. The President did not direct that the Secretary make the determination of domestic unavailability in any particular way or with any particular test. Further, Commerce appropriately limits exclusions for purchasers of foreign steel, such as Seneca, in the limited situations in which the specific product is not currently available domestically.

Seneca seemingly conflates the regulatory criteria of domestic unavailability (that is, that the particular steel product is not manufactured in the United States) with a particular manufacturer's refusal to supply or engage in business relationships. *See, e.g.,* Seneca Br. at 38. Commerce's inquiry reasonably and rationally focuses on whether specific steel products are currently domestically manufactured. The most relevant and probative evidence of current availability is a domestic manufacturer's statements about their current capacity to produce and deliver steel; not stale

information about business inquiries or negotiations from months or years earlier.

In short, Seneca has established that it was, for reasons ultimately not germane to Commerce's analysis, unable to secure contract volumes from U.S. Steel in the months prior to submitting its exclusion requests. Seneca asks this Court to determine that fact dispositive. However, the question before Commerce, and the one in which Commerce reasonably evaluated, is whether U.S. Steel demonstrated current availability to deliver the products covered by the exclusion requests. Because the evidence supports Commerce's conclusions that U.S. Steel had availability, the exclusion requests were properly denied.

## V.     Seneca's Perceived Lack of Remedy Is No Basis for This Court to Reverse Commerce's Reasoned Decisions

Seneca concludes its brief arguing that this Court should grant relief because Seneca can no longer receive relief from Commerce. Seneca Br. at 58-59. Specifically, Seneca takes aim at the trial court's statement that a requestor – when faced with an unreliable supplier – can submit a new request that is "retroactive to the entries associated with the initial request." *Id.* (quoting Appx0029). Seneca maintains that Commerce does not allow a new request to apply retroactively to the date that a previous request is filed. *Id.*

Seneca's argument is irrelevant – whether Seneca could later obtain relief from Section 232 duties is simply not part of the regulatory criteria considered by Commerce in deciding whether to grant an exclusion request. Further, Seneca

misunderstands the trial court's point. To be sure, Seneca is correct about the retroactivity of exclusion requests. In general, a request, if granted, is effective as of the date that the request is filed. 15 C.F.R. Pt. 705, Supp. 1, § (h)(2)(iii)(A). However, the trial court correctly stated that a requestor can receive relief that is applicable to the *entries* associated with the initial request. *See* Appx0029.

An example is illustrative: a requestor submits an exclusion request before placing an order with a foreign supplier. Commerce denies the request based on domestic availability, but the domestic supplier later refuses to supply the product. The requestor could submit another request documenting the domestic supplier's refusal. The subsequent request would be applicable to the same entries that would have been brought in under the initial requests.

Here, in contrast, Seneca made the business decision to order steel from its foreign suppliers well before submitting an initial exclusion request. Seneca was free to make such a decision, but it is neither Commerce's nor the Court's role to relieve Seneca of the consequences of its business decision when it turns out that the domestic industry had availability at the time the request was submitted.

In short, Seneca's arguments on appeal are premised on its apparent perception that Commerce should either facilitate its business relationship with the domestic industry or otherwise grant an exclusion request. But it is not Commerce's role to conduct Seneca's business or remedy the consequences of Seneca's business decisions. Commerce was tasked with deciding whether Seneca proved that the steel products it

imported were not domestically available.  Commerce weighed the evidence,

adequately explained how it did so, and concluded that the products were domestically

available.  The trial court sustained Commerce's finding, and this Court should affirm.

## CONCLUSION

For these reasons, the judgment of the trial court should be affirmed.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

PATRICIA M. McCARTHY
  *Director*

*Of Counsel:*

RENE TRISTAN DE VEGA
B. KATHRYN DEBRASON
  *Attorneys*
  *Office of the Chief Counsel for Industry and*
    *Security*
  *U.S. Department of Commerce*

/s/ *Tara K. Hogan*
TARA K. HOGAN
  *Assistant Director*

/s/ *Kyle S. Beckrich*
KYLE S. BECKRICH
  *Trial Attorney*
  *Commercial Litigation Branch*
  *Civil Division*
  *U.S. Department of Justice*
  *P.O. Box 480, Ben Franklin Station*
  *Washington, DC 20044*
  *(202) 616-9322*
  *Kyle.Beckrich@usdoj.gov*

May 2, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,088 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Kyle S. Beckrich*
KYLE S. BECKRICH