25-1310

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**SENECA FOODS CORPORATION,**

*Plaintiff-Appellant*

v.

**UNITED STATES,**

*Defendant-Appellee*

---

**Appeal from the United States Court of International Trade in Case No. 1:22-cv-00243-GSK, Judge Gary S. Katzmann**

---

**PLAINTIFF-APPELLANT'S REPLY BRIEF**
———————

James M. Smith
Thomas Brugato
John J. Catalfamo

**COVINGTON & BURLING LLP**

850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

*Counsel for Plaintiff-Appellant
Seneca Foods Corporation*

May 23, 2025

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.   ARGUMENT ....................................................................................2

   A.   Seneca Asks the Court to Reject Commerce's Arbitrary and
   Capricious Decision Making, not Reweigh the Evidence. .............................2

   B.   Even Under an Analysis of Prospective Availability, Commerce's
   Decisions Are Likewise Arbitrary and Capricious. ....................................12

   C.   Commerce Mischaracterizes the Trade Court's Suggested
   Administrative Remedy for Seneca...............................................................18

III.   CONCLUSION.................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Corephotonics, Ltd. v. Apple Inc.*,
   84 F.4th 990 (Fed. Cir. 2023) ............................................................11

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021)..........................................................................14

*Level the Playing Field v. FEC*,
   961 F.3d 462 (D.C. Cir. 2020)...........................................................3

*Motor Vehicle Manufacturers Ass'n v. State Farm*,
   463 U.S. 29 (1983)........................................................................3, 17

*Transpacific Steel LLC v United States*,
   4 F.4th 1306 (Fed. Cir. 2021) ............................................................8

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 706(2) ....................................1

**Other Authorities**

15 C.F.R. § 705, Supp. 1(c)(6)(i) (2024) ...............................................12

15 C.F.R. § 705, Supp. 1(h)(2)(iii)(A) (2024) ........................................19

*Adjusting Imports of Steel Into the United States*, Proclamation 9705,
   83 Fed. Reg. 11,626......................................................................8

Federal Rule of Appellate Procedure 28(c) ............................................1

*Spot Contract*, Black's Law Dictionary (12th ed. 2024) ........................16

# I.  INTRODUCTION

Plaintiff-Appellant Seneca Foods Corporation ("Seneca") hereby respectfully submits its reply brief pursuant to Federal Rule of Appellate Procedure 28(c).

In filing the exclusion requests at issue, Seneca certified to the U.S. Department of Commerce ("Commerce" or "the agency") that the requests covered specific import purchase orders placed only after Seneca had attempted to purchase those volumes from U.S. tin mills, which had no additional availability for the relevant delivery dates. Consistent with the chief aim of the President's Section 232 action, Seneca actively ensured that every domestic producer had the chance to utilize available tin mill capacity. As the agency's regulations allow, Seneca then filed its exclusion requests before the shipment arrival dates for those orders. All record evidence, including from sole objector United States Steel Corporation ("U.S. Steel"), confirms that the domestic industry declined to supply the purchase orders covered by Seneca's requests. As Part II.A details, Commerce unlawfully ignored this undisputed evidence and instead assessed hypothetical future availability of no relevance to the purchase orders at issue. Moreover, in assessing that future time frame, Commerce invoked improper excuses to ignore contemporaneous evidence of ongoing unavailability from U.S. Steel, as Part II.B explains. Despite suggestions to the contrary, Part II.C reiterates that Seneca's only remedy rests in this appeal.

## II.  ARGUMENT

Commerce's denials of the exclusion requests at issue were arbitrary and capricious and thus unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). Seneca's sole remedy for Commerce's APA violation is judicial review; as the Government concedes, no administrative remedy for the entries at issue in the denied exclusion requests is available to Seneca.

### A. Seneca Asks the Court to Reject Commerce's Arbitrary and Capricious Decision Making, not Reweigh the Evidence.

On appeal, Seneca is not asking the Court to reweigh the evidence; rather it requests that the Court hold Commerce to the arbitrary and capricious standard in the APA that protects against unreasonable agency decision making. Commerce's decisions were unreasonable because they ignored uncontroverted evidence of domestic unavailability for the orders covered by the requests, a point that U.S. Steel affirmatively conceded in submissions to Commerce. Seneca's approach to requesting exclusions—in which it filed requests only after confirming domestic unavailability—removed any uncertainty regarding availability for the orders at issue, and thus was fully consistent with Proclamation 9705 and Commerce's regulations. Commerce claims to apply a "Case-by-Case, Record-Intensive Inquiry for Each Exclusion Request," Resp. Br. at 23, yet it failed entirely to acknowledge, let alone address, the key fact regarding Seneca's requests: that U.S. Steel declined to supply the specific orders covered by those requests.

