NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SENECA FOODS CORP.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2025-1310

---

Appeal from the United States Court of International Trade in No. 1:22-cv-00243-GSK, Judge Gary S. Katzmann.

---

Decided: May 15, 2026

---

JAMES MCCALL SMITH, Covington & Burling LLP, Washington, DC, argued for plaintiff-appellant. Also represented by THOMAS BRUGATO, JOHN JOSEPH CATALFAMO.

TARA K. HOGAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by PATRICIA M. MCCARTHY, BRETT SHUMATE; BILLIE KATHRYN DEBRASON, RENE TRISTAN DE VEGA, Office of the

Chief Counsel for Industry and Security, United States Department of Commerce, Washington, DC.

---

Before PROST and TARANTO, *Circuit Judges*, and KOVNER, *District Judge*.[1]

TARANTO, *Circuit Judge*.

During 2020 and 2021, Seneca Foods Corp. ordered tin-free steel from Japan and China and prime electrolytic tinplate from China and Turkey. The ordered products came within the 25-percent ad valorem tariff imposed on certain steel articles starting in 2018 by Presidential Proclamation 9705, issued under Section 232 of the Trade Expansion Act of 1962, Pub. L. No. 87-794, 76 Stat. 872, 877, codified as amended at 19 U.S.C. § 1862. *See Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625, 11,625–28 (Mar. 15, 2018) (*Proclamation 9705*). The goal was to increase use of domestic capacity and ensure long-term viability of the domestic steel industry. *Proclamation 9705*, at 11,625. The proclamation provided, however, that the Secretary of Commerce could grant exclusions from the tariffs based on inadequate domestic availability—specifically, "for any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality," but "only after a request for exclusion is made by a directly affected party located in the United States." *Id.* at 11,627. This case involves Seneca's challenge to denials of eight exclusion requests.

To implement the exclusion authority, the Secretary promulgated rules codified in 15 C.F.R. Part 705

---

[1] Honorable Rachel P. Kovner, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

Supplement No. 1 (705 Supp. 1), the applicable version of which for this case is Commerce's interim final rule effective December 14, 2020. *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060, 81,060–84 (Dep't of Commerce Dec. 14, 2020) (*2020 Interim Rule*). Under the rules, as applicable here, any individual or organization directly affected by the tariff may submit an exclusion request, and any individual or organization domestically manufacturing steel may object to the request. *2020 Interim Rule*, 705 Supp. 1 § (c), (d), 85 Fed. Reg. at 81,075–77. Commerce is to review requests on a "case-by-case basis," with one important criterion being whether a domestic producer can deliver the steel for which an exclusion is requested within "the time needed for the requester to obtain the product from [its] foreign supplier." *Id.* § (c)(6), 85 Fed. Reg. at 81,075.

During 2021 and 2022, Seneca submitted eight exclusion requests, each submitted months after—as much as six months after—it had purchased the corresponding steel article abroad. *See* Seneca Opening Br. at 37. United States Steel Corporation was the sole objector to each request. *E.g.*, J.A. 285. Seneca sought to rebut each objection by arguing that U.S. Steel could not supply the requested steel within the time needed for Seneca to obtain it from its foreign supplier, and it relied heavily, for support of that argument, on different combinations of email exchanges with U.S. Steel in November 2020, in November 2021, and between February and April 2022. *E.g.*, J.A. 303, 305–06. Commerce denied each request. *E.g.*, J.A. 263–64.

Seneca filed suit, challenging all eight decisions, in the Court of International Trade (Trade Court), which had jurisdiction under 28 U.S.C. § 1581(i). The Trade Court remanded the matter, partly at Commerce's request, for further analysis by Commerce. *Seneca Foods Corp. v. United States*, 663 F. Supp. 3d 1325 (Ct. Int'l Trade 2023). On remand, Commerce again denied each request, J.A. 117–28, and the Trade Court then sustained

Commerce's determinations, *Seneca Foods Corp. v. United States*, 740 F. Supp. 3d 1336 (Ct. Int'l Trade 2024) (*CIT 2024 Decision*).