The Government attempts to support Commerce's denial of Seneca's exclusion requests by stretching the deference afforded under the arbitrary and capricious standard to cover decisions devoid of any supporting evidence. The Government maintains that Seneca's arguments are nothing more than a "mere 'disagree{ment} with' Commerce's 'weighing of the evidence.'" Resp. Br. at 15 (quoting *Level the Playing Field v. FEC*, 961 F.3d 462, 465 (D.C. Cir. 2020)). However, as the Supreme Court canonically stated in *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, the arbitrary and capricious standard requires an agency to "examine the relevant data and articulate a satisfactory explanation for its action." 463 U.S. 29, 43 (1983). An agency decision is arbitrary and capricious if it "entirely failed to consider an important aspect of the problem," or if it "offered an explanation for its decision that runs counter to the evidence before the agency." *Id.* at 43. In its original and remand determinations, Commerce never addressed facts in the record that should have compelled the agency to grant the requested exclusions.

In particular, Commerce has repeatedly ignored dispositive record evidence that for the specific purchase orders covered by Seneca's exclusion requests, U.S. Steel affirmatively refused to supply Seneca the very same volumes. The fact of unavailability from U.S. Steel at the time Seneca placed the relevant orders is common ground. Through its submissions to Commerce, Seneca has demonstrated

that U.S. Steel and other domestic producers could not and did not offer Seneca the volumes at issue in the purchase orders covered by Seneca's exclusion requests. When objecting to Seneca's requests, U.S. Steel confirmed its inability to supply those orders. *See* Opening Br. at 35-36. Commerce has never disputed these facts. Instead, the agency has ignored them altogether.

In each exclusion request, Seneca explained to Commerce that it sought exclusions for tin mill products covered by specific purchase orders that Seneca placed only after receiving confirmation from all three domestic producers that they could not provide Seneca the required volumes. Appx0282-0284, Appx0338-0340, Appx0393-0395, Appx0448-0450, Appx0503-0505, Appx0558-0560, Appx0610-0613, Appx0661-0664. For the October 2021 exclusion requests, the relevant purchase orders were placed on Nov. 20, 2020; April 22, 2021; and May 3, 2021. Appx0295, Appx0351, Appx0406, Appx0461, Appx0516. For the January 2022 request, the relevant purchase orders were all placed in late 2021. Appx0571. For the March 2022 requests, the relevant purchase orders were placed on Oct. 1, 2021 and Oct. 29, 2021. Appx0628. Seneca provided Commerce with contemporaneous evidence demonstrating that U.S. Steel had refused to supply Seneca the requested volumes both before and after the relevant orders were placed. *See, e.g.*, Appx0302-0306. Indeed, Seneca clarified with Commerce that—notwithstanding U.S. Steel's certified statements to the contrary—U.S. Steel had not supplied Seneca with a

single coil in over two years, a fact that U.S. Steel ultimately admitted. *See, e.g.*, Appx0291, Appx0300, Appx0311. This record evidence demonstrated that the tons of tin mill steel for which Seneca sought exclusions were unavailable from U.S. Steel when Seneca placed the purchase orders and filed the corresponding exclusion requests. *See also* Appx0519-522, Appx0526, Appx0578-579, Appx0678-0685.

### 1. The October 2021 Exclusion Requests

This evidence is not only uncontroverted, but was affirmatively conceded in the record by U.S. Steel. When objecting to Seneca's October 2021 exclusion requests, U.S. Steel admitted it had the opportunity to supply Seneca but declined to do so, and that it was unable to supply Seneca with the requested volumes when Seneca placed its orders. Opening Br. at 11-12 (quoting U.S. Steel's objections in which it conceded that "the U.S. tin mill market experienced some supply constraints in the immediate wake of the COVID-19 pandemic," including when the orders covered by Seneca's October 2021 requests were placed) (quoting Appx0346, Appx0364). More to the point, U.S. Steel acknowledged that it never supplied Seneca with any steel after February 2019, even though "U.S. Steel regularly discussed tin mill product availability and sales with Seneca throughout 2019, 2020, and 2021." Appx0311. The requested exclusions applied only to orders placed at a time when U.S. Steel affirmatively admitted to Commerce that it had no volume available for Seneca, despite the fact that according to U.S. Steel, Seneca had

regularly reached out and made sales inquiries to U.S. Steel throughout the relevant years and months.

Rather than dispute this clear evidence of unavailability at the time of the purchase orders covered by Seneca's exclusion requests, U.S. Steel claimed in its objections and surrebuttals only that it could supply Seneca the quantity requested *at some point in the future* (*i.e.*, 120 to 270 days after Seneca filed the exclusion requests). *See* Appx0286, Appx0342, Appx0397, Appx0452, Appx0507, Appx0562, Appx0615, Appx0666. But any prospect of future availability was wholly irrelevant to the exclusion requests before Commerce, which were limited to volumes already purchased at a time of conceded unavailability from U.S. Steel. Opening Br. at 45. At no point were those facts disputed by U.S. Steel.

Upon receiving U.S. Steel's objections, Seneca provided Commerce with additional evidence that when it placed the orders covered by the requests, U.S. Steel had declined to supply Seneca. Opening Br. at 21. Seneca's contemporaneous internal email from November 2020 summarized a phone call with U.S. Steel in which U.S. Steel refused to "offer{} anything now at any price" due to its inability to supply any products for delivery in 2021. *E.g.*, Appx0302-0303. U.S. Steel also suggested that that it would contact Seneca if it had "available production in any month," and the record confirmed that U.S. Steel never offered Seneca any volume throughout 2021. Appx0303. Commerce refused to consider the November 2020

email because it was dated more than 90 days before submission of the exclusion requests and thus allegedly "stale." Resp. Br. at 16-17 (citing Appx0118, Appx0268). But that email was far from "stale" for the purchase orders covered by Seneca's requests: it was dated Nov. 13, 2020, just *seven days* before Seneca placed the initial orders covered by the requests (Nov. 20, 2020), and it provided evidence of unavailability from U.S. Steel at the time of the other orders at issue (April 22, 2021 and May 3, 2021)—evidence that U.S. Steel independently validated.

### 2. The January and March 2022 Exclusion Requests

For the January and March 2022 exclusion requests, Seneca followed the same approach as for the October 2021 exclusion requests: it first inquired with domestic producers to determine the volumes they could supply, purchased as much as possible from domestic suppliers, and only after confirming no additional tons were available from the domestic industry did Seneca place purchase orders from foreign suppliers for its remaining volume requirements and seek product exclusions from Commerce for that remainder. Appx0558-0560, Appx0612, Appx0663. As before, Seneca purchased what it could from two of the three domestic producers, neither of which filed an objection, while U.S. Steel "{wa}s unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional material in 2022." Appx0560, Appx0612, Appx0663. Yet again, U.S. Steel objected, claiming future availability. Appx0566, Appx0619, Appx0670.

For the March 2022 exclusion requests, Commerce initially adopted a new basis for denying the requests, maintaining that it could not complete its analysis "due to an issue with the request{s}," without explaining what the issue was or why it warranted denial. Appx0593-0594, Appx0644-0645. On remand, Commerce offered new rationales for denying the March 2022 requests, rationales that it claimed applied equally to the October 2021 and January 2022 requests. Appx0127-0128. Yet at no point in its original or remand determinations did Commerce acknowledge or address the established fact that U.S. Steel had no availability for Seneca at the time of the purchase orders that Seneca certified would be covered by its exclusion requests, if those requests were granted.

*    *    *

The agency's silence on this dispositive point is deafening, especially given the policy rationales Commerce has offered in support of the product exclusion process. Seneca's approach of confirming no further availability from all domestic producers before placing orders for imports and filing exclusion requests before ordered shipments arrive is fully consistent with the agency's stated rationales. As the Government has emphasized, "{t}he national security goal of the Section 232 tariffs is to strengthen the domestic steel manufacturing industry, with an aim of increasing domestic capacity utilization." Resp. Br. at 26 (citing *Transpacific Steel LLC v United States*, 4 F.4th 1306, 1313 (Fed. Cir. 2021); *Adjusting Imports of Steel*

*Into the United States*, Proclamation 9705, 83 Fed. Reg. 11,626, ¶ 8). When domestic firms admit having an opportunity to make sales to U.S. purchasers and then declining to do so based on lack of capacity, Commerce can be certain that granting product exclusions for volumes that U.S. mills have affirmatively declined to supply will not undermine domestic capacity utilization. The record evidence presented by Seneca and confirmed by U.S. Steel should have given Commerce exactly that comfort.

As Commerce concedes, Seneca's approach is also fully consistent with the effective time period for granted product exclusions, as defined by the agency. Commerce explained to the Trade Court that its regulations "neither encourage nor discourage a requestor to submit its request before or after it has placed an order; both options are available to a requestor." Appx0783. Indeed, "given the lag time between purchase order and the date merchandise enters the United States," the Government has emphasized that—exactly as Seneca planned—"a requester could be eligible to use a granted exclusion for merchandise ordered prior to the exclusion request filing date." Appx0788. Accordingly, Seneca ensured that it submitted its exclusion requests before any ordered volumes were due to arrive and be entered into the United States. Moreover, the placement of purchase orders in advance of filing exclusion requests is consistent with policies adopted by Commerce for the purpose of Section 232 volume reviews, which *require* certain requesters to provide

documentation of purchase orders dated before the exclusion request. Appx0776-Appx0778.

From the beginning, Seneca's stated aim was to apply for exclusions in a way that supports Commerce's regulations and would allow Commerce to consider the requests based upon the unique facts at issue. Making that kind of case-by-case determination, focused on distinct facts in each record, is exactly what the agency claims in theory to be doing: "Commerce considers the record associated with each request on a case-by-case basis to determine whether the facts show that the product at issue in the exclusion request is domestically available." Resp. Br. at 13, 29. Yet in denying Seneca's requests, Commerce in practice wholly ignored evidence of unavailability when the purchase orders covered by the requests were placed.

Seneca's approach not only was consistent with Commerce's regulations, but also furthered the President's stated objectives in Proclamation 9705. The principal aim of the Section 232 action is to increase the capacity utilization of domestic steel producers, in part by authorizing exclusions for imports only when steel products are not available domestically in sufficient volumes. Seneca adopted an approach designed to demonstrate that there was no domestic availability for the specific purchase orders at issue in its exclusion requests. Only after U.S. tin mills declined sales did Seneca turn to foreign producers, place orders for imports to cover its remaining volume requirements, and file exclusion requests for those purchase

orders. As Seneca explained to Commerce, the company's emphasis on proven unavailability for specific orders eliminates any need for the agency to speculate or resolve competing claims regarding possible *future* availability from the domestic industry. Appx0284, Appx0301, Appx0340, Appx0357, Appx0395, Appx0412, Appx0450, Appx0467, Appx0505, Appx0522. If anything, for Commerce to assess future availability even when presented with undisputed proof of unavailability for the covered purchase orders is at odds with Proclamation 9705, because "{i}f the President's goal is to ensure an opportunity for the domestic industry to increase its capacity utilization, allowing USS to refuse sales to Seneca and then block exclusions for orders it had declined would be irrational." Opening Br. at 31.

In a last-ditch attempt to defend the indefensible, the Government argues that an agency action must be upheld "as long as it is rational and adequately supported, even though it might be possible to draw 'two inconsistent conclusions from the evidence.'" Resp. Br. at 19 (quoting *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1001 (Fed. Cir. 2023)). However, for that standard to apply, the evidence must rationally and adequately support two different conclusions. The evidence presented to Commerce by both Seneca and U.S. Steel supported only one conclusion—that the domestic industry generally, and U.S. Steel in particular, declined to supply Seneca the volumes of tin mill steel in the specific purchase orders covered by its

exclusion requests. Commerce cannot lawfully ignore those basic facts, which compel the granting of Seneca's requests.

### B. Even Under an Analysis of Prospective Availability, Commerce's Decisions Are Likewise Arbitrary and Capricious.

Commerce should have considered domestic availability during the periods relevant to Seneca's "specified business activities," 15 C.F.R. § 705, Supp. 1(c)(6)(i) (2024), in particular at the time of the specific purchase orders that Seneca certified its exclusion requests would cover. But even under a purely prospective analysis of hypothetical future availability, Commerce should have approved all of Seneca's exclusion requests given the overwhelming evidence of U.S. Steel's persistent refusals to make required volumes of tin mill steel available to Seneca.

For the October 2021 requests, U.S. Steel never challenged or contradicted Seneca's evidence of their recent dealings, which demonstrated that Seneca could not even obtain a quote from U.S. Steel for 2021 or 2022 volumes. In its objections, U.S. Steel certified to Commerce that it could immediately supply Seneca the full volumes requested. Alongside its rebuttal, Seneca included a November 2021 email that postdated U.S. Steel's objections. In that email, Seneca summarized earlier conversations with U.S. Steel, where U.S. Steel explained that it had "no tinplate or TFS to offer {Seneca} for 2022," and asked if anything had "changed on the availability of ETP or TFS{.}" Appx0305. U.S. Steel confirmed that it did not have "anything" available for February 2022 and would let Seneca know if that changes.

*Id.* U.S. Steel never offered Seneca any volume that could be delivered during the time frame assessed by Commerce. Appx0629 (explaining that the "{r}ealistic timeline {for delivery} will be July" 2022 for only a fraction of Seneca's needs— nine months after the October 2021 exclusion requests).

When U.S. Steel suggested in its objections to Seneca's October 2021 exclusion requests that it could supply Seneca 120 to 270 days in the future, this was welcome news to Seneca, which had not been able to secure a single coil from U.S. Steel since February 2019. Opening Br. at 8, 41. Immediately after U.S. Steel filed its objection, Seneca reached out to U.S. Steel to purchase steel during the period for which U.S. Steel certified to Commerce it could supply the products to Seneca. *Id.* at 41-42. However, the response from U.S. Steel was the same as what Seneca had received in prior years: nothing was available into the foreseeable future. Appx0305, Appx0629-0631.

For the January 2022 requests, the record was the same as for the October 2021 requests, with Seneca explaining again that U.S. Steel was not even willing to provide a quote to Seneca for its 2022 volume needs. Appx0123-0124. Seneca resubmitted the November 2021 correspondence, in which U.S. Steel confirmed it could not offer Seneca anything. Appx0578. Again, U.S. Steel did not challenge or refute Seneca's evidence, but U.S. Steel repeated its false statement from earlier

submissions that it had supplied Seneca with tin mill products since February 2019, even after previously acknowledging that this claim was false. Appx0567.

For the March 2022 requests, Seneca provided a summary of recent interactions in which U.S. Steel declined to provide Seneca a quote for its 2022 volume needs and had neither "quoted nor offered to Seneca, let alone delivered, a *single ton of steel* for *more than two years*." Appx0612, Appx0663 (emphasis in original). The record also contained emails between U.S. Steel and Seneca from February–April 2022 following up on the November 2021 email to see if U.S. Steel had "{a}nything to offer yet." Appx0629-0631, Appx0683-0685. In response to these subsequent requests, U.S. Steel offered Seneca only a tiny fraction of the 24,000-plus tons at issue in the March 2022 requests (500 tons of the 3,000 tons of TFS that Seneca attempted to order), for delivery only months later. Appx0629-0631, Appx0683-0685.

Despite this overwhelming record evidence, Commerce unreasonably disregarded every piece of evidence demonstrating past, current, *and* prospective unavailability. In its Response Brief, the Government claims that Commerce acted "within 'a zone of reasonableness'" in assigning "virtually no weight" to the November 2020 correspondence because U.S. Steel explained it had nothing to offer "right now." Resp. Br. at 16-18 (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). Purportedly relying on agency policy, Commerce summarily

dismissed the November 2020 correspondence as "stale." *Id.* (citing Appx0268). However, as Commerce's policy states clearly, correspondence more than 90 days from the request should be excluded only "absent additional accompanying information." *Id.* In response to questions from the Trade Court, the Government explained that "additional accompanying information" refers to "evidence that would *indicate the continued relevance and probative value* of the otherwise stale sales correspondence." Appx0779 (emphasis added).

The November 2020 correspondence explained that U.S. Steel "would not offer Seneca *any* steel for 2021 delivery, regardless of price. U.S. Steel stated that it did not want to make any commitment at the time at any price and noted that if it had available volume in future months, it would contact Seneca." Appx0299 (emphasis in original). The correspondence thus covered a time frame that extended throughout 2021, up to and after the October 2021 requests. Moreover, the correspondence is directly supported by record evidence that demonstrates "its continued relevance and probative value." For example, U.S. Steel confirmed that it had "regular{}" sales conversations with Seneca in 2019, 2020, and 2021, but did not deliver a single coil to Seneca after February 2019. Appx0311. In addition, U.S. Steel confirmed to Seneca in November 2021 that they "don't have anything as of yet" for February 2022. Appx0305.

This November 2021 correspondence came directly on the heels of the U.S. Steel objections and clearly related to the tin mill products at issue. The Government nonetheless claims that deference is due to Commerce's conclusion that the email did not contradict U.S. Steel's claims of future spot market availability, Resp. Br. at 18-19, even though Commerce reached that conclusion only by reading into the email a limitation to "contract sales" that (i) does not exist and (ii) is not supported by the record. In the November 2021 email, Seneca inquired whether "anything {had} changed on the availability of ETP or TFS," and U.S. Steel confirmed that they "don't have anything as of yet" through February 2022. Appx0305. On remand, Commerce admitted that "in these proceedings U.S. Steel has represented that it could deliver the product to Seneca, perhaps as early as mid-February 2022." Appx0120. Commerce thus recognized that the November 2021 email to Seneca directly contradicted the representations of U.S. Steel regarding future availability. *Id.* To escape this contradiction, Commerce found that the correspondence, in which U.S. Steel explained that "right now for Feb I don't have *anything* as of yet," referred only to contract sales, not spot sales. Appx0120-0123 (emphasis added). There is no reference in the correspondence to contract sales. Moreover, it addresses possible incremental volume in February 2022 and other months—the very definition of the spot market. *See* Resp. Br. at 10 & n.3 ("A spot sale refers to a one-time agreement to buy or sell steel for immediate payment and delivery of the product.") (citing *Spot*

*Contract*, Black's Law Dictionary (12th ed. 2024)). Commerce thus provided no reasonable explanation for why it did not accept Seneca's domestic unavailability arguments for the October 2021 and January 2022 requests.

Finally, Commerce's decision to disregard the February-April 2022 correspondence was unreasonable because Commerce "entirely failed to consider an important aspect of the problem." *Motor Vehicle Manufacturers Ass'n v. State Farm*, 463 U.S. at 43. Commerce concluded that these "emails did not pertain to the products at issue in Seneca's March 2022 exclusion requests because Seneca's initial solicitation email to U.S. Steel was sent several months after it had already ordered the product from its foreign producer." Resp. Br. at 21. According to the Government, this conclusion was reasonable because "Seneca had already placed its orders to purchase the steel products from foreign producers four months before engaging with U.S. Steel in February 2022." *Id.* at 22. As an initial matter, these claims about when Seneca first engaged U.S. Steel are at odds with the record, which demonstrates that Seneca and U.S. Steel regularly communicated about sales throughout 2021 (as in prior years). More important, these conclusions rest on a finding by Commerce that the specific orders covered by Seneca's March 2022 requests were placed in late 2021—at a time when there is no dispute as to U.S. Steel's lack of availability for Seneca. The agency cannot reasonably accept the relevant order dates for certain purposes, while otherwise ignoring them altogether.

In assessing prospective availability, Commerce has acknowledged in other cases that when objectors make contradictory or ambiguous claims in objection and surrebuttal filings, or otherwise submit claims that are contradicted by record evidence, it will reject the objection. *See* Opening Br. at 55-56 (detailing Commerce's practice of rejecting objections claiming immediate availability when evidence points to the contrary). In its Response Brief, the Government misconstrues Seneca's argument as an attempt to "rel{y} on extra-record evidence." Resp. Br. at 23. The Government misses the point. Seneca raised these prior examples as illustrative of Commerce's practice of following its own regulations by dismissing baseless objections that do not meet any of Commerce's own criteria. Opening Br. at 55. Seneca simply noted that Commerce's own practice demonstrates a shared understanding that Commerce will dismiss objections that obviously fail to meet the quantity, timeliness, and quality criteria. Opening Br. at 55-56.

In sum, Commerce's analysis of prospective availability from U.S. Steel is arbitrary and capricious, unsupported by the record, and also at odds with the agency's established practice.

### C. Commerce Mischaracterizes the Trade Court's Suggested Administrative Remedy for Seneca.

In its opinion, the Trade Court erroneously claimed that Seneca could avail itself of "administrative recourse {under the regulations} when faced with potentially unreliable domestic suppliers" and "receive relief from Commerce that

is *retroactive to the entries associated with the initial request*." Appx0029 (emphasis added). This statement directly contradicts the position of the Government. As Seneca explained in its Opening Brief, "Commerce has described when it allows requests to be resubmitted with possible relief back to the date of the original request; abuse of the objection process by an unreliable domestic producer is not a basis for resubmission and retroactive relief." Opening Br. at 58 (citing Appx0258-0259).

Now, the Government seeks to defend the Trade Court's misstatement by changing what the Court said altogether. The Government concedes that "{t}o be sure, Seneca is correct about the retroactivity of exclusion requests. In general, a request, if granted, is effective as of the date that the request is filed." Resp. Br. at 29 (citing 15 C.F.R. § 705, Supp. 1(h)(2)(iii)(A) (2024)). However, the Government proceeds to claim that if "Commerce denies the request based on domestic availability, but the domestic supplier later refuses to supply the product," then "{t}he requestor could submit another request documenting the domestic supplier's refusal," which "would be *applicable to the same entries that would have been brought in under the initial requests*." Resp. Br. at 29 (emphasis added).

In making this new claim, the Government is wrong for the same reason the Court was mistaken. If Seneca had refiled the denied requests, further documenting the continuing unavailability from U.S. Steel, no remedy would have been available for imports that entered *before* the second, resubmitted request was filed—which in

this case means no remedy would have been available at all. Commerce has been clear, both in its informal guidance and during this litigation, that "abuse of the objection process by an unreliable domestic producer is not a basis for resubmission and retroactive relief." Opening Br. at 58 (citing Appx0258-0259).

In addition to providing no relief for the entries at issue, the Government's suggested approach is at odds with Seneca's business requirements, as it ignores the extended time period it takes for requests to be granted or denied by Commerce. For example, Seneca's exclusion requests at issue in this litigation were not decided until three to six months after submission to Commerce. So, under the Government's suggested remedy, after consistently being denied volumes from U.S. Steel over a period of two-plus years, Seneca would need to apply for exclusion requests, wait three to six months for Commerce to deny the requests based on specious claims of future spot availability by U.S. Steel, reach out again to U.S. Steel in vain for the required volumes, and then re-file the exclusion requests while waiting another three to six months for a potentially more favorable response from Commerce. In total, Seneca would be forced to wait at least six months to a year for any prospect of an exclusion.

Such an approach is at odds with Seneca's specified business activities. Throughout that time frame, Seneca would be paying Section 232 duties on imported volumes that were unavailable from domestic sources, with no prospect of obtaining

refunds of duties on any entries made prior to the filing of its resubmitted requests. As outlined by the Government, this process ignores the business needs of Seneca, whose can manufacturing operations must receive sufficient volumes of tin mill steel in time to manufacture the food cans required for regular seasonal harvests. Seneca cannot postpone those harvests to give Commerce extra time to compile additional evidence of unavailability from U.S. Steel or other bad faith objectors that already declined repeated opportunities to supply Seneca's needed volumes. In sum, such a process would provide Seneca no remedy at all.

## III. <u>CONCLUSION</u>

Based on the foregoing, Seneca respectfully requests that this Court reverse the Trade Court's decision sustaining Commerce's Remand Results and remand with instructions to approve Seneca's eight Section 232 exclusion requests and reliquidate and refund the Section 232 duties paid on applicable entries.

Respectfully Submitted,

*/s/ James M. Smith*
James M. Smith
Thomas Brugato
John J. Catalfamo

**COVINGTON & BURLING LLP**
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

*Counsel for Plaintiff Seneca
Foods Corporation*

Dated: May 23, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 25-1310

**Short Case Caption:** Seneca Foods Corp. v. US

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 4,825 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 05/23/2025

Signature: /s/ James M. Smith

Name: James M. Smith

Save for Filing