Seneca timely appealed the *CIT 2024 Decision*, invoking our jurisdiction under 28 U.S.C. § 1295(a)(5). For this appeal, as relevant here, we, like the Trade Court, apply 5 U.S.C. § 706 in reviewing the challenged decisions by Commerce. *See*, *e.g.*, *HMTX Industries LLC v. United States*, 156 F.4th 1236, 1249 (Fed. Cir. 2025). We are to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); *see HMTX*, 156 F.4th at 1249. We see no basis for setting aside Commerce's decisions, and in explaining that conclusion, we largely adopt the Trade Court's persuasive analysis in the *CIT 2024 Decision*.

Seneca raises one main legal issue on appeal—an issue about timing. It contends that, in evaluating whether U.S. Steel could supply the requested steel within the time needed for Seneca to obtain it from its foreign suppliers, Commerce acted improperly when it focused its analysis on the dates of the exclusion requests, not the dates of Seneca's earlier placement of orders with foreign suppliers. Seneca addresses two aspects of that focus. It suggests that Commerce was required to give significant weight to evidence of the availability or unavailability of domestic supply that was closer in time to when—months earlier—Seneca purchased the steel at issue from its foreign suppliers. And it suggests that, when the foreign suppliers indicated a number of days for delivery (*e.g.*, 170 or 360 days), Commerce erred in counting those days from the exclusion request date, not from the months-old order date, in evaluating whether, under the 705 Supp. 1 § (c)(6) criterion, U.S. Steel could supply the steel in the time needed for Seneca to obtain it from its foreign suppliers. *See* Seneca Opening Br. at 23–25, 35, 41–42, 45; Seneca Reply Br. at 12.

For reasons explained by the Trade Court, however, Seneca has identified nothing in *Proclamation 9705*, in the language of the implementing regulation, or in any other authority that, in either identified respect, makes Commerce's use of the request date as the temporal focus of its inquiry not in accordance with law. *See CIT 2024 Decision*, at 1350–51. Nor has Seneca established a consistent agency practice from which Commerce departed here. *See id.* at 1349–50. And Commerce's focus on the exclusion-request date, instead of the requester's purchase date (even if half a year old by the request date), was not an unreasonable approach. It "keeps the timeliness inquiry consistent across all scenarios," whether a purchase order is placed before or after the request date, without Commerce having to discern what if any reasons a purchaser had for potentially long delays in filing an exclusion request. *Id.* at 1350–51. And Commerce's focus can reasonably be thought to advance the Proclamation's express forward-looking goals of promoting increased domestic production. *See Proclamation 9705*, at 11,625. If, consistent with the Proclamation's goals, domestic supply is becoming more robust over time, it is reasonable for Commerce to promote use of such supply by denying an exclusion request when evidence around the time of the request demonstrates that adequate domestic supply would be available within the time the purchaser needed to obtain it from its foreign suppliers. *See CIT 2024 Decision*, at 1354.

In this case, moreover, Commerce did not discount older pre-request evidence only on the timing ground. It found other weaknesses in that evidence as well as in other evidence featured by Seneca. Seneca has advanced specific criticisms of Commerce's analysis in that regard, *see* J.A. 117–28, but given Commerce's detailed analysis after the initial Trade Court remand, Seneca's criticisms amount to requests that we reject Commerce's choice among reasonable interpretations of the cited emails and otherwise reweigh evidence, *see* Seneca Opening Br. at 50–55. We

agree with the Trade Court that Commerce's denials were supported by the record as a whole, where, at most, Seneca offers an alternative interpretation of the evidence but not one compelled by the record before Commerce. *CIT 2024 Decision*, at 1345–49.

For those reasons, we affirm the judgment of the Trade Court.

**AFFIRMED